FILED
CLERK, U.S. DISTRICT COURT

10/13/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: ____DM____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

April 2021 Grand Jury

| UNITED STATES OF AMERICA, | CR 2:21-cr-00485-PA |
|---|---|
|        Plaintiff, | I N D I C T M E N T |
|        v. | [18 U.S.C. § 371: Conspiracy; 18 U.S.C. §§ 666(a)(1)(B), (a)(2): Bribery Concerning Programs Receiving Federal Funds; 18 U.S.C. §§ 1341, 1343, 1346: Honest Services Mail and Wire Fraud] |
| MARK RIDLEY-THOMAS and MARILYN LOUISE FLYNN, | |
|        Defendants. | |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

A.  DEFENDANT MARK RIDLEY-THOMAS

1.  Defendant MARK RIDLEY-THOMAS was a public official employed by the County of Los Angeles ("County"), within the Central District of California.  Defendant RIDLEY-THOMAS was a member of the Los Angeles County Board of Supervisors ("Board of Supervisors") for the Second District from approximately 2008 to 2020 and served as the Chairman of the Board of Supervisors in or around 2017.  The five-member Board of Supervisors was the governing body of the County and

had executive, legislative, and quasi-judicial roles.  Members were elected by voters in their respective districts and could serve up to three four-year terms.

2.   As a public official employed by the County, defendant RIDLEY-THOMAS owed a fiduciary duty to the citizens of the County to perform the duties and responsibilities of his office free from bias, conflicts of interest, self-enrichment, self-dealing, concealment, deceit, fraud, kickbacks, and bribery.

3.   The County was a local government that received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other forms of Federal assistance in each of the calendar years 2017 and 2018.

B.   MRT RELATIVE 1

4.   MRT Relative 1 was a close relative of defendant RIDLEY-THOMAS and a member of the California State Assembly ("State Assembly") from approximately 2013 to on or about December 31, 2017.

5.   In or around the fall of 2017, MRT Relative 1 was the subject of an internal sexual harassment investigation in the State Assembly.  At least in or around November 2017, defendant RIDLEY-THOMAS and MRT Relative 1 were aware of the investigation, which was not public at the time, and knew that MRT Relative 1 would likely resign from the State Assembly.  Around this time, defendant RIDLEY-THOMAS and MRT Relative 1 sought to secure paid employment for MRT Relative 1 following his/her abrupt departure from the State Assembly.  With this paid employment, defendant RIDLEY-THOMAS and MRT Relative 1 endeavored to provide a stable income to MRT Relative 1, who was in debt tens of thousands of dollars, and also to minimize any damage to MRT Relative 1's and, in turn, defendant RIDLEY-

THOMAS's public images from MRT Relative 1's sudden resignation from elected office.

6.   In or around December 2017, MRT Relative 1 was planning to become the new director of Nonprofit A.  Fiscal Sponsor A was Nonprofit A's fiscal sponsor.  A fiscal sponsor was an umbrella organization that provided administrative support to smaller entities and allowed them to operate under the sponsor's tax-exempt, 501(c)(3) status, but it did not provide funding to the entity.  Accordingly, for MRT Relative 1 to receive compensation, obtain healthcare benefits, and hire staff, MRT Relative 1 would have needed to raise money for Nonprofit A's operating funds.

7.   In or around December 2017, defendant RIDLEY-THOMAS paid $100,000 in campaign funds to Fiscal Sponsor A for the benefit of Nonprofit A.  At defendant RIDLEY-THOMAS's instruction, on or about December 7, 2017, a $100,000 check made payable to "[Fiscal Sponsor A] fbo [Nonprofit A]" was sent to Fiscal Sponsor A from the Mark Ridley-Thomas Committee for a Better L.A.  MRT Relative 1 was on email correspondence regarding the funding.

8.   On or about January 30, 2018, Fiscal Sponsor A refunded the $100,000 payment because it was concerned with, among other things, the nepotistic optics of a politician donating campaign funds to financially benefit his close relative.

9.   Following the refund of the $100,000 payment, MRT Relative 1 did not become Nonprofit A's new director.  Instead, in or around early 2018, MRT Relative 1 founded Nonprofit B.

10.   Fiscal Sponsor B became Nonprofit B's fiscal sponsor.  As with other fiscal sponsorships, in order for MRT Relative 1 to

receive compensation, obtain healthcare benefits, and hire staff, MRT
Relative 1 needed to raise money for Nonprofit B's operating funds.

C.   DEFENDANT MARILYN LOUISE FLYNN

11.   Defendant MARILYN LOUISE FLYNN was a tenured faculty member
at a university in Southern California ("University") and dean of the
University's School of Social Work ("Social Work School") from
approximately 1997 to 2018.  On top of her substantial salary for her
tenured faculty position, defendant FLYNN earned additional
compensation tied to her role as dean, which equaled over sixty
percent of her tenured faculty salary.

12.   The University was a private research university in Los
Angeles, California.  The Social Work School and the University's
School of Public Policy ("Public Policy School") offered postgraduate
degrees in the fields of social work and public policy, respectively.
The University and the Social Work and Public Policy Schools were
located within the Second District when defendant RIDLEY-THOMAS was a
member of the Board of Supervisors for the Second District.

13.   Under defendant FLYNN's leadership, the Social Work School
was facing a multimillion-dollar budget deficit in or around 2017 and
2018 that threatened the school's viability, as well as defendant
FLYNN's deanship and reputation within the field of social work.

14.   Defendant FLYNN was removed as dean of the Social Work
School in or around June 2018 and resigned from the University
altogether in or around September 2018.

D.   RELEVANT UNIVERSITY POLICIES

15.   University policy prohibited faculty members from being
candidates for degrees in the same department or program in which

they simultaneously had a faculty appointment due to a potential conflict of interest.

16.  University policy also prohibited donations from the University where the donation recipient intended to use the donation to hire staff and pay salary.  Defendant FLYNN was aware of this policy.

17.  University policy required donation recipients to commit to use all donated funds by the end of the University's fiscal year or else the entirety of the funds could not be released.  Defendant FLYNN was aware of this policy.

18.  These Introductory Allegations are incorporated into each count of this Indictment.

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A.   OBJECTS OF THE CONSPIRACY

19.   Beginning on a date unknown and continuing until in or around August 2018, in Los Angeles County, within the Central District of California, defendants MARK RIDLEY-THOMAS and MARILYN LOUISE FLYNN conspired with each other, and others known and unknown to the Grand Jury, to knowingly and intentionally commit offenses against the United States, namely, bribery concerning programs receiving federal funds, in violation of Title 18, United States Code, Sections 666(a)(1)(B), (a)(2), and mail and wire fraud, including through the deprivation of honest services of a County official, in violation of Title 18, United States Code, Sections 1341, 1343, 1346.

