DURIE TANGRI LLP
MICHAEL J. PROCTOR (SBN 148235)
mproctor@durietangri.com
953 East 3rd Street
Los Angeles, CA 90013
Telephone: 213-992-4499
Facsimile: 415-236-6300

DURIE TANGRI LLP
GALIA Z. AMRAM (SBN 250551)
gamram@durietangri.com
RAMSEY W. FISHER (SBN 334228)
rfisher@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: 415-362-6666
Facsimile: 415-236-6300

Attorneys for Defendant
MARK RIDLEY-THOMAS

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:21-cr-00485-DSF |
| Plaintiff, | **DEFENDANT MARK RIDLEY-THOMAS'S NOTICE OF MOTION AND MOTION TO SEVER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; APPENDIX** |
| v. | |
| MARK RIDLEY-THOMAS and MARILYN LOUISE FLYNN, | |
| Defendants. | **DECLARATION OF RAMSEY W. FISHER SUBMITTED SEPARATELY *UNDER SEAL*** |
| | **PUBLICALLY FILED REDACTED VERSION** |
| | Date: June 27, 2022<br>Time: 8:30 a.m.<br>Ctrm: 7D<br>Judge: Honorable Dale S. Fischer |
| | Time Estimate: 60 minutes. |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on June 27, 2022, at 8:30 a.m. in the courtroom of the Honorable Dale S. Fischer, or as soon thereafter as the matter may be heard, counsel for Defendant Mark Ridley-Thomas will move the Court to sever his trial from the trial of Defendant Marilyn Flynn.  The basis for this Motion includes:

(1)   Numerous statements by Ms. Flynn (statements that the jury may determine are inculpatory) may be admissible against her, but they are not admissible against Mr. Ridley-Thomas and, without severance, this will result in an incurable risk of prejudice to him.

(2)   The recent request for continuance of the trial date by the government and Ms. Flynn is opposed by Mr. Ridley-Thomas, and Mr. Ridley-Thomas is not waiving his rights to a speedy trial.

These grounds are sufficient to warrant severance and, at minimum, place into the Court's discretion whether to sever this case.

This Motion is based on the attached memorandum of points and authorities, appendix, the separately filed declaration of Ramsey W. Fisher, and all supporting exhibits and documents, the *In Camera* Declaration of Michael J. Proctor, the Constitution of the United States of America, all applicable statutory and case law, and such argument and evidence as the Court will entertain at the hearing.

Dated:  May 27, 2022

DURIE TANGRI LLP
MICHAEL J. PROCTOR
GALIA Z. AMRAM
RAMSEY W. FISHER

By: _____
MICHAEL J. PROCTOR

Attorneys for Defendant
MARK RIDLEY-THOMAS

# **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND ............................................................................................... 3

    A.   The Alleged Conspiracy .......................................................................... 3

    B.   Mr. Ridley-Thomas's Defense ................................................................ 3

    C.   The Government Seeks to Introduce Ms. Flynn's Alleged Statements
        Against Mr. Ridley-Thomas ..................................................................... 4

III.    SEVERANCE IS WARRANTED UNDER RULE 14 ............................................. 6

    A.   Ms. Flynn's Statements Would Not Be Admissible Against Mr.
        Ridley-Thomas in a Separate Trial ........................................................ 8

        1.   The government cannot establish Mr. Ridley-Thomas knowingly
            participated in a conspiracy ........................................................ 9

        2.   Regardless, the statements were not made in furtherance of the
            conspiracy ................................................................................ 11

        3.   Alternatively, Mr. Ridley-Thomas requests that the Court hold a
            pretrial hearing to determine the admissibility of Ms. Flynn's
            statements before it rules on Mr. Ridley-Thomas's motion for
            severance .................................................................................. 15

    B.   The Prejudice is Incurable ..................................................................... 16

        1.   The prejudice associated with Ms. Flynn's statements is acute ........ 16

        2.   The prejudice cannot be cured by a limiting instruction ................... 16

        3.   The prejudice cannot be mitigated by cross-examination, unless
            Ms. Flynn waives her Fifth Amendment right and testifies .............. 18

IV.    SEVERANCE IS WARRANTED IN LIGHT OF THE DEFENDANTS'
      DIFFERING REQUESTS FOR A TRIAL DATE .................................................. 19

V.     THE PREJUDICE TO MR. RIDLEY-THOMAS OUTWEIGHS ANY
      CONCERNS OF EFFICIENCY ........................................................................ 19

VI.    CONCLUSION ............................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bourjaily v. United States,*
  483 U.S. 171 (1987)..................................................................................9

*Bruton v. U.S.,*
  391 U.S. 123 (1968)...........................................................................17, 20

*Daley v. United States,*
  231 F.2d 123 (1st Cir. 1956).....................................................................20

*United States v. Baker,*
  98 F.3d 330, 335 (8th Cir. 1996) ........................................................16, 17

*United States v. Bazezew,*
  783 F. Supp. 2d 160 (D.D.C. 2011)............................................................7

*United States v. Bowman,*
  215 F.3d 951 (9th Cir. 2000) .....................................................................9

*United States v. Coe,*
  718 F.2d 830 (7th Cir. 1983) ...................................................................13

*United States v. Cornett,*
  195 F.3d 776 (5th Cir. 1999) ...................................................................13

*United States v. Escalante,*
  637 F.2d 1197 (9th Cir. 1980) ...............................................................7, 18

*United States v. Eubanks,*
  591 F.2d 513 (9th Cir. 1979) ...............................................................13, 14

*United States v. Felix-Sosa,*
  905 F.2d 1541 (9th Cir. 1990) ...................................................................9

*United States v. Fernandez,*
  388 F. 3d 1199 (9th Cir. 2004) ..................................................................6

*United States v. Ford,*
  839 F.3d 94 (1st Cir. 2016)......................................................................13

*United States v. Johnson*,
   927 F.3d 999 (7th Cir. 1991) ....................................................................... 13