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

20.   The objects of the conspiracy were to be accomplished, in substance, as follows:

a.   Defendant RIDLEY-THOMAS would solicit, demand, accept, and agree to accept direct and indirect financial benefits from defendant FLYNN and other University officials for the benefit of defendant RIDLEY-THOMAS, MRT Relative 1, and others, in exchange for official acts to benefit defendant FLYNN and the University.

b.   MRT Relative 1 would keep defendant RIDLEY-THOMAS apprised of MRT Relative 1's solicitations and demands in order for defendant RIDLEY-THOMAS to exert pressure on defendant FLYNN and

other University officials to comply with MRT Relative 1's solicitations and demands.

c.   In exchange for direct and indirect financial benefits from defendant FLYNN and other University officials, defendant RIDLEY-THOMAS would agree to perform and perform official acts, including, among others, voting to issue and amend County contracts with the University and Social Work School.

d.   In exchange for such official acts by defendant RIDLEY-THOMAS, defendant FLYNN would give, offer, and agree to give direct and indirect financial benefits to defendant RIDLEY-THOMAS, MRT Relative 1, and others, including, but not limited to: (1) admission to the University for MRT Relative 1 to obtain a master's degree; (2) a full tuition scholarship for MRT Relative 1 to attend the University; (3) a paid professorship for MRT Relative 1 to teach at the University while MRT Relative 1 was simultaneously a student; and (4) a $100,000 payment from the University to Fiscal Sponsor B for the benefit of Nonprofit B.

e.   Defendants RIDLEY-THOMAS and FLYNN and MRT Relative 1 would take steps to disguise, conceal, and cover up the bribes, kickbacks, and other benefits defendant RIDLEY-THOMAS and MRT Relative 1 received from defendant FLYNN and other University officials, including by: (1) concealing the official acts defendant RIDLEY-THOMAS agreed to perform and performed in exchange for direct and indirect financial benefits from defendant FLYNN and other University officials; (2) falsifying in a letter the nature and purpose of the $100,000 payment from defendant RIDLEY-THOMAS to the Social Work School; (3) providing false information to University officials about the purpose and timing of the University's $100,000

1  payment to Nonprofit B; and (4) concealing material facts from
2  University officials about the purpose and timing of the University's
3  $100,000 payment to Nonprofit B.

4  C.   OVERT ACTS

5       21.   In furtherance of the conspiracy and to accomplish the
6  objects of the conspiracy, on or about the following dates,
7  defendants RIDLEY-THOMAS and FLYNN, and others known and unknown to
8  the Grand Jury, committed and caused to be committed various overt
9  acts within the Central District of California, and elsewhere,
10  including the following:

11  **University Admission and a Full Scholarship for MRT Relative 1**

12  Overt Act No. 1:   On May 17, 2017, defendant RIDLEY-THOMAS
13  told defendant FLYNN that MRT Relative 1 was interested in obtaining
14  a postgraduate degree from the University.

15  Overt Act No. 2:   On May 18, 2017, MRT Relative 1 emailed
16  defendant FLYNN to request a meeting.

17  Overt Act No. 3:   On May 18, 2017, defendant FLYNN responded
18  via email to MRT Relative 1 and wrote, "I am glad to hear from you --
19  and so quickly!"  Defendant FLYNN told MRT Relative 1 to schedule a
20  meeting with her.

21  Overt Act No. 4:   On May 24, 2017, defendant FLYNN emailed a
22  University employee and told the employee to contact MRT Relative 1
23  "right away" to facilitate MRT Relative 1's postgraduate work at the
24  University.  Defendant FLYNN wrote that MRT Relative 1 was "the
25  [close relative] of [defendant RIDLEY-THOMAS]" and that she
26  "intend[ed] to open every door for [MRT Relative 1][.]"

27  Overt Act No. 5:   On June 5, 2017, defendant FLYNN emailed
28  University officials to inform them that she was going to dinner with

8

defendant RIDLEY-THOMAS and that there was the potential for defendant RIDLEY-THOMAS to assist the Social Work School with various County initiatives.  Defendant FLYNN wrote, "[t]here are significant amounts of [C]ounty funds available[.]"

Overt Act No. 6:   On June 5, 2017, University Official 1 responded to defendant FLYNN's June 5th email about having dinner with defendant RIDLEY-THOMAS and wrote, "[defendant RIDLEY-THOMAS] has lots of discretionary money" and "should give us $1M each year for three years."

Overt Act No. 7:   On June 5, 2017, defendant FLYNN replied to University Official 1's June 5th email and wrote that she and University Official 2 were going to help MRT Relative 1 obtain a joint master's degree from the Social Work and Public Policy Schools. Defendant FLYNN wrote that she and University Official 2 intended to offer MRT Relative 1 "a full scholarship between [both schools]." Defendant FLYNN characterized the exchange as a "full scholarship for our [Social Work School] funds."

Overt Act No. 8:   On June 23, 2017, defendant FLYNN met with defendant RIDLEY-THOMAS and solicited official action from him as a member of the Board of Supervisors.

Overt Act No. 9:   On July 23, 2017, defendant FLYNN caused a confidential letter to be hand-delivered to defendant RIDLEY-THOMAS ("hand-delivered letter") in which she memorialized an agreement that she and defendant RIDLEY-THOMAS had made during their June 23rd meeting.  Defendant FLYNN wrote, "I am prepared to follow up on our discussion in my office."  Defendant FLYNN said, "I look forward to working with [MRT Relative 1]" and will "take steps with [MRT Relative 1] to plan the road ahead."  Defendant FLYNN then outlined

what she expected from defendant RIDLEY-THOMAS in exchange for her
efforts to benefit MRT Relative 1: (1) a new contract between the
University/Social Work School and the Los Angeles County Department
of Children and Family Services ("DCFS"); (2) a new contract between
the University/Social Work School and the Los Angeles County
Probation Department ("Probation"); and (3) an amendment to an
existing contract between the University/Social Work School and the
Los Angeles County Department of Mental Health ("DMH") related to
services provided by University Telehealth ("Telehealth"), which was
a clinic where Social Work School students provided online mental
health and counseling services to patients referred by the County.