*United States v. Joyce*,
   No. 14-cr-00607-PJH-4, 2017 WL 895563 (N.D. Cal. Jan. 20, 2017) ....................... 15

*United States v. Lawson*,
   2009 WL 3400916 (E.D. Ky., Oct. 19, 2009) ................................................. 17

*United States v. Lischewski*,
   No. 18-cr-00203-EMC-1, 2019 WL 2716614 (N.D. Cal. Jun. 28, 2019) ............... 9, 11

*United States v. Magnotti*,
   51 F.R.D. 1 (D. Conn. 1970) ....................................................................... 19

*United States v. Manfre*,
   368 F.3d 832 (8th Cir. 2004) ....................................................................... 13

*United States v.* Marr, No. 14-cr-00580-PJH, 2017 WL 1540815, (N.D. Cal.
   Apr. 28, 2017 ....................................................................................... 15

*United States v. Mitchell*,
   31 F.3d 628 (8th Cir. 1994) ....................................................................... 12

*United States v. Morgan*,
   748 F.3d 1024 (10th Cir. 2014) ................................................................... 13

*United States v. Nazemian*,
   948 F.2d 522 (9th Cir. 1991) ....................................................................... 12

*United States v. Ortega-Garcia*,
   No. CR 17-203 DSF, 2017 WL 11439800 (C.D. Cal. Dec. 11, 2017) ................... 11

*United States v. Ragland*,
   555 F.3d 706 (8th Cir. 2009) ....................................................................... 12

*United States v. Rodriguez-Landa*,
   No. 2:13-cr-00484-CAS, 2019 WL 653853 (C.D. Cal. Feb. 13, 2019) ................... 15

*United States v. Saeteurn*,
   No. 93-10269, 1994 WL 259396 (9th Cir. Jun. 13, 1994) ................................ 11

*United States v. Silverman*,
   861 F.2d 571 (9th Cir. 1988) ................................................................... 9, 10

iii

*United States v. Troutman*,
   546 F. Supp. 2d 610 (N.D. Ill. 2008)...................................................................17

*United States v. Truslow*,
   530 F.2d 257 (4th Cir. 1975) ........................................................................7

*United States v. Urbanik*,
   801 F.2d 692 (4th Cir. 1986) .......................................................................13

*United States v. Vaught*,
   485 F.2d 320 (4th Cir. 1973) .......................................................................14

*United States v. Weaver*,
   507 F.3d 178 (3d Cir. 2007) ........................................................................13

*United States v. Woodland*,
   No. CR 05-00668(A)-MMM, 2007 WL 9706767 (C.D. Cal. Jan. 9, 2007).................12

*United States v. Zemek*,
   634 F.2d 1159 (9th Cir. 1980) .....................................................................15

*Zafiro v. United States*,
   506 U.S. 534 (1993)..............................................................................7, 16

**Statutes**

18 U.S.C. § 371 ........................................................................................3

18 U.S.C. § 666 ........................................................................................3

18 U.S.C. § 1341 ......................................................................................3

18 U.S.C. § 1343 ......................................................................................3

18 U.S.C. § 1346 ......................................................................................3

**Federal Authorities**

Fed. R. Cr. P. 8 .......................................................................................19

Fed. R. Cr. P. 14 ..............................................................................*passim*

Federal Rule of Evidence 404 ......................................................................14

Federal Rule of Evidence 801 ...............................................................*passim*

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
    § 6780 (2022 ed.) .......................................................................................................... 12

DEFENDANT MARK RIDLEY-THOMAS'S MOTION TO SEVER
CASE NO. 2:21-CR-00485-DSF

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Mark Ridley-Thomas and Marilyn Flynn are charged with conspiring to commit bribery and honest services fraud.  They are currently set to be tried together.  But Mr. Ridley-Thomas's constitutional right to a fair trial and Federal Rule of Criminal Procedure 14 require that they be tried separately.

First, severance is warranted under Rule 14 because critical pieces of the government's evidence relating to Ms. Flynn are not admissible against Mr. Ridley-Thomas; moreover, admitting the evidence in a joint trial would create an incurable risk of prejudice.  The government intends to support its conspiracy theory with several statements that Ms. Flynn made to nonparties—statements which the jury may determine are inculpatory.  That strategy creates a dilemma.  In a joint trial, Ms. Flynn's statements would likely be admissible against her as statements of a party opponent under Federal Rule of Evidence 801(d)(2).  But in a separate trial, many, if not all, of these statements would be inadmissible hearsay against Mr. Ridley-Thomas.  The statements do not qualify as co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E) because the government cannot establish that Mr. Ridley-Thomas knew and participated in a conspiracy or that these statements were made during and in furtherance of the alleged conspiracy.  No other hearsay exception applies.

While these statements would be inadmissible against Mr. Ridley-Thomas in a separate trial, they create an incurable risk of prejudice in a joint trial.  Ms. Flynn's statements take several forms. ██████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████  And some can even be read to be inculpate Ms. Flynn in the alleged conspiracy and *quid pro quo*.  The statements each go to a core element in the case against Ms. Flynn: her state-of-mind and intent.  They are not, however, proof of Mr. Ridley-

Thomas's state-of-mind or intent because he neither made the statements nor adopted them.  But that distinction is likely to be lost on the jury in an incurable way.

The statements either reference Mr. Ridley-Thomas by name or clearly allude to him.  In some cases, the jury may (incorrectly) infer that the statements inculpate Mr. Ridley-Thomas in the alleged *quid pro quo.*  And they are made by the person who was on the other side of the alleged *quid pro quo.*  The risk is too great that the jury would conclude that Ms. Flynn's statements concerning ███████████████ are accurate representations of ████████████████.  But unless Ms. Flynn waives her Fifth Amendment rights and testifies about these statements, the true basis for her statements will remain unknown.  That creates a severe risk that the jury will misconstrue Ms. Flynn's assertions about ███████████████ intent as actual evidence of ███████████████████  And that risk is sufficient to justify severance.  In fact, this is precisely the sort of prejudice that both the Advisory Committee and Supreme Court have suggested warrants severance.