      a.   In the hand-delivered letter, defendant FLYNN said
that she and defendant RIDLEY-THOMAS had discussed the "[b]locked
movement of [the University's] Title IVe contract with DCFS[.]"
"Title IVe" referred to Title IV(e) of the Social Security Act, which
allowed the County to use federal funds to compensate schools of
social work, including the Social Work School, for training and other
services.  Defendant FLYNN told defendant RIDLEY-THOMAS that she
needed "[i]mmediate negotiation and [execution] of a 3-year contract
by DCFS and the University Consortium for Children and Families[.]"
Defendant FLYNN said that the "new contract...should contain
increased resources" and that the Social Work School had "[drawn] up
our budgets for the 2017-18 fiscal year" based on the expectation of
those increased resources.  Defendant FLYNN noted that the
"unprecedented lag" in securing a new contract was "particularly
problematic" for the University and Social Work School.

      b.   In the hand-delivered letter, defendant FLYNN also
told defendant RIDLEY-THOMAS that she wanted a new "[Title] IVe

contract" with Probation in which the University would be involved in "parole office refurbishment and services."  Defendant FLYNN said that she would be meeting with County Official 1 "to discuss development of a IVe contract with the Department of Probation."  She continued: "[The University] will need the help and cooperation of DCFS and perhaps assurance that the Board of Supervisors would favor this initiative."

        c.   In the hand-delivered letter, defendant FLYNN told defendant RIDLEY-THOMAS that she needed a "contract amendment" for the Telehealth-DMH contract to expand its scope and capacity, and that "[t]hese two actions are now essential to solidify the functionality of Telehealth."

Overt Act No. 10:   On July 26, 2017, defendant FLYNN told MRT Relative 1 that he/she would receive a full tuition scholarship to pursue a joint master's degree from the Social Work and Public Policy Schools.

Overt Act No. 11:   In July 2017, defendant FLYNN began working with University officials to ensure that MRT Relative 1 would receive a joint master's degree from the Social Work and Public Policy Schools with a full tuition scholarship.

Overt Act No. 12:   On July 26, 2017, defendant FLYNN told a University employee that there was a "specific and very rigid sequence of courses alternating between [the Social Work School] and [the Public Policy School] that [had] to be followed."  To accommodate MRT Relative 1's preferences and schedule, defendant FLYNN told the employee to "tackle this enigma" in order to ensure that MRT Relative 1 could receive a joint master's degree without adhering to the standard sequence of coursework.

Overt Act No. 13:   In July 2017, defendant FLYNN began working with University officials to ensure that MRT Relative 1 could attend University classes online.  Defendant FLYNN understood that MRT Relative 1 preferred to attend classes online and endeavored to have an entire online curriculum, which had never existed previously for this program, developed to accommodate MRT Relative 1.

Overt Act No. 14:   In July 2017, defendant RIDLEY-THOMAS presented a motion, Item No. 16 on the Board of Supervisors' August 1, 2017 agenda, recommending "a memorandum of understanding to establish a partnership with [the Social Work School] to enhance services[.]"

Overt Act No. 15:   On July 30, 2017, upon receiving an email from a University employee about Item No. 16 on the Board of Supervisors' August 1, 2017 agenda, which would establish a partnership between the County and Social Work School, defendant FLYNN replied: "Yes, I talked with [defendant RIDLEY-THOMAS] about this, and I am very happy to see that [defendant RIDLEY-THOMAS] was as good as his word."

Overt Act No. 16:   On August 1, 2017, defendant RIDLEY-THOMAS voted in favor of Item No. 16, which passed.

Overt Act No. 17:   In October 2017, defendant RIDLEY-THOMAS presented a motion, Item No. 3 on the Board of Supervisors' October 17, 2017 agenda, relating to "Probation University."  Probation University was a concept whereby an outside university, such as the Social Work School, would help train Probation employees and, in return, receive compensation for providing those services.

Overt Act No. 18:   On October 12, 2017, upon receiving an email from a University employee about Item No. 3 on the Board of

Supervisors' October 17, 2017 agenda, which could lead to additional compensation for the Social Work School, defendant FLYNN replied: "I am holding my breath...[defendant RIDLEY-THOMAS] is really trying to deliver here."

Overt Act No. 19:  On October 17, 2017, defendant RIDLEY-THOMAS voted in favor of Item No. 3, which passed.

Overt Act No. 20:  On October 17, 2017, upon learning that Item No. 3 had passed, defendant FLYNN emailed a University employee: "I am THRILLED!"

**The Paid Professorship for MRT Relative 1**

Overt Act No. 21:  In the fall of 2017, defendant RIDLEY-THOMAS and MRT Relative 1 began soliciting from defendant FLYNN and other University officials a paid professorship for MRT Relative 1 to teach at the University.

Overt Act No. 22:  While soliciting the paid professorship for MRT Relative 1, defendant RIDLEY-THOMAS and MRT Relative 1 concealed from University officials that MRT Relative 1 was the subject of a sexual harassment investigation and that MRT Relative 1 might resign from the State Assembly.

Overt Act No. 23:  On December 4, 2017, when MRT Relative 1 was a Member of the State Assembly representing a district in Los Angeles and the subject of a sexual harassment investigation, defendant RIDLEY-THOMAS received an email from MRT Relative 1 about a press release regarding a sexual harassment investigation of a fellow Member of the State Assembly.  MRT Relative 1 said, "rumors are another Los Angeles Legislator is next[.]"

Overt Act No. 24:  On December 5, 2017, defendant RIDLEY-THOMAS was blind carbon copied ("bcc'ed") on an email MRT Relative 1 sent to

University Official 2.  MRT Relative 1 told University Official 2 that he/she wanted a "Practioner-in-Residence" title for his/her professorship, "beginning compensation" in the range of $25,000, and to "launch in January [2018]."

Overt Act No. 25:  On December 9, 2017, at approximately 11:17 a.m., defendant RIDLEY-THOMAS received a forwarded email from MRT Relative 1.  The forwarded email was sent at approximately 10:21 a.m. from University Official 2 in response to MRT Relative 1's December 5th email.  University Official 2 told MRT Relative 1 that a January 2018 start date was not feasible and that University Official 2 would have to "create a part-time position with a salary" to accommodate MRT Relative 1, which University Official 2 had not been anticipating.

Overt Act No. 26:  On December 9, 2017, at approximately 11:58 a.m., defendant RIDLEY-THOMAS emailed MRT Relative 1 the link to a blog article suggesting that MRT Relative 1 may be "the Next #MeToo to Go," meaning to be forced out of the State Assembly on account of a sexual harassment scandal.