Second, severance is warranted under Rule 14 because Mr. Ridley-Thomas opposes Ms. Flynn and the government's request to continue the trial to November 15, 2022.  For the reasons laid out in Mr. Ridley-Thomas's opposition to the requested continuance, further delay prejudices Mr. Ridley-Thomas.  If the Court is inclined to give Ms. Flynn and her counsel more time to prepare for trial, it should sever the case to avoid prejudicing Mr. Ridley-Thomas.

Accordingly, Mr. Ridley-Thomas requests that the Court exercise its discretion under Rule 14 and sever Mr. Ridley-Thomas's trial from Ms. Flynn's.  Alternatively, Mr. Ridley-Thomas requests that the Court defer ruling on this motion until a hearing at which the Court can evaluate the basis for the admissibility of Ms. Flynn's statements under Rule 801(d)(2)(E).

DEFENDANT MARK RIDLEY-THOMAS'S MOTION TO SEVER
CASE NO. 2:21-CR-00485-DSF

## II.     BACKGROUND

### A.     The Alleged Conspiracy

The government alleges that Mr. Ridley-Thomas and Ms. Flynn engaged in a conspiracy in which Mr. Ridley-Thomas performed official acts as a member of the Board of Supervisors in exchange for Ms. Flynn's help securing Sebastian Ridley-Thomas admission as a student and appointment as a professor to USC's School of Social Work and School of Public Policy, as well as her help facilitating a $100,000 donation to a non-profit entity Sebastian Ridley-Thomas operated.  Specifically, the government alleges that Mr. Ridley-Thomas performed official acts relating to the following items presented to the Board of Supervisors:

(1) Item 16, which passed 5-0 and called for the Chief Probation Officer to develop a program plan to be implemented at the new reentry center being constructed on South Vermont Avenue, including a recommendation on whether the County should enter into a Memorandum of Understanding to establish a partnership with USC's School of Social Work to provide services at the center;

(2) Item 3, which passed 5-0 and called for a report regarding various probation reform efforts, including an evaluation about the feasibility of establishing a Probation University in partnership with USC; and

(3) Item 27, which passed 5-0 and called for the Board to provide the Director of the Department of Mental Health, Jonathan Sherin, with authority to amend and extend the County's contract with USC's School of Social Work relating to the school's existing telehealth program.

These acts, according to the Indictment, constitute violations of 18 U.S.C. § 371 (conspiracy); 18 U.S.C. § 666(a)(1)(B) and (a)(2) (bribery concerning programs receiving Federal funds); and 18 U.S.C. §§ 1341, 1343, and 1346 (honest services mail/wire fraud).

### B.     Mr. Ridley-Thomas's Defense

Mr. Ridley-Thomas denies the allegations in the Indictment.  He has a robust and legitimate defense to the charges.  The contours of this defense are submitted to the Court

3

*in camera*, so the Court can contextualize and analyze the arguments that Ms. Flynn's statements are both inadmissible and prejudicial to Mr. Ridley-Thomas. *See In Camera Declaration of Michael J. Proctor In Support of Defendant Mark Ridley-Thomas's Motion to Sever.*

### C. The Government Seeks to Introduce Ms. Flynn's Alleged Statements Against Mr. Ridley-Thomas

The Indictment makes evident that the government intends to prove its case by relying on a body of statements Ms. Flynn allegedly made to nonparties.  Many of these statements reference ███████████ by name and could be read to reflect Ms. Flynn's beliefs about ████████████████████████.[1]  Moreover, while Mr. Ridley-Thomas believes that Ms. Flynn's defense will have an explanation for these statements consistent with innocence, there is no avoiding the fact that the statements may be read as ████████████.  Below is a non-exhaustive list of the statements Mr. Ridley-Thomas believes are inadmissible, prejudicial, and warrant severance.

      a.   **Ex. 1 at USAO_000486**: ████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████
███████████████████████████

      b.   **Ex. 2 at USAO_000485**: ████████████████████████
██████████████████████████████████████████████
███████████████████████████

      c.   **Ex. 3 at USAO_038039**: ████████████████████

---

[1] Based on the Indictment and the discovery produced by the government to date, the statements included in this motion appear to be key evidence the government intends to use against Mr. Ridley-Thomas.  That said, Mr. Ridley-Thomas does not maintain that the statements included in this motion are the *only* statements by Ms. Flynn that would be inadmissible and/or create an incurable risk of prejudice to his right to a fair trial, nor does he waive any right by filing this motion to move to strike the introduction at trial of any other statement by Ms. Flynn.



d.  **Ex. 4**:

e.  **Ex. 5 at USAO_030588**:

DEFENDANT MARK RIDLEY-THOMAS'S MOTION TO SEVER
CASE NO. 2:21-CR-00485-DSF

1

      f.    **Ex. 6**:



      g.    **Ex. 7**:

      h.    **Ex. 8 at USAO_032416**:

      The statements each get to a core element in this case:  state-of-mind and intent.

However, for the reasons stated below, each statement creates an incurable risk that the

jury will unfairly confuse Ms. Flynn's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## III.    SEVERANCE IS WARRANTED UNDER RULE 14

      Rule 14 provides:  "If the joinder of…defendants…for trial appears to prejudice a

defendant or the government, the court may order separate trials of counts, sever the

defendants' trials, or provide any other relief that justice requires."  The Ninth Circuit has

noted that the two "most important" factors that guide the analysis are "whether the jury

may reasonably be expected to collate and appraise the individual evidence against each

defendant" and "the judge's diligence in instructing the jury on the limited purposes for

which certain evidence may be used."  *United States v. Fernandez*, 388 F. 3d 1199, 1241

(9th Cir. 2004).  Indeed, the "prime consideration in assessing the prejudicial effect of a

joint trial is whether the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants, in view of its volume and the limited admissibility of some of the evidence." *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980).