Overt Act No. 27:  On December 11, 2017, defendant FLYNN received an email from MRT Relative 1, who bcc'ed defendant RIDLEY-THOMAS.  MRT Relative 1 told defendant FLYNN that he/she wanted to "follow up on a couple things" and provided his/her phone number.

Overt Act No. 28:  On December 14, 2017, defendant RIDLEY-THOMAS emailed defendant FLYNN.  The subject line had the name of County Official 2, who was a high-level public official in a position to help defendant FLYNN secure a lucrative amendment to the Telehealth-DMH contract from the County.  The email said: "[He/She]'s ready to go. 😉 [winking face emoji][.]"

1        <u>Overt Act No. 29</u>:   In or around 2017 and 2018, defendant

2    RIDLEY-THOMAS advocated for and exerted pressure on County Official 2

3    to perform official acts favorable to the Telehealth-DMH contract.

4        <u>Overt Act No. 30</u>:   On December 14, 2017, within approximately

5    one hour of receiving defendant RIDLEY-THOMAS's email saying that

6    County Official 2 was "ready to go," defendant FLYNN emailed multiple

7    University officials and MRT Relative 1 to expedite MRT Relative 1's

8    enrollment at the University and full tuition scholarship.  In the

9    email, defendant FLYNN instructed that MRT Relative 1's admission to

10   the University should be given the "highest priority."  In spite of

11   the Social Work School's multimillion-dollar budget deficit,

12   defendant FLYNN agreed to "tap our endowed funds" so that the Social

13   Work School could "pay[] all of [MRT Relative 1's] tuition costs

14   through a scholarship award."  Defendant FLYNN urged University

15   officials to move quickly to "wind this up before we all leave for

16   the holidays."  Defendant FLYNN further noted that MRT Relative 1

17   "will be the first to attempt a joint degree through the [Virtual

18   Academic Center], combining social work and the Master's in Public

19   Administration from [the Public Policy School]" and that "[the Public

20   Policy School] is still building their online degree and won't have

21   courses available for several months for the MPA."

22       <u>Overt Act No. 31</u>:   On December 15, 2017, after receiving

23   defendant RIDLEY-THOMAS's December 14th email that County Official 2

24   was "ready to go," defendant FLYNN sent an email to University

25   Official 2 to expedite MRT Relative 1's paid professorship.  Flagging

26   the email as "URGENT," defendant FLYNN insisted that University

27   Official 2 "get the offer letter out before the holidays" to MRT

28

Relative 1 "in the interests of showing MRT [defendant RIDLEY-THOMAS] that we can deliver."

Overt Act No. 32:   In or around 2017 and 2018, defendant FLYNN sought University admission for MRT Relative 1 to obtain a joint degree from the Social Work and Public Policy Schools and, at the same time, a paid professorship for MRT Relative 1 to teach at the Social Work and Public Policy Schools, even though MRT Relative 1's dual student-faculty status would violate University policy.

Overt Act No. 33:   On January 4, 2018, defendant RIDLEY-THOMAS received an email from MRT Relative 1 that contained an accounting of MRT Relative 1's significant debt.

Overt Act No. 34:   On January 5, 2018, defendant RIDLEY-THOMAS emailed defendant FLYNN and asked her to call him.

Overt Act No. 35:   On January 7, 2018, defendant RIDLEY-THOMAS received an email from MRT Relative 1 regarding MRT Relative 1's anticipated University employment and personal finances.  With respect to the Social Work and Public Policy Schools, MRT Relative 1 stated that he/she was "await[ing] [defendant RIDLEY-THOMAS's] conversation with [defendant FLYNN] and [University Official 2]" for a "check-in."

Overt Act No. 36:   On January 9, 2018, defendant FLYNN caused MRT Relative 1 to be awarded a "full tuition scholarship," totaling over $26,000 in paid tuition from the Social Work School for the spring and summer of 2018.

Overt Act No. 37:   On January 9, 2018, defendant RIDLEY-THOMAS received from MRT Relative 1 a forwarded email dated January 9, 2018 about the full tuition scholarship award.

1    <u>Overt Act No. 38:</u>   On February 13, 2018, defendant FLYNN caused
2    MRT Relative 1 to receive an email informing him/her that the
3    University had agreed to waive the usual hiring process and that
4    he/she would soon receive a contract for the paid professorship.
5    <u>Overt Act No. 39:</u>   On February 13, 2018, defendant RIDLEY-
6    THOMAS received from MRT Relative 1 a forwarded email dated February
7    13, 2018 about the paid professorship.
8    <u>Overt Act No. 40:</u>   On February 13, 2018, defendant RIDLEY-
9    THOMAS responded via email to MRT Relative 1 about the paid
10   professorship with thumbs up and winking face emojis: " 👍 😉 [.]"
11   <u>Overt Act No. 41:</u>   On February 13, 2018, after learning that
12   same day that the usual hiring process had been waived and MRT
13   Relative 1 would be offered the paid professorship, defendant RIDLEY-
14   THOMAS emailed defendant FLYNN.  The subject line was "Probation
15   Reform motion."  Defendant RIDLEY-THOMAS wrote, "[w]ould like to
16   discuss this with you in the near term."
17   <u>Overt Act No. 42:</u>   On February 13, 2018, defendant FLYNN
18   responded to defendant RIDLEY-THOMAS's "Probation Reform motion"
19   email.  Defendant FLYNN wrote that she had "an excellent meeting last
20   night with [County Official 2] and [County Official 3]," who were two
21   high-ranking public officials in a position to help defendant FLYNN
22   obtain a lucrative amendment to the Telehealth-DMH contract and
23   secure the Probation contract with the Social Work School.  Defendant
24   FLYNN stated that she was "very encouraged" and thanked defendant
25   RIDLEY-THOMAS "for facilitating all these important relationships and
26   opportunities."
27   <u>Overt Act No. 43:</u>   On February 23, 2018, defendant FLYNN
28   emailed defendant RIDLEY-THOMAS about "an extremely important request

17

for contract amendment that will be on the [Board of Supervisors'] agenda next week" regarding "our TeleHealth contract with DMH."

Overt Act No. 44:   On February 23, 2018, defendant RIDLEY-THOMAS responded to defendant FLYNN's "extremely important request" email regarding the Telehealth contract amendment and bcc'ed MRT Relative 1.  Defendant RIDLEY-THOMAS told defendant FLYNN: "Your wish is my command."