The Supreme Court has suggested that a severance is particularly critical where, as here, "evidence that the jury should not consider against a defendant and that would not be admissible if the defendant were tried alone is admitted against a codefendant." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Those situations may present a "serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent a jury from making a reliable judgment about guilt or innocence." *Id.* The Advisory Committee has echoed this sentiment, noting:

> A defendant may be prejudiced by the admission in evidence against a co-defendant of a ***statement or confession*** made by that co-defendant. This prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not in fact erase the prejudice. While the question whether to grant a severance is generally left within the discretion of the trial court, recent Fifth Circuit cases have found sufficient prejudice involved to make denial of a motion for severance reversible error.

Fed. R. Crim. P. 14, 1966 Advisory Committee notes (emphasis added).[3]

---

[3] Mr. Ridley-Thomas does not move for severance under a Confrontation Clause or *Bruton* theory. The Advisory Committee's instruction is not limited to "testimonial"— *i.e.*, *Bruton*—statements. Courts have held that the word "statements" in Rule 14(b) is not limited to testimonial statements triggering Confrontation Clause rights. *United States v. Bazezew*, 783 F. Supp. 2d 160, 164-65 (D.D.C. 2011) ("During the hearing, the government suggested that Rule 14(b) applies only to a defendant's post-arrest statements. The plain language of the Rule, however, provides no such limitation … [T]he Court, in analyzing a motion under Rule 14, is entitled to review not only such post-arrest statements but rather 'any defendant's statement that the government intends to use as evidence.'"). Furthermore, the advisory notes were drafted two years before *Bruton* was decided and cited cases involving non-testimonial statements. *See United States v. Truslow*, 530 F.2d 257 (4th Cir. 1975) (involving statements made by the defendants to third-party witnesses).

This is precisely the situation both the Supreme Court and the Advisory Committee envisioned. Many, if not all, of Ms. Flynn's statements would not be admissible against Mr. Ridley-Thomas in a separate trial. The statements are hearsay. The only possible exception that would apply is a statement of a party opponent under Rule 801(d)(2). They are not statements of a co-conspirator under Rule 801(d)(2)(E) because (1) the government has not and cannot establish that a conspiracy existed, and (2) as detailed in Appendix below, the government has not and cannot show that many of the statements were made during and in furtherance of a conspiracy. As a result, while these statements may be admitted in a joint trial, they would not be admitted if Mr. Ridley-Thomas were tried separately.

There is also identifiable and incurable harm associated with admitting these statements against Mr. Ridley-Thomas. Though the statements ███████████ ██████, they reflect only ████████████████████████. They are not, in any way, evidence of Mr. Ridley-Thomas's intent. That is a subtle but critical distinction. But it is likely to be lost on the jury without evidence from Ms. Flynn explaining how and why she developed and expressed the ████████████. Unless she waives her Fifth Amendment rights, the jury will not have the benefit of any such evidence. And, of course, unless she testifies Mr. Ridley-Thomas will not be able to cross-examine her on these statements. And a limiting instruction cannot fill that void. In light of the nature and number of these statements, it is unrealistic to expect a jury to be able to compartmentalize Ms. Flynn's intent from Mr. Ridley-Thomas's.

## A.    Ms. Flynn's Statements Would Not Be Admissible Against Mr. Ridley-Thomas in a Separate Trial

The statements identified above are inadmissible hearsay as to Mr. Ridley-Thomas. The co-conspirator exception under Rule 801(d)(2)(E) does not apply for two reasons. For the exception to apply, the government must show by a preponderance of the evidence that (1) a conspiracy existed at the time the statement was made and that Mr. Ridley-Thomas had knowledge of, and participated in, the conspiracy, and (2) that the statements

were made in furtherance of the conspiracy.  *United States v. Bowman*, 215 F.3d 951, 960-61 (9th Cir. 2000); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  The government cannot show either.  To the extent the Court finds that it cannot yet make a determination as to the sufficiency of the government's showing, Mr. Ridley-Thomas requests that the Court defer judgment on this motion until it holds a pretrial hearing at which it can evaluate whether the government has established the foundational requirements as to each proffered coconspirator statement.

### 1.   The government cannot establish Mr. Ridley-Thomas knowingly participated in a conspiracy

The Ninth Circuit has recognized that "[a]n accused's knowledge of and participation in an alleged conspiracy are preliminary facts that must be established before extrajudicial statements of a coconspirator can be introduced into evidence." *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988) (internal quotes omitted).  These "preliminary facts must be shown by a preponderance of the evidence." *Id.*  And, critically, "[a] coconspirator's out-of-court statement, standing alone, is insufficient to establish that the defendant had knowledge of and participated in a particular conspiracy." *Id.* at 577.  "To abandon the requirement that some evidence aside from the proffered co-conspirator's statements be presented to show that the defendant knowingly participated in the conspiracy would be to render all such statements self-validating." *Id.*  In the Ninth Circuit, district courts "must bear in mind that out-of-court statements are presumptively unreliable." *Id.* at 578.  For this reason, "one presumptively unreliable hearsay statement cannot be invoked to corroborate another hearsay statement, especially when uttered by the same declarant." *United States v. Felix-Sosa*, 905 F.2d 1541, 1541 (9th Cir. 1990).  And "[h]eavy reliance on co-conspirators' statements to prove a defendant participated in a conspiracy requires fairly incriminating evidence." *United States v. Lischewski*, No. 18-cr-00203-EMC-1, 2019 WL 2716614, at *2 (N.D. Cal. Jun. 28, 2019).  "Evidence of wholly innocuous conduct or statements by the defendant will rarely be sufficiently

DEFENDANT MARK RIDLEY-THOMAS'S MOTION TO SEVER
CASE NO. 2:21-CR-00485-DSF

1    corroborative … to constitute proof, by a preponderance of the evidence, that the

2    defendant knew of and participated in the conspiracy." *Silverman*, 861 F.2d at 578.