Overt Act No. 45:   On March 9, 2018, defendant FLYNN caused a University employee to mail an offer letter, dated February 16, 2018, to MRT Relative 1 for the paid professorship.  In the letter, the University formally offered MRT Relative 1 the position of "Professor of the Practice of Policy and Social Work," beginning on March 16, 2018 and continuing until May 15, 2019.  The offer letter stated that MRT Relative 1 would receive a salary of $50,000, of which the Social Work School and Public Policy School would each fund half.

Overt Act No. 46:   On March 10, 2018, defendant FLYNN caused her plan to secure MRT Relative 1 a paid professorship with the University to be achieved, as MRT Relative 1 signed the offer letter for the paid professorship.

**The $100,000 Payment for the Benefit of MRT Relative 1**

Overt Act No. 47:   In or around early to mid-2018, defendant RIDLEY-THOMAS and MRT Relative 1 considered hiring Individual 1 to work for Nonprofit B.  Defendant RIDLEY-THOMAS and MRT Relative 1 were aware that MRT Relative 1 needed to raise money for Nonprofit B, not just for MRT Relative 1 to receive a salary, but also to allow MRT Relative 1 to formally hire and compensate Individual 1.

Overt Act No. 48:   In or around early to mid-2018, defendant RIDLEY-THOMAS and MRT Relative 1 agreed that Individual 1 would begin

full-time employment with Nonprofit B in May 2018 and be paid on the "15th of every month."

Overt Act No. 49:   On April 20, 2018, defendant RIDLEY-THOMAS emailed defendant FLYNN and asked her to call him.

Overt Act No. 50:   On April 21, 2018, defendant FLYNN responded to defendant RIDLEY-THOMAS's April 20th email and said, "[w]ill certainly do so."

Overt Act No. 51:   On April 26, 2018, defendant FLYNN met with defendant RIDLEY-THOMAS, solicited official action from him as a member of the Board of Supervisors, and discussed a "gift agreement" with him.

Overt Act No. 52:   On April 26, 2018, defendant RIDLEY-THOMAS emailed Individual 1's resume, which he had received from MRT Relative 1, to defendant FLYNN and wrote: "As discussed.  Thank you."

Overt Act No. 53:   In 2018, defendant FLYNN told multiple University officials that the Social Work School needed to obtain the amended Telehealth-DMH contract from the County, which she expected to generate approximately $9 million per year for the Social Work School.

Overt Act No. 54:   On April 26, 2018, at defendant RIDLEY-THOMAS's request, defendant FLYNN agreed to funnel a $100,000 payment from the Mark Ridley-Thomas Committee for a Better L.A. through the University/Social Work School to Fiscal Sponsor B for the benefit of Nonprofit B and, in turn, MRT Relative 1.

Overt Act No. 55:   Beginning in late April 2018, defendants RIDLEY-THOMAS and FLYNN and MRT Relative 1 concealed the agreement to funnel $100,000 from the Mark Ridley-Thomas Committee for a Better L.A. through the University/Social Work School to Fiscal Sponsor B

from University officials, Fiscal Sponsor B officials, and the public in order to ensure the success of the University's payment to Fiscal Sponsor B and avoid any political fallout for defendant RIDLEY-THOMAS.

Overt Act No. 56:   Around the time of defendant FLYNN's April 26th solicitation meeting with defendant RIDLEY-THOMAS, defendant FLYNN told University Official 3 something to the effect that defendant FLYNN had good news, in that the University was going to get the Telehealth contract, but that defendant FLYNN had to do a "favor" to get it.  Defendant FLYNN winked at University Official 3 when she talked about doing a "favor" in exchange for the Telehealth contract.

Overt Act No. 57:   On April 27, 2018, MRT Relative 1 falsely told at least one Fiscal Sponsor B employee that the University had awarded Nonprofit B a "grant," thereby furthering efforts by defendants RIDLEY-THOMAS and FLYNN to conceal the true nature of the funneled $100,000 payment from the Mark Ridley-Thomas Committee for a Better L.A. through the University to Fiscal Sponsor B.

Overt Act No. 58:   On May 2, 2018, defendant RIDLEY-THOMAS caused a letter and $100,000 check to be sent to defendant FLYNN. The check was made payable to the Social Work School from the Mark Ridley-Thomas Committee for a Better L.A.  The letter stated that the $100,000 was to be used at defendant FLYNN's "discretion in order to best facilitate the impressive policy and practical work of the [Social Work School] and its impact in the community."

Overt Act No. 59:   On May 3, 2018, at approximately 9:20 p.m., defendant RIDLEY-THOMAS received an email from MRT Relative 1 with

bank wiring information for Fiscal Sponsor B in order to facilitate the $100,000 payment from the University to Fiscal Sponsor B.

Overt Act No. 60:   On May 3, 2018, at approximately 10:20 p.m., defendant RIDLEY-THOMAS emailed defendant FLYNN the bank wiring information for Fiscal Sponsor B to facilitate the $100,000 payment from the University to Fiscal Sponsor B.  Defendant RIDLEY-THOMAS bcc'ed MRT Relative 1 and told defendant FLYNN: "At this point it is necessary to act with dispatch so as to facilitate the completion of [Individual 1's] on-boarding with [Fiscal Sponsor B] in a timely manner -- no later than May 15th."

Overt Act No. 61:   On May 3, 2018, at approximately 10:27 p.m., defendant FLYNN responded to defendant RIDLEY-THOMAS's 10:20 p.m. email.  Defendant FLYNN wrote: "If that is the case, then we definitely cannot use the option of a university appointment, at least this year.  However, I will adopt another course of action tomorrow morning and assume the person we are to contact is [Fiscal Sponsor B Employee 1].  I will let people know that this must be expedited."

Overt Act No. 62:   On May 3, 2018, at approximately 10:35 p.m., defendant FLYNN emailed University officials to facilitate the $100,000 payment from the University/Social Work School to Fiscal Sponsor B.  Defendant FLYNN said: "I will explain later, but it is urgent that we issue a sponsorship to [Fiscal Sponsor B] for $100,000 and that it be received by May 15th if at all possible."

Overt Act No. 63:   On May 4, 2018, at approximately 8:16 a.m., defendant FLYNN emailed defendant RIDLEY-THOMAS with an update regarding the $100,000 payment from the University to Fiscal Sponsor B.  Defendant FLYNN wrote: "Part of the issue here is that the

sponsorship will have to move through the university payroll office over which we have very little control.  I can guarantee that we will fulfill our part of the transaction today, but can only nag and nip at people's heels at the higher administration levels.  If May 15th is a drop dead date, then I will need to understand a little more so that I can figure out what to do about bridge funds.  (I actually have an idea already.)"