3         The government cannot establish that Mr. Ridley-Thomas knowingly participated

4    in a conspiracy without relying heavily on out-of-court statements by Ms. Flynn.  As just

5    one example, a key piece of evidence that the government is likely to identify as proof of

6    a conspiracy is a ███████████████████████   Exhibit 9 at USAO_037888-

7    90.  The government's main evidence to support the theory that Mr. Ridley-Thomas

8    received, read, and acted on, ██████████████████████. For

9    example, the Indictment cites Exhibit 5 at USAO_030588, in which ██████████

10   ████████████████████████████████████████████

11   ████████████████████████████████████████████

12   ███████████████   Indictment, No. 1, at 12.  The government also cites Ms. Flynn's

13   statement that █████████████████████████████████

14   ████████████████████████████. *Id.* at 12-13; Ex.

15   7 at USAO_037930.  And it cites Ms. Flynn allegedly telling ████████████

16   ███████████████████████████   Indictment,

17   No. 1, at 20;  Exhibit 1 at USAO_000486.  To be clear, the government also cites

18   Mr. Ridley-Thomas's votes on the various board items.  But without relying heavily on

19   Ms. Flynn's statements, there is nothing linking those votes to Ms. Flynn's requests.

20        In fact, the Indictment cites just two statements by Mr. Ridley-Thomas that relate to

21   actions he took relating to the board items at issue:  (1) █████████████████

22   ████████████████████████████  ████  and (2) █████

23   ████████████████████████████████████████████

24   ████████████████████████████████████████████

25   ██████████████████████████████████████████

26   ████████████████████████████████████████████

27   Indictment, No. 1., at 14, Exhibit 10 at USAO_114131; Indictment, No. 1., at 17-18;

28   Exhibit 11 at USAO_114702.

DEFENDANT MARK RIDLEY-THOMAS'S MOTION TO SEVER
CASE NO. 2:21-CR-00485-DSF

Neither of these statements are the sort of incriminating evidence that courts require to corroborate out-of-court statements, which are presumptively unreliable. *See, e.g.* *Lischewski*, 2019 WL 2716614, at \*3 (grand jury transcripts sufficient corroborating evidence of co-conspirator statements where four separate individuals testified about the defendant's involvement in the alleged conspiracy); *United States v. Ortega-Garcia*, No. CR 17-203 DSF, 2017 WL 11439800, at \*2 (C.D. Cal. Dec. 11, 2017) (sufficient corroborating evidence of statements indicating defendants' participation in drug trafficking conspiracy where it was shown that she crossed the border when her alleged co-conspirators expected her to and "placed her car in the control of people she barely knew who then put materials in the trunk and took them out of the trunk."). At most, they establish that ███████████████████████████████████████████████ ███████████████████████ That, in itself, is innocuous. These statements, as well as Mr. Ridley-Thomas's votes on the various board items, are consistent with an entirely innocent explanation: Mr. Ridley-Thomas was working to advance board items that he independently thought were good ideas. *See United States v. Saeteurn*, No. 93-10269, 1994 WL 259396, at \*3 (9th Cir. Jun. 13, 1994) (holding that where evidence is "consistent with perfectly innocent behavior, it is insufficient to support the required finding" for a conspiracy) (citation omitted). There is nothing connecting that action to any representations Ms. Flynn may have made with respect to Sebastian Ridley-Thomas. And as a result, the government cannot establish that Mr. Ridley-Thomas knowingly participated in a conspiracy. Accordingly, none of the statements above—or any other statement by Ms. Flynn—would be admissible under as co-conspirator statements against Mr. Ridley-Thomas.

### 2. Regardless, the statements were not made in furtherance of the conspiracy

Even if the government could establish that Mr. Ridley-Thomas knowingly participated in a conspiracy, the statements above would still not be admissible under Rule 801(d)(2)(E) because they cannot be interpreted as furthering a conspiracy. "To be

11

considered 'during the course and in furtherance of' a conspiracy for purposes of Rule 801(d)(2)(E), a co-conspirator statement must 'further the common objectives of the conspiracy' or 'set in motion transactions that [are] an integral part of the [conspiracy].'" *United States v. Woodland*, No. CR 05-00668(A)-MMM, 2007 WL 9706767, at *7 (C.D. Cal. Jan. 9, 2007) (citing *United States v. Arambula-Ruiz*, 987 F.2d 599, 607-08 (9th Cir. 1993) (alteration in original)). Critically, "[w]hen inquiring whether a statement was made 'in furtherance' of a conspiracy, we do not focus on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement." *United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991) (citation omitted). The Ninth Circuit has provided expansive examples of what sort of statements meet this standard:

> statements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities.

*Id.*

Courts have also provided some guidance on what does *not* qualify as a statement in "furtherance" of a conspiracy. Three specific lessons are relevant here.

First, courts have held that statements that "simply inform[] the listener of the declarant's criminal activities [are] not made in furtherance of the conspiracy." *United States v. Ragland*, 555 F.3d 706, 713 (8th Cir. 2009) (citation omitted). This includes statements in which one conspirator informs the listener of the acts of another. Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6780 (2022 ed.) (citing *United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 88 (2d Cir. 1999)) ("A merely narrative description by one co-conspirator of the acts of another, while often quite useful in terms of evidentiary value, will not be admissible under the exception because it is not in furtherance of the conspiracy."); *see also United States v. Mitchell*, 31 F.3d 628, 632

(8th Cir. 1994) ("A statement that simply informs a listener of the declarant's criminal activities is not made in furtherance of the conspiracy.").  Similarly, idle conversation that touches upon the conspiracy is not sufficient to "further" a conspiracy.  *United States v. Urbanik*, 801 F.2d 692, 698 (4th Cir. 1986); *United States v. Cornett*, 195 F.3d 776, 784 (5th Cir. 1999).  "This is true even when … the declarant makes what can be construed as an offhand admission of culpability." *United States v. Johnson*, 927 F.3d 999, 1002 (7th Cir. 1991) (collecting cases).  Indeed, a "casual admission of culpability to someone [the declarant] had individually decided to trust" is not in furtherance of the conspiracy." *United States v. Eubanks*, 591 F.2d 513, 520 (9th Cir. 1979) (citation omitted).