Overt Act No. 64:  On May 4, 2018, at approximately 11:39 a.m., defendant RIDLEY-THOMAS responded to defendant FLYNN's 8:16 a.m. email and said: "I have spoken with [Fiscal Sponsor B Employee 2], fiscal agent for [Nonprofit B].  Please call [him/her] and assure [him/her] of the School's commitment and that you have begun the funds transfer...Please confirm receipt and keep me in the loop. 🤫 [shushing face emoji][.]"

Overt Act No. 65:  On May 4, 2018, at approximately 12:03 p.m., defendant RIDLEY-THOMAS received an email from MRT Relative 1 containing the offer letter previously sent to Individual 1 for Individual 1's employment with Nonprofit B.

Overt Act No. 66:  On May 4, 2018, at approximately 12:29 p.m., defendant RIDLEY-THOMAS emailed Fiscal Sponsor B Employee 2 the news that Individual 1 had accepted an offer of employment with a salary of $70,000.  Defendant RIDLEY-THOMAS wrote: "It is my understanding that [University] financial support comes in at $100k."

Overt Act No. 67:  On May 4, 2018, at approximately 12:50 p.m., defendant FLYNN responded to defendant RIDLEY-THOMAS's 11:39 a.m. email.  Defendant FLYNN wrote: "I am happy to say that I think we can expedite this so that the funds are available by May 18th...I think the path looks clear."

<u>Overt Act No. 68:</u>   On May 4, 2018, at approximately 2:06 p.m., defendant RIDLEY-THOMAS responded to defendant FLYNN's 12:50 p.m. email: "You're the best!"

<u>Overt Act No. 69:</u>   On May 4, 2018, at approximately 2:57 p.m., defendant FLYNN sent defendant RIDLEY-THOMAS an email with the subject line "On its way."  In the email, defendant FLYNN provided defendant RIDLEY-THOMAS an update on the status of the $100,000 payment and said: "I communicated with [Fiscal Sponsor B Employee 1] at [Fiscal Sponsor B] this afternoon, sent [him/her] a template for the invoice we need, [he/she] prepared an invoice to the [Social Work School] on that basis, I confirmed with our business office that the template was proper, and once we confirm vendor information, we will process the [$100,000] payment...perhaps this afternoon.  We will track it through the [U]niversity and as far as I know, payment should be received by May 18th."

<u>Overt Act No. 70:</u>   On May 4, 2018, at approximately 3:25 p.m., defendant RIDLEY-THOMAS responded to defendant FLYNN's 2:57 p.m. email: "I repeat: You're the best!!!"

<u>Overt Act No. 71:</u>   During the time defendant FLYNN was ensuring that Nonprofit B received the $100,000 payment from the University at defendant RIDLEY-THOMAS's request, defendant FLYNN concealed from University officials that Fiscal Sponsor B, Nonprofit B, and MRT Relative 1 intended to use the $100,000, at least in part, to hire and compensate Individual 1, which violated University policy.

<u>Overt Act No. 72:</u>   In early May 2018, in order to ensure the successful transfer of the entire $100,000 payment to Nonprofit B, defendant FLYNN falsely told University officials that Fiscal Sponsor B intended to expend the entire $100,000 payment by June 30, 2018

(the end of the University's fiscal year), even though defendant
FLYNN knew that Fiscal Sponsor B, Nonprofit B, and MRT Relative 1
intended to use the $100,000, at least in part, as salary for
Individual 1 and that the $100,000 would not be expended in its
entirety by June 30, 2018.

Overt Act No. 73:   On May 4, 2018, defendant FLYNN, in order to
ensure the successful transfer of the $100,000 payment to Nonprofit
B, falsely told Fiscal Sponsor B Employee 1 to write on the invoice
to the University that Fiscal Sponsor B intended to use the $100,000
to fund a survey and that the $100,000 would be expended prior to
June 30, 2018.

Overt Act No. 74:   On or after May 4, 2018, defendant FLYNN
signed and approved the false Fiscal Sponsor B invoice to facilitate
the $100,000 payment from the University to Fiscal Sponsor B.

Overt Act No. 75:   On May 8, 2018, defendant FLYNN emailed
defendant RIDLEY-THOMAS and said that the $100,000 payment to Fiscal
Sponsor B would arrive on Monday, May 14, 2018.

Overt Act No. 76:   On May 9, 2018, defendant FLYNN caused a
$100,000 check to be mailed from the University to Fiscal Sponsor B.

Overt Act No. 77:   On May 10, 2018, defendant FLYNN met with
County Official 2 "to get an update on the timing of renegotiation
for our TeleHealth contract."

Overt Act No. 78:   On May 10, 2018, at approximately 3:49 p.m.,
defendant RIDLEY-THOMAS received an email from Fiscal Sponsor B
Employee 2 confirming that Individual 1 would be offered employment
by Fiscal Sponsor B/Nonprofit B.

Overt Act No. 79:   On May 10, 2018, at approximately 4:05 p.m.,
defendant RIDLEY-THOMAS forwarded the 3:49 p.m. email from Fiscal

Sponsor B Employee 2 to MRT Relative 1.  Defendant RIDLEY-THOMAS said: "My piece is done. 👊 [fist bump emoji][.]"

Overt Act No. 80:   On May 10, 2018, at approximately 9:56 p.m., defendant RIDLEY-THOMAS emailed defendant FLYNN, bcc'ed MRT Relative 1, and wrote: "Need to debrief and clear up a few things with you confidentially."

Overt Act No. 81:   On May 11, 2018, at approximately 6:21 a.m., defendant FLYNN responded to defendant RIDLEY-THOMAS's May 10th email and wrote: "I'm sorry I missed you" and "[y]ou have my cell phone number."

Overt Act No. 82:   On May 11, 2018, at approximately 6:58 a.m., defendant RIDLEY-THOMAS responded to defendant FLYNN's 6:21 a.m. email and wrote: "Want to talk master [County] contract stuff and somehow use yesterday's 'discussion' to advance it. 😉 [winking face emoji][.]"

Overt Act No. 83:   On May 11, 2018, defendants RIDLEY-THOMAS and FLYNN caused the University to deposit the $100,000 check from the Mark Ridley-Thomas Committee for a Better L.A. by means of an interstate wire transmission.

Overt Act No. 84:   On May 24, 2018, defendants RIDLEY-THOMAS and FLYNN caused Fiscal Sponsor B to deposit the $100,000 check from the University by means of an interstate wire transmission.