Second, statements to non-conspirators informing them of the conspiracy will also generally not qualify for admission because such statements are rarely in furtherance of the conspiracy.  *United States v. Weaver*, 507 F.3d 178, 185 (3d Cir. 2007) ("A declarant's statement explaining the current status of the conspiracy is 'in furtherance' of that conspiracy only if the addressee is also a co-conspirator."); *United States v. Manfre*, 368 F.3d 832, 841 (8th Cir. 2004) (accomplice's statement to his fiancé that he intended to burn down a night club was not admissible under Rule 801(d)(2)(E) because it was not in furtherance of the conspiracy); *United States v. Ford*, 839 F.3d 94, 107 (1st Cir. 2016) (defendant's revelation to spouse that he was "making money growing marijuana" was not in furtherance of the marijuana conspiracy).

Third, statements made before the conspiracy allegedly began cannot be statements in furtherance of that conspiracy.  *United States v. Coe*, 718 F.2d 830, 839-840 (7th Cir. 1983) (collecting cases).  Similarly, statements made after the "central purpose" of the conspiracy "has been attained" do not further the conspiracy.  *United States v. Morgan*, 748 F.3d 1024, 1036 (10th Cir. 2014); *see also* Advisory Committee Note to Fed. R. Evid. 801(d)(2)(E) (citing *Krulewitch v. United States*, 336 U.S. 440 (1949)).

The statements listed above do not meet the threshold for admissibility for all three of these reasons.  As a preliminary matter, in each of them, Ms. Flynn's statement is a

1  ███████████████████ And, in each statement, Ms. Flynn is ██████████

2  ████████████████████████████████████████████████████████

3  ██████████████████████. In no way do the statements advance any objective

4  of the conspiracy.

5      The same is true of the few statements that could very well be viewed by the jury as

6  evidence that tends to establish Ms. Flynn's culpability.  As noted above, "casual

7  admission[s] of culpability" are not made in furtherance of a conspiracy.  *Eubanks*, 591

8  F.2d at 520 (9th Cir. 1979).

9      In addition, some of the statements were uttered before any conspiracy is alleged to

10  have formed or after it concluded.  Such statements cannot be said to further the alleged

11  conspiracy.  Relatedly, the government has informed Mr. Ridley-Thomas that it intends to

12  introduce evidence about █████████████████████████████ under

13  Rule 404(b).  This evidence includes the statement in Exhibit 3.  The government intends

14  to argue that █████████████████████████████████

15  Those acts have nothing to do with Mr. Ridley-Thomas, and evidence of those acts cannot

16  be admissible against him as a co-conspirator statement because it was made prior to the

17  formation of the alleged conspiracy.  *Cf. United States v. Vaught*, 485 F.2d 320, 323 (4th

18  Cir. 1973) ("In a prosecution for conspiracy the acts and words of an alleged co-

19  conspirator prior to the actual formation and existence of a conspiracy are totally

20  irrelevant and should be struck from the record.").  Viewed cumulatively, this is another

21  reason to sever.

22      The specific reasons each statement was not made in furtherance of a conspiracy

23  are summarized in the chart included in the Appendix below.  Taken together, these

24  statements—inadmissible against Mr. Ridley-Thomas—underscore the significant

25  prejudice Mr. Ridley-Thomas would suffer and the palpable need to sever his trial from

26  Ms. Flynn's.

27

28

1

2

3

**3.    Alternatively, Mr. Ridley-Thomas requests that the Court hold a pretrial hearing to determine the admissibility of Ms. Flynn's statements before it rules on Mr. Ridley-Thomas's motion for severance**

4

5

6

7

8

9

10

11

12

13

14

15

16

Alternatively, if the Court finds that it cannot yet determine if the government can make the required showing to admit Ms. Flynn's statements against Mr. Ridley-Thomas, Mr. Ridley-Thomas requests that the Court defer judgment on this motion until it can hold a pretrial hearing to assess the admissibility of Ms. Flynn's statements.  "In this Circuit, the procedure employed to lay the foundation for admitting co-conspirator statements is within the Court's discretion."  *United States v. Rodriguez-Landa*, No. 2:13-cr-00484-CAS, 2019 WL 653853, at *28 (C.D. Cal. Feb. 13, 2019) (citation omitted).  Courts have identified different methods for making this determination, one of which is a pretrial *James* hearing.  *Id.; United States v. Joyce*, No. 14-cr-00607-PJH-4, 2017 WL 895563, at *5 (N.D. Cal. Jan. 20, 2017).  This hearing would provide the Court the opportunity to assess the government's evidence for establishing that Mr. Ridley-Thomas knowingly participated in a conspiracy and that Ms. Flynn's statements were in furtherance of that conspiracy.

17

18

19

20

21

22

23

24

25

26

27

Mr. Ridley-Thomas recognizes that this approach has been disfavored by some courts in this circuit.  *United States v. Zemek*, 634 F.2d 1159, 1169, n.13 (9th Cir. 1980); *United States v.* Marr, No. 14-cr-00580-PJH, 2017 WL 1540815, at *14 (N.D. Cal. Apr. 28, 2017).  Instead, they have favored conditional admission of such statements.  *Id.*  But none of those cases present the problem raised here in which the evidentiary ruling bears directly on a motion for severance.  The Court needs to determine whether these statements are admissible against Mr. Ridley-Thomas before it can determine whether a joint trial would violate Mr. Ridley-Thomas's right to a fair trial.  Accordingly, if the Court decides it cannot presently determine that the government cannot make the required showing under Rule 801(d)(2)(E), it should hold a pretrial hearing to assess the government's evidence.