Overt Act No. 85:   In or around June 2018, in an effort to ensure the continued success of her agreement with defendant RIDLEY-THOMAS in exchange for the $100,000 payment following her removal as dean, defendant FLYNN told University Official 3 that she had made a "deal" or "arrangement" with defendant RIDLEY-THOMAS and MRT Relative

1 and that, at some point, she would need to tell University Official 3 about the deal.

 Overt Act No. 86:  On July 31, 2018, defendant RIDLEY-THOMAS voted in favor of Item No. 27 on the Board of Supervisors' July 31, 2018 agenda, which was a favorable amendment to the University's Telehealth agreement with the County that would sustain the program for an additional year and was consistent with the terms defendant FLYNN requested in her February 23, 2018 email to defendant RIDLEY-THOMAS.  The motion passed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT TWO

[18 U.S.C. § 666(a)(1)(B)]

[DEFENDANT MARK RIDLEY-THOMAS]

22.   Beginning on a date unknown and continuing until in or around August 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendant MARK RIDLEY-THOMAS, an agent of the County of Los Angeles, corruptly solicited, demanded, accepted, and agreed to accept something of value from a person to benefit himself and others, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of the County of Los Angeles having a value of $5,000 or more.  Specifically, defendant RIDLEY-THOMAS solicited, demanded, accepted, and agreed to accept something of value from Marilyn Louise Flynn and other University officials to benefit himself and MRT Relative 1, including: (1) MRT Relative 1's admission to the University to obtain a master's degree; (2) a full tuition scholarship for MRT Relative 1 to attend the University; (3) a paid professorship for MRT Relative 1 to teach at the University; and (4) a $100,000 payment from the University to Fiscal Sponsor B for the benefit of Nonprofit B and MRT Relative 1, intending to be influenced and rewarded in connection with, among other things, the issuance of, and amendment to, County contracts with the University and Social Work School.

COUNT THREE

[18 U.S.C. § 666(a)(2)]

[DEFENDANT MARILYN LOUISE FLYNN]

23.   Beginning on a date unknown and continuing until in or around August 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendant MARILYN LOUISE FLYNN corruptly gave, offered, and agreed to give something of value to a person, intending to influence and reward Mark Ridley-Thomas in connection with a business, transaction, and series of transactions of the County of Los Angeles having a value of $5,000 or more. Specifically, defendant FLYNN gave, offered, and agreed to give something of value to Mark Ridley-Thomas and MRT Relative 1, including: (1) MRT Relative 1's admission to the University to obtain a master's degree; (2) a full tuition scholarship for MRT Relative 1 to attend the University; (3) a paid professorship for MRT Relative 1 to teach at the University; and (4) a $100,000 payment from the University to Fiscal Sponsor B for the benefit of Nonprofit B and MRT Relative 1, intending to influence and reward Mark Ridley-Thomas in connection with, among other things, the issuance of, and amendment to, County contracts with the University and Social Work School.

COUNTS FOUR THROUGH TWENTY

[18 U.S.C. §§ 1341, 1343, 1346, 2(b)]

[ALL DEFENDANTS]

A.   THE SCHEME TO DEFRAUD

24.   Beginning in or around 2017, and continuing until in or around August 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendants MARK RIDLEY-THOMAS and MARILYN LOUISE FLYNN, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the citizens of the County of Los Angeles of their right to the honest services of defendant RIDLEY-THOMAS by means of bribery, kickbacks, materially false and fraudulent pretenses, and the concealment of material facts.

B.   MEANS AND METHODS OF THE SCHEME TO DEFRAUD

25.   The scheme to defraud operated, in substance, in the following manner and by the following means:

a.   Defendant RIDLEY-THOMAS and his co-schemers would seek and accept bribes and kickbacks from defendant FLYNN and other University officials in the form of direct and indirect financial benefits, including but not limited to: (1) MRT Relative 1's admission to the University to obtain a master's degree; (2) a full tuition scholarship for MRT Relative 1 to attend the University; (3) a paid professorship for MRT Relative 1 to teach at the University; and (4) a $100,000 payment from the University to Fiscal Sponsor B for the benefit of Nonprofit B and MRT Relative 1.

b.   In exchange for the bribes and kickbacks from defendant FLYNN and other co-schemers, defendant RIDLEY-THOMAS would agree to perform and perform the following types of official acts, among others: (1) presenting motions and agenda items for the Board of Supervisors; (2) voting on Board of Supervisors' motions and agenda items; (3) exerting pressure on other members of the Board of Supervisors to present, introduce, and vote on motions and agenda items; and (4) exerting pressure on other County officials to perform official acts with respect to the issuance of, and amendment to, County contracts with the University and Social Work School.

c.   Defendants RIDLEY-THOMAS and FLYNN and their co-schemers would conceal their scheme and operate their scheme through materially false and fraudulent pretenses by: (1) concealing bribes and kickbacks solicited and received by defendant RIDLEY-THOMAS; (2) concealing bribes and kickbacks offered and given by defendant FLYNN and other University officials at defendant FLYNN's direction; (3) concealing material facts, including but not limited to: (a) that defendants RIDLEY-THOMAS and FLYNN had agreed to funnel the $100,000 payment from the Mark Ridley-Thomas Committee for a Better L.A. through the University by way of a nearly simultaneous $100,000 payment from the University to Fiscal Sponsor B; and (b) that Fiscal Sponsor B, Nonprofit B, and MRT Relative 1 intended to use the $100,000, at least in part, to hire and compensate Individual 1; and (4) making materially false statements, including but not limited to the date by which Fiscal Sponsor B intended to expend the entirety of the $100,000 payment.