28

15

1

2    **B.      The Prejudice is Incurable**

3           The Supreme Court has suggested that a severance is particularly critical where, as

4    here, "evidence that the jury should not consider against a defendant and that would not

5    be admissible if the defendant were tried alone is admitted against a codefendant." *Zafiro*,

6    506 U.S. at 539.  Those situations may present a "serious risk that a joint trial would

7    compromise a specific trial right of one of the defendants or prevent a jury from making a

8    reliable judgment about guilt or innocence." *Id.*  This case is a perfect illustration of that

9    reasoning.  For the reasons stated above, Ms. Flynn's statements would not be admissible

10   against Mr. Ridley-Thomas if he were tried separately.  And for the reasons stated below,

11   admitting them against Ms. Flynn in a joint trial in which Mr. Ridley-Thomas is present

12   creates an incurable risk of prejudice.

13          **1.      The prejudice associated with Ms. Flynn's statements is acute**

14          As noted above, many of Ms. Flynn's statements create an incurable risk of

15   prejudicing Mr. Ridley-Thomas.  The statements speak to ███████████████████

16   ████████████████████████████████████████  But they are not evidence of

17   Mr. Ridley-Thomas's expectations, beliefs, and opinions.  The specific prejudice

18   associated with each statement is identified in the chart in the Appendix below.  As it

19   shows, Ms. Flynn's statements can be erroneously interpreted as evidence of Mr. Ridley-

20   Thomas's intent with respect to his official acts.  In some instances, they can even be read

21   to inculpate Mr. Ridley-Thomas in the alleged *quid pro quo*.

22          **2.      The prejudice cannot be cured by a limiting instruction**

23          This prejudice is incurable.  It is precisely the sort of prejudice that the Supreme

24   Court was concerned with in *Zafiro*.  *Zafiro*, 506 U.S. at 539 ("[e]vidence that is probative

25   of a defendant's guilt but technically admissible only against a codefendant also might

26   present a risk of prejudice.").  And it is precisely the sort of prejudice that the Advisory

27   Committee has noted "[l]imiting instructions to the jury may not in fact erase." Fed. R.

28   Crim. P. 14, 1966 Advisory Committee notes (emphasis added).

            Courts have followed suit.  For example, in *United States v. Baker*, the court

determined that a statement Wheeler, Baker's co-defendant, gave to the FBI would not have been admissible against Baker if he were tried separately.  98 F.3d 330, 335 (8th Cir. 1996).  The statement "[did] not incriminate Baker on its face," but was nevertheless "probative of Baker's guilt."  *Id.*  In light of this statement and two documents that also would not have been admissible against Baker if he were tried alone, the court held that "the risk of substantial prejudice from the spillover effect" warranted a severance.  *Id.*; *see also United States v. Lawson*, 2009 WL 3400916, at *3 (E.D. Ky., Oct. 19, 2009) (joint trial posed a "substantial risk of prejudice" where a co-defendant's statements would not be admissible against the other co-defendants as coconspirator statements but would still be admissible against the co-defendant as an admission of a party-opponent); *United States v. Troutman*, 546 F. Supp. 2d 610, 615–17 (N.D. Ill. 2008) (severance justified because most of the evidence consisted of co-defendant statements not made as part of conspiracy that was likely not admissible at separate trial).

Limiting instructions cannot solve this sort of prejudice.  While Mr. Ridley-Thomas's argument is based on Rule 14 and not the Confrontation Clause, perhaps the most eloquent explanation of why a limiting instruction is ineffective is found in *Bruton*. There, the Supreme Court explained that "[i]n joint trials,…when the admissible confession of one defendant inculpates another defendant, the *confession is never deleted from the case*…" 391 U.S. at 131 (emphasis added).  Reliance on a limiting instruction requires the jury to "perform the overwhelming task of considering [the confession] in determining the guilt or innocence of the declarant and then of ignoring it in determining the guilt or innocence of any codefendants."  *Id.*  This expectation is unrealistic because "[a] jury cannot segregate evidence into separate intellectual boxes."  *Id.* (internal quotations omitted).

The same logic applies here, even though Ms. Flynn's statements are not "confessions."  *See, e.g. Baker*, 98 F.3d at 335 (holding limiting instruction insufficient and granting severance under Rule 14, not *Bruton*); *Lawson*, 2009 WL 3400916, at *3 (same); *Troutman*, 546 F. Supp. at 615–17 (same).  Her statements are not evidence of

1  Mr. Ridley-Thomas's intent, but the substance of the statements invites problematic

2  inferences. ████████████████████████████████ They can be

3  misconstrued to suggest that he was ████████████████████████████

4  ██████████████████████████████████████████████

5  ██████████████████████████████ Any

6  theoretical limiting instruction to avoid these sorts of inferences would be confusing and

7  unreasonable.  The Court would have to instruct the jury that they could consider the

8  statements only as to Ms. Flynn and also only as to Ms. Flynn's intent and involvement in

9  the alleged conspiracy.  They would further be instructed that they could consider this

10  evidence as to the existence of the alleged conspiracy, but *not* as to Mr. Ridley-Thomas's

11  involvement in that conspiracy or as to Mr. Ridley-Thomas's intent.  It is unrealistic to

12  ask lay people to engage in such legal gymnastics.  Especially considering that they would

13  need to do so not just for one of the more minor statements in isolation, but for all of the

14  statements listed above, and more, presented to them over the course of a multi-week trial.

15  The cumulative weight of all of these statements creates too much risk of confusion on a

16  central issue in the case.

17  This is not a situation in which the jury can "be reasonably expected to

18  compartmentalize the evidence as it relates to separate defendants."  *Escalante*, 637 F.2d

19  at 1201.  In light of the nature of these statements, asking the jury to compartmentalize

20  intent here is not unlike the "overwhelming task" articulated by the Court in *Bruton*.

21  Accordingly, a limiting instruction will not protect Mr. Ridley-Thomas from the harm

22  posed by Ms. Flynn's statements.