C.   <u>USE OF MAILS</u>

26.   On or about the dates set forth below, within the Central District of California, and elsewhere, defendants RIDLEY-THOMAS and FLYNN, for the purpose of executing the above-described scheme to defraud, willfully caused the following items to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service, or to be deposited to be sent and delivered by a private or commercial interstate carrier according to the directions thereon:

| COUNT | DATE | MAILING |
|---|---|---|
| FOUR | March 9, 2018 | Letter dated February 16, 2018, addressed to MRT Relative 1 from defendant FLYNN and University Official 2, offering MRT Relative 1 the position of "Professor of the Practice of Policy and Social Work," which was sent via FedEx. |
| FIVE | May 9, 2018 | Check no. 50587154 dated May 9, 2018, in the amount of $100,000 from the University to Fiscal Sponsor B, which was sent via FedEx. |

D.   <u>USE OF WIRES</u>

27.   On or about the dates set forth below, within the Central District of California, and elsewhere, defendants RIDLEY-THOMAS and FLYNN, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission of the following items by means of a wire communication in interstate commerce:

| COUNT | DATE | WIRE TRANSMISSION |
|---|---|---|
| SIX | December 5, 2017 | MRT Relative 1 emailed University Official 2 and bcc'ed defendant RIDLEY-THOMAS.  In the email, MRT Relative 1 told University Official 2 that he/she wanted a "Practioner-in- |

| COUNT | DATE | WIRE TRANSMISSION |
|---|---|---|
| | | Residence" title for his/her professorship, "beginning compensation" in the range of $25,000, and to "launch in January [2018]."  Using his/her Google/Gmail account, MRT Relative 1 sent the email to defendant RIDLEY-THOMAS at his Oath/AOL account. |
| SEVEN | December 9, 2017 | MRT Relative 1 forwarded an email from University Official 2 to defendant RIDLEY-THOMAS.  In the forwarded email, University Official 2 told MRT Relative 1 that a January 2018 start date was not feasible and that University Official 2 would have to "create a part-time position with a salary" to accommodate MRT Relative 1.  Using his/her Google/Gmail account, MRT Relative 1 forwarded the email to defendant RIDLEY-THOMAS at his Oath/AOL account. |
| EIGHT | December 14, 2017 | Using his Oath/AOL account, defendant RIDLEY-THOMAS emailed defendant FLYNN.  The subject line had the name of County Official 2.  The email said: "[He/She]'s ready to go. 😉 [winking face emoji][.]" |
| NINE | January 9, 2018 | MRT Relative 1 forwarded an email regarding the full tuition scholarship award to defendant RIDLEY-THOMAS at his Oath/AOL account.  The forwarded email stated that MRT Relative 1 had been awarded a full tuition scholarship totaling over $26,000 to attend the University in the spring and summer of 2018. |
| TEN | February 13, 2018 | MRT Relative 1 forwarded an email to defendant RIDLEY-THOMAS.  The forwarded email indicated that the University had agreed to waive the usual hiring process and that MRT Relative 1 would soon receive a contract for the paid professorship. |

| COUNT | DATE | WIRE TRANSMISSION |
|-------|------|-------------------|
| | | Using his/her Google/Gmail account, MRT Relative 1 forwarded the email to defendant RIDLEY-THOMAS at his Oath/AOL account. |
| ELEVEN | February 13, 2018 | In response to the February 13th email from MRT Relative 1 about the paid professorship, defendant RIDLEY-THOMAS emailed MRT Relative 1 with thumbs up and winking face emojis: "👍😉 [.]"  Using his Oath/AOL account, defendant RIDLEY-THOMAS emailed MRT Relative 1 at his/her Google/Gmail account. |
| TWELVE | February 13, 2018 | Using his Oath/AOL account, defendant RIDLEY-THOMAS emailed defendant FLYNN.  The subject line was "Probation Reform motion."  Defendant RIDLEY-THOMAS said, "[w]ould like to discuss this with you in the near term." |
| THIRTEEN | February 13, 2018 | In response to defendant RIDLEY-THOMAS's February 13th email regarding the "Probation Reform motion," defendant FLYNN emailed defendant RIDLEY-THOMAS at his Oath/AOL account and said: "I had an excellent meeting last night with [County Official 2] and [County Official 3]."  Defendant FLYNN thanked defendant RIDLEY-THOMAS "for facilitating all these important relationships and opportunities." |
| FOURTEEN | February 23, 2018 | Defendant FLYNN emailed defendant RIDLEY-THOMAS at his Oath/AOL account about "an extremely important request for contract amendment that will be on the [Board of Supervisors'] agenda next week" regarding "our TeleHealth contract with DMH." |

| COUNT | DATE | WIRE TRANSMISSION |
|---|---|---|
| FIFTEEN | February 23, 2018 | In response to defendant FLYNN's February 23rd email regarding the Telehealth-DMH contract amendment, defendant RIDLEY-THOMAS emailed defendant FLYNN and bcc'ed MRT Relative 1.  Defendant RIDLEY-THOMAS told defendant FLYNN: "Your wish is my command."  Using his Oath/AOL account, defendant RIDLEY-THOMAS emailed MRT Relative 1 at his/her Google/Gmail account. |
| SIXTEEN | May 3, 2018 | Defendant RIDLEY-THOMAS emailed defendant FLYNN the bank wiring information for Fiscal Sponsor B to facilitate the $100,000 payment from the University to Fiscal Sponsor B. Defendant RIDLEY-THOMAS said: "At this point it is necessary to act with dispatch so as to facilitate the completion of [Individual 1's] on-boarding with [Fiscal Sponsor B] in a timely manner -- no later than May 15th."  Using his Oath/AOL account to send the email to defendant FLYNN, defendant RIDLEY-THOMAS also bcc'ed MRT Relative 1 at his/her Google/Gmail account. |
| SEVENTEEN | May 3, 2018 | In response to defendant RIDLEY-THOMAS's May 3rd email, defendant FLYNN emailed defendant RIDLEY-THOMAS at his Oath/AOL account and said: "I will let people know that this must be expedited." |
| EIGHTEEN | May 11, 2018 | Using his Oath/AOL account, defendant RIDLEY-THOMAS emailed defendant FLYNN and said: "Want to talk master [County] contract stuff and somehow use yesterday's 'discussion' to advance it. 😉 [winking face emoji][.]" |

| COUNT | DATE | WIRE TRANSMISSION |
|-------|------|-------------------|
| NINETEEN | May 11, 2018 | Bank wire transfer of $100,000 from a California Bank & Trust account for the Mark Ridley-Thomas Committee for a Better L.A. into a Bank of America account for the University processed through Bank of America servers located in Virginia and Texas. |
| TWENTY | May 24, 2018 | Bank wire transfer of $100,000 from a Bank of America account for the University into a JPMorgan Chase Bank account for Fiscal Sponsor B processed through Bank of America servers located in Virginia and Texas. |

A TRUE BILL

/S/
_____
Foreperson

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

MACK E. JENKINS
Assistant United States Attorney
Chief, Public Corruption
and Civil Rights Section

RUTH C. PINKEL
Assistant United States Attorney
Senior Litigation Counsel
Acting Deputy Chief, Public Corruption
and Civil Rights Section

LINDSEY GREER DOTSON
Assistant United States Attorney
Public Corruption
and Civil Rights Section