### 3.  The prejudice cannot be mitigated by cross-examination, unless Ms. Flynn waives her Fifth Amendment right and testifies

25  The Advisory Committee notes that the prejudice arising from a co-defendant's

26  statement "cannot be dispelled by cross-examination if the co-defendant does not take the

27  stand."  Fed. R. Crim. P. 14, 1966 Advisory Committee notes.  That is certainly the case

28  here.  As detailed above, interpreting Ms. Flynn's statements invites speculation.  The

1  statements do not explain *how* Ms. Flynn ███████████████████████████

2  ████████████████████████████████████. Similarly, ████████████

3  ████████████████████████████████████████████████████████████

4  ████████████████████████████████

5       If Mr. Ridley-Thomas waives his Fifth Amendment rights and testifies, he could

6  speak as to his perspective of his communications with Ms. Flynn.  But that would fail to

7  address what Ms. Flynn meant by her statements, how she █████████████████

8  ███████████████████████████████████████.  That sort of

9  evidence could only come from Ms. Flynn.  While it remains unclear whether Ms. Flynn

10  will testify in a joint trial, the uncertainty is enough to warrant severance.  Her decision to

11  testify is hers and hers alone, and we will not know what that decision is until the end of

12  trial.  By then, it would be too late to undo the prejudice to Mr. Ridley-Thomas, if the

13  Court were to proceed with a joint trial and admit Ms. Flynn's statements.  Severance is

14  the only option to avoid such prejudice.

15  **IV.    SEVERANCE IS WARRANTED IN LIGHT OF THE DEFENDANTS'
16         DIFFERING REQUESTS FOR A TRIAL DATE**

17       A delay in the trial of one defendant is a factor that courts should "take into

18  account" when determining whether a motion for severance should be granted.  *United*

19  *States v. Magnotti*, 51 F.R.D. 1, 2 (D. Conn. 1970).  Ms. Flynn has requested a

20  continuance to November 15, 2022.  For the reasons laid out in Mr. Ridley-Thomas's

21  opposition to that request, that continuance would threaten Mr. Ridley-Thomas's ability to

22  return to the office he was elected to serve.  As a result, Mr. Ridley-Thomas and

23  Ms. Flynn have differing interests concerning the trial date.  This is another factor

24  weighing in favor of severance.

25  **V.    THE PREJUDICE TO MR. RIDLEY-THOMAS OUTWEIGHS ANY
26        CONCERNS OF EFFICIENCY**

27       The only valid concern competing against severance is efficiency, which here

28  cannot outweigh the prejudice resulting to Mr. Ridley-Thomas from joinder.  Rules 8 and

14 of the Federal Rules of Criminal Procedure are "designed to promote economy and efficiency and to avoid a multiplicity of trials," but only "where these objectives can be achieved *without substantial prejudice* to the right of the defendants to a fair trial." *Bruton*, 391 U.S. at 131, n.6 (quoting *Daley v. United States*, 231 F.2d 123, 125 (1st Cir. 1956)) (emphasis added).  As demonstrated above, the admission of Ms. Flynn's alleged statements and the defendants' differing requests for trial dates each present a separate basis for severance, and when combined work to deprive Mr. Ridley-Thomas of a fair trial. That level of prejudice cannot be outweighed by concerns of efficiency.  Moreover, granting severance would result in only two trials, which the court in *Schaffer* recognized "would not be very time consuming but entirely practicable."  221 F.2d at 19.  In fact, severance might actually promote efficiency in this case.  If Mr. Ridley-Thomas's trial proceeds first, it would be shorter and more streamlined than a trial involving two defendants.

## VI.   CONCLUSION

For the reasons stated above, Mr. Ridley-Thomas asks that the Court grant his motion for a separate trial or, in the alternative, defer judgment on the motion until the Court can hold a pretrial hearing to rule on the admissibility of Ms. Flynn's statements against Mr. Ridley-Thomas.

Dated:  May 27, 2022

DURIE TANGRI LLP
MICHAEL J. PROCTOR
GALIA Z. AMRAM
RAMSEY W. FISHER

By:

MICHAEL J. PROCTOR

Attorneys for Defendant
MARK RIDLEY-THOMAS

# APPENDIX





| Ex. | Statement | Reason(s) for inadmissibility | Prejudice |
|-----|-----------|-------------------------------|-----------|
|  |  |  |  |
| 2 |  |  |  |

DEFENDANT MARK RIDLEY-THOMAS'S MOTION TO SEVER
CASE NO. 2:21-CR-00485-DSF



| Ex. | Statement | Reason(s) for inadmissibility | Prejudice |
|-----|-----------|-------------------------------|-----------|
| 3 |  |  |  |

DEFENDANT MARK RIDLEY-THOMAS'S MOTION TO SEVER
CASE NO. 2:21-CR-00485-DSF



DEFENDANT MARK RIDLEY-THOMAS'S MOTION TO SEVER
CASE NO. 2:21-CR-00485-DSF



DEFENDANT MARK RIDLEY-THOMAS'S MOTION TO SEVER
CASE NO. 2:21-CR-00485-DSF



DEFENDANT MARK RIDLEY-THOMAS'S MOTION TO SEVER
CASE NO. 2:21-CR-00485-DSF



| Ex. | Statement | Reason(s) for inadmissibility | Prejudice |
|---|---|---|---|

DEFENDANT MARK RIDLEY-THOMAS'S MOTION TO SEVER
CASE NO. 2:21-CR-00485-DSF



| Ex. | Statement | Reason(s) for inadmissibility | Prejudice |
|---|---|---|---|
| 8 | | | |

DEFENDANT MARK RIDLEY-THOMAS'S MOTION TO SEVER
CASE NO. 2:21-CR-00485-DSF

| Ex. | Statement | Reason(s) for inadmissibility | Prejudice |
|-----|-----------|-------------------------------|-----------|
|     |           |                               |           |

DEFENDANT MARK RIDLEY-THOMAS'S MOTION TO SEVER
CASE NO. 2:21-CR-00485-DSF

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2022 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

_____
MICHAEL J. PROCTOR

DEFENDANT MARK RIDLEY-THOMAS'S MOTION TO SEVER
CASE NO. 2:21-CR-00485-DSF