HUESTON HENNIGAN LLP
Brian J. Hennigan, State Bar No. 86955
bhennigan@hueston.com
Samantha Schnier, State Bar No. 329595
sschnier@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:   (213) 788-4340
Facsimile:   (888) 775-0898

ANDRUES/PODBERESKY
Vicki I. Podberesky, State Bar No. 123220
vpod@aplaw.law
818 W 7th St #960
Los Angeles, CA 90017
Telephone:   (213) 395-0400
Facsimile:   (213) 395-0401

Attorneys for Defendant
MARILYN LOUISE FLYNN

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MARK RIDLEY-THOMAS and MARILYN LOUISE FLYNN,<br><br>Defendants. | Case No. 21-CR-00485-DSF<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO A SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**DATE: September 12, 2022**<br>**TIME:  8:30 a.m.**<br>**COURTROOM:  7D**<br><br>**[Filed concurrently with: (1) Declaration of Samantha Schnier; and (2) Proposed Order]**<br><br>Judge: The Honorable Dale S. Fischer |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 12, 2022, at 8:30am, or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Dale S. Fischer, defendant Marilyn Louise Flynn will move this Court for an order compelling nonparty the University of Southern California ("USC") to produce documents requested in defendant's subpoena for production of documents. The motion will be based on the attached memorandum of points and authorities, declarations, and exhibits submitted herewith, the Constitution of the United States of America, all applicable statutory and case law, and such argument as the Court will entertain at the motion hearing.

Dated:  August 15, 2022                    Respectfully submitted,

                                           HUESTON HENNIGAN LLP

                                           By:  */s/ Brian J. Hennigan*
                                                Brian J. Hennigan
                                                Samantha Schnier
                                                Attorneys for Defendant
                                                MARILYN LOUISE FLYNN

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................ 1

II.    BACKGROUND ................................................................................. 4

III.   ARGUMENT ...................................................................................... 6

       A.    Legal Standard ......................................................................... 6

       B.    The Interview Memoranda Are Not Attorney-Client
             Communications or Work Product ........................................... 8

       C.    Dr. Flynn Has a Compelling Need for the Interview
             Memoranda ............................................................................ 13

       D.    Any Applicable Privilege Was Waived by USC ................... 16

IV.    CONCLUSION ................................................................................ 19

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO A
SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Arfa v. Zionist Org. of Am.*,

5

2014 WL 815496 (C.D. Cal. Mar. 3, 2014) ........................................ 8, 12, 13

6

*Bittaker v. Woodford*,

7

331 F.3d 715 (9th Cir. 2003) ........................................................ 7, 19

8

*Bowling v. Appalachian Elec. Supply, Inc.*,

9

2014 WL 1404572 (S.D.W. Va. Apr. 10, 2014) ........................................ 15

10

*C & C Jewelry Mfg., Inc. v. West*,

2010 WL 3943673 (N.D. Cal. Oct. 7, 2010) ........................................ 8

11

12

*Davies v. Broadcom* Corp.,

130 F. Supp. 3d 1343 (C.D. Cal. 2015) ........................................ 10

13

*Dolby Lab'ys Licensing Corp. v. Adobe Inc.*,

14

402 F. Supp. 3d 855 (N.D. Cal. 2019) ........................................ 10

15

*Hooke v. Foss Mar. Co.*,

16

2014 WL 1457582 (N.D. Cal. Apr. 10, 2014) ........................................ 3, 12

17

*In re Application of Republic of Ecuador*,

18

280 F.R.D. 506 (N.D. Cal. 2012),

*aff'd sub nom. Republic of Ecuador v. Mackay*,

19

742 F.3d 860 (9th Cir. 2014) ........................................ 9

20

*In re CV Therapeutics, Inc. Sec. Litig.*,

21

2006 WL 1699536 (N.D. Cal. June 16, 2006) ........................................ 11

22

*In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*,

23

357 F.3d 900 (9th Cir. 2004) ........................................ 11, 12

24

*In re Kellogg Brown & Root, Inc.*,

25

756 F.3d 754 (D.C. Cir. 2014) ........................................ 10

26

*In re Pac. Pictures Corp.*,

27

679 F.3d 1121 (9th Cir. 2012) ........................................ passim

28

- ii -

1

## TABLE OF AUTHORITIES (cont.)

2

Page(s)

3
*Kintera, Inc. v. Convio, Inc.*,

4
    219 F.R.D. 503 (S.D. Cal. 2003).................................................................... passim

5
*Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*,

6
    29 F. Supp. 3d 142 (E.D.N.Y. 2014).......................................................... 13

7
*Lewis v. Wells Fargo & Co.*,

8
    266 F.R.D. 433 (N.D. Cal. 2010) ............................................................. 2, 12

9
*MD Helicopters, Inc. v. Aerometals, Inc.*,
    2019 WL 1227919 (E.D. Cal. Mar. 15, 2019) ...................................... 9

10

11
*Olender v. United States*,
    210 F.2d 795 (9th Cir. 1954)...................................................................... 11

12

13
*S.E.C. v. Roberts*,
    254 F.R.D. 371 (N.D. Cal. 2008) ............................................................. 17

14

15
*Shinnecock Indian Nation v. Kempthorne*,
    652 F. Supp. 2d 345 (E.D.N.Y. 2009)...................................................... 13

16
*State Farm Fire & Cas. Co. v. Superior Court*,

17
    54 Cal. App. 4th 625 (1997)........................................................................ 10

18
*TIG Ins. Co. of Michigan v. Vision Serv. Plan*,

19
    2006 WL 8458848 (E.D. Cal. Jan. 4, 2006)......................................... 16

20
*Tornay v. United States*,
    840 F.2d 1424 (9th Cir. 1988)..................................................................... 7

21

22
*United States v. Coburn*,
    2022 WL 357217 (D.N.J. Feb. 1, 2022)................................................ 17, 18

23
*United States v. Graf*,

24
    610 F.3d 1148 (9th Cir. 2010).............................................................. 2, 7, 8

25
*United States v. Gurtner*,

26
    474 F.2d 297 (9th Cir. 1973)....................................................................... 11

27
*United States v. ISS Marine Servs., Inc.*,

28
    905 F. Supp. 2d 121 (D.D.C. 2012) ....................................................11, 12, 13

1

## TABLE OF AUTHORITIES (cont.)

2

Page(s)

3

*United States v. Kovel*,

4
    296 F.2d 918 (2nd Cir. 1961) ........................................................................ 10

5

*United States v. Nobles*,

6
    422 U.S. 225 (1975) ......................................................................... 7, 8, 9, 10

7

*United States v. Reyes*,

8
    239 F.R.D. 591 (N.D. Cal. 2006) ............................................................ passim

9

*United States v. Richey*,

10
    632 F.3d 559 (9th Cir. 2011) ........................................................................ 8

11

*United States v. Sanmina Corp.*,

12
    968 F.3d 1107 (9th Cir. 2020) ................................................................... 7, 8

13

*Upjohn Co. v. United States*,

14
    449 U.S. 383 (1981) .................................................................................. 6, 7

15

*Westinghouse Elec. Corp. v. Republic of Philippines*,
    951 F.2d 1414 (3d Cir. 1991) ..................................................................... 17

16

**Statutes**

17

Cal. Bus. Prof. Code § 6126 ............................................................................ 9

18

**Rules**

19

Cal. Prof. Conduct Rule 5.5(b) ......................................................................... 9

20

Fed. R. Civ. P. 26(b)(3) ......................................................................... 2, 8, 9

21

Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii) ..................................................................... 13

23

**Other Authorities**

24

8 Charles Alan Wright & Arthur R. Miller, Federal Practice &
    Procedure § 2024 (3d ed. 2020) ................................................................... 8

26

8 Charles Alan Wright & Arthur R. Miller, Federal Practice and
    Procedure § 2025 (3d ed. 2022) ............................................................... 3, 15

28

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO A
SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2    Defendant Marilyn Louise Flynn ("Dr. Flynn") hereby moves for an order

3 compelling non-party the University of Southern California ("USC") to produce

4 documents requested in Dr. Flynn's Rule 17(c) subpoena for production of documents.

5 ## I. INTRODUCTION

6    Dr. Flynn seeks a narrow category of documents from USC: summaries of

7 interviews with 10 USC employees concerning the events alleged in the Indictment

8 conducted by USC's Office of Compliance (the "Interview Memoranda").   These

9 documents are critical to Dr. Flynn's defense in this action, and at this point, more than

10 four years after the events alleged in the Indictment, Dr. Flynn cannot obtain

11 comparable witness statements absent undue hardship.

12    The prosecution theory is that Dr. Flynn had a secret *quid pro quo* arrangement

13 with Mark-Ridley Thomas ("MRT") pursuant to which she would help his son,

14 Sebastian Ridley-Thomas ("SRT"), in exchange for MRT's help to secure certain Los

15 Angeles County contracts for USC.  (Indictment at 5.)  According to the prosecution

16 theory, Dr. Flynn provided four "secret benefits" to SRT in order to curry the favor of

17 MRT: (1) admission into the graduate program at the USC Suzanne Dworak-Peck

18 School of Social Work ("School of Social Work"), (2) a full-tuition scholarship, (3)

19 employment as a "Professor of Practice" in the USC Price School of Public Policy,

20 and (4) the use of money donated by MRT to the School of Social Work to fund

21 research by SRT.  In reality, according to contemporaneous documents, the first two

22 benefits were not bestowed by Dr. Flynn through the School of Social Work.  Rather,

23 the admission and the scholarship came from two graduate programs—the School of

24 Social Work and the Price School of Public Policy—and were fully disclosed to the

25 USC Office of the Provost.   The third benefit—the employment position—was

26 negotiated and awarded by the Price School of Public Policy and was approved by the

27 USC Office of the Provost, with the School of Social Work agreeing to share in the

28

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO A
SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES

cost of the position.  And finally, the fourth benefit—applying funds donated by MRT to the Dean's Discretionary Account toward sponsorship support for research work done by SRT—was effectuated with the help of multiple School of Social Work finance employees who were forwarded an email from MRT to Dr. Flynn regarding the sponsorship.

The Interview Memoranda sought by the subpoena relates to those individuals with direct knowledge of the facts set forth above.  Dr. Flynn believes the Interview Memoranda contain vital corroborative evidence that will contradict the Government's theory that she acted with "corrupt" intent.  Meanwhile, the *only* basis USC has identified for withholding these documents is its contention that they are protected by the attorney-client privilege and the attorney work product doctrine.  (*See* Schnier Decl., Exs. 10, 13.)  Not so.

*First*, the Interview Memoranda are not protected attorney-client communications because the interviews were conducted solely by Daniel Shapiro, a non-attorney employee who USC concedes "was not acting as a lawyer for the purpose of the interviews."  (Schnier Decl., Ex. 9.)  Mr. Shapiro was also the sole author of the Interview Memoranda.  To the extent that any witness statements contained within the Interview Memoranda were made for purposes of seeking legal advice, they were not communicated to a *lawyer* and thus, are not protected by the attorney-client privilege. *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (attorney-client privilege exists where legal advice is sought "from a professional *legal adviser in his capacity as such*") (emphasis added).

*Second*, the Interview Memoranda are not protected attorney work product. Because they were drafted solely by a non-lawyer without any attorney involvement or direction, they contain no attorney "mental impressions, conclusions, opinions, or legal theories." Fed. R. Civ. P. 26(b)(3).  Additionally, at the time the Interview Memoranda were prepared, there was no "identifiable prospect of litigation," *Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 441 (N.D. Cal. 2010), and thus, would "have been

created in substantially similar form" regardless of the prospect of litigation, *Hooke v. Foss Mar. Co.*, 2014 WL 1457582, at *2 (N.D. Cal. Apr. 10, 2014) ("[M]aterials or investigative reports developed in the ordinary course of business do not rise to the status of work product."). And to the extent that any portion of the Interview Memoranda could constitute work product, Dr. Flynn has substantial need for them because she believes they contain exculpatory evidence, and she cannot now obtain comparable witness statements. *See* 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2025 The Work-Product Rule (3d ed. 2022) ("[S]tatements taken from witnesses at about the time of the occurrence described in them are unique, in that they provide an immediate impression of the facts. On this view mere lapse of time can in itself suffice to justify production of material otherwise protected as work product.").

*Finally*, even if the attorney-client privilege or the attorney work product doctrine applies to the Interview Memoranda (they do not), USC expressly waived any applicable privilege through, among other things, its voluntary disclosure of the contents of the Interview Memoranda to the Government. Specifically, during the July 17, 2018 meeting between USC counsel and the Government, USC disclosed key elements of the Interview Memoranda in an effort to curry favor, including the identities of the witnesses selected for interviews, the three key findings from the interviews, and USC's own legal conclusion regarding at least one of the findings. *See In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012) (voluntary disclosure of privileged documents to U.S. Attorney's Office waived attorney-client privilege for those documents); *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 513 (S.D. Cal. 2003) ("A party cannot reasonably expect to preserve confidentiality of work product while simultaneously disclosing substantive components of that document."). "Having lowered the shield to foster an amicable relationship with the government, [USC's] attorneys may not then raise it against parties injured by their disclosures." *United States v. Reyes*, 239 F.R.D. 591, 603 (N.D. Cal. 2006).

1  For all of these reasons, Dr. Flynn respectfully requests that this Court grant her
2  motion to compel production of the Interview Memoranda.

## II.  **BACKGROUND**

4  For more than 21 years, Marilyn Flynn, an 83-year-old retired academic, served
5  as the Dean of USC's School of Social Work until she stepped down in June 2018.
6  That same month, Michele Clark, a School of Social Work employee, reported what
7  she considered to be "suspicious activity" to John Clapp, the new Dean of the School
8  of Social Work.  Specifically, Ms. Clark told Mr. Clapp about Dr. Flynn's acceptance
9  of a $100,000 donation from then-County Supervisor MRT and a corresponding
10  $100,000 sponsorship provided by the School of Social Work to United Ways of
11  California.

12  Soon after that, USC's Office of Compliance commenced an internal
13  investigation "into [Dr.] Flynn for the appearance of impropriety."  (Schnier Decl., Ex.
14  1 at USAO_000002.)  In the course of that investigation, Daniel Shapiro, an Assistant
15  Vice President, Research Compliance and Research Conflict of Interest in USC's
16  Office of Culture, Ethics and Compliance, conducted interviews of various USC
17  employees concerning Ms. Clark's allegations.  Mr. Shapiro's interview subjects
18  included (1) Dr. Flynn, (2) Jack Knott, Dean of USC's Price School of Public Policy
19  ("School of Public Policy"), (3) John Clapp, (4) Michele Clark, Program
20  Administrator for USC's School of Social Work, (5) Leslie Wind, Chair of Master of
21  Social Work, (6) Carmen Frierson, Senior Business Officer, (7) Scarlett Osterling,
22  Senior Associate Dean of Advancement for USC's School of Social Work, (8) Mike
23  Nichol, Vice Dean of USC's School of Public Policy, (9) Dorian Traube, Senior
24  Associate Dean for Faculty Affairs and Social Work, and (10) SRT[1], who at the time
25  was also a student at the School of Social Work and a Professor of Practice at the
26
27
28

---

[1] Dr. Flynn does not seek to compel production of the SRT interview memorandum.

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO A
SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES

School of Public Policy.  (Schnier Decl., Ex. 1 at USAO_000003, Ex. 8 ("USC Privilege Log").)

Mr. Shapiro subsequently memorialized the contents of each interview in written memoranda (the "Interview Memoranda").  Daniel Shapiro was admitted to the California State Bar in 1993, but from July 2016 to June 2022, he was not licensed to practice law in California for failure to pay bar fees and/or comply with MCLE requirements.  (Schnier Decl., ¶ 5 & Ex. 3.)  USC concedes that Mr. Shapiro was not acting as a lawyer for the purpose of the interviews but contends that he conducted the interviews and memorialized them in the Interview Memoranda at the direction of USC's Office of the General Counsel ("OGC") for OGC to provide legal advice to USC.  (Schnier Decl., Ex. 10.)

In July 2018, USC engaged Stephanie Yonekura of Hogan Lovells to represent it in connection with its internal investigation.  On July 17, 2018, Ms. Yonekura and Michael Blanton, on behalf of USC, met with Assistant United States Attorney Mack Jenkins and Special FBI Agent Brian Adkins at the US Attorney's Office for the Central District of California to make a voluntary disclosure.  (Schnier Decl., Ex. 1 at USAO_000001.)  During that meeting, Ms. Yonekura and Mr. Blanton, again on behalf of USC, disclosed to the Government several key findings from Mr. Shapiro's compliance interviews.  In addition to disclosing the identities of the witnesses interviewed thus far, Ms. Yonekura and Mr. Blanton apparently also disclosed three primary "issues" that USC had discovered in the course of its investigation, including (1) the $100,000 donation and sponsorship, (2) Dr. Flynn's awarding of a scholarship to SRT to cover his coursework at the School of Social Work, and (3) the School of Public Policy's appointment of SRT as a Professor of Practice in that school.  (Schnier Decl., Ex. 2 at USAO_00005–06.)  USC also identified Michele Clark as the "whistleblower" who first raised these issues with Dean Clapp.  (Schnier Decl., Ex. 1 at USAO_00002; Ex. 2 at USAO_000007.)  Finally, USC also shared with the

Government its conclusion that the $100,000 donation "would have been appropriate if not for the appearance of impropriety."  (Schnier Decl., Ex. 2 at USAO_000007.)

That same month, Dr. Flynn was placed on administrative leave and retired soon afterwards.  (Indictment ¶ 14.)  It was not until three years later, in October 2021, that Dr. Flynn was charged with conspiracy to commit bribery and mail and wire fraud (Count One), bribery (Count Three), honest services fraud (Counts Four through Twenty).  (Indictment ¶¶ 19–21, 23–27.)

On June 1, 2022, Dr. Flynn served a subpoena on USC requesting the production of certain documents necessary for her defense against the aforementioned charges (the "Subpoena").  (Schnier Decl. ¶ 5, Ex. 4.)  That same day, Ms. Yonekura agreed by telephone to accept service of the Subpoena and confirmed the same by email on June 3, 2022.  (*Id.* ¶ 6, Ex. 5.)  Between June 1 and August 1, counsel for USC and Dr. Flynn met and conferred several times, during which Dr. Flynn agreed to narrow the scope of the requests, and USC agreed to produce documents in response to 11 of the 14 specific requests.  (*Id.* ¶¶ 8-9, Ex. 7.)

Ultimately, USC refused to produce documents in response to Request No. 5— which the parties agreed to narrow to seek only the Interview Memoranda—on the grounds that the Interview Memoranda are protected attorney-client communications and work product.  (Schnier Decl. ¶ 10-12, Exs. 8–10, 13.)

## III.  **ARGUMENT**

### A.  **Legal Standard**

The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  The attorney-client privilege exists where: "(1) [ ] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived."

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010).  Moreover, the privilege only protects the "disclosure of *communications* [between the attorney and the client]; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn*, 449 U.S. at 395.  The party asserting the privilege bears the burden of proving each essential element. *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988).

There are "several ways by which parties may waive the [attorney-client] privilege," including by "voluntarily disclosing privileged documents to third parties." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012) (citations omitted). However, disclosure of the privileged documents themselves is not required for waiver so long as the documents' content was disclosed. "It makes no difference whether a privilege-holder copies a written text, reads from a written text, or describes a written text to an outside party.  The purpose and effect is the same in all cases; the transmission of privileged information is what matters, not the medium through which it is conveyed." *United States v. Reyes*, 239 F.R.D. 591, 604 (N.D. Cal. 2006). "[W]hen substantive portions of attorney-client privileged communications are disclosed, the privilege is waived." *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 511 (S.D. Cal. 2003).  Such voluntarily disclosure is known as "express waiver." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003).

The work-product doctrine is a qualified privilege that protects from discovery documents prepared by a party or his representative in anticipation of litigation. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020).  "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Id.* (quoting *United States v. Nobles*, 422 U.S. 225, 237–38 (1975).  Where a document "was not prepared exclusively for litigation . . . courts must consider the totality of the circumstances and determine whether the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the

prospect of litigation." *United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011) (citations and internal quotation marks omitted). "Although litigation need not have commenced in order for the work product doctrine to apply, there must be more than a remote possibility of litigation." *C & C Jewelry Mfg., Inc. v. West*, 2010 WL 3943673, at *1 (N.D. Cal. Oct. 7, 2010).

The work-product privilege "is not absolute" and "[l]ike other qualified privileges, it may be waived." *Nobles*, 422 U.S. at 239. Waiver of the work product protection occurs where disclosure is made to an adversary in litigation or "has substantially increased the opportunities for potential adversaries to obtain the information." *Sanmina*, 968 F.3d at 1121 (quoting 8 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2024 (3d ed. 2020)). As with the attorney-client privilege, waiver of work product protection occurs when "'important' and 'significant' portions" of the protected document are disclosed. *See Kintera*, 219 F.R.D. at 513 ("A party cannot reasonably expect to preserve confidentiality of work product while simultaneously disclosing substantive components of that document.").

Finally, ordinary work product, which consists merely of "raw factual information," may still be discovered if the party seeking the discovery demonstrates a "substantial need" for the materials and there is no other means for obtaining that information without undue hardship. *Arfa v. Zionist Org. of Am.*, 2014 WL 815496, at *4 (C.D. Cal. Mar. 3, 2014); Fed. R. Civ. P. 26(b)(3).

## B. The Interview Memoranda Are Not Attorney-Client Communications or Work Product

To start, USC cannot meet its burden of demonstrating that the attorney-client privilege applies to the Interview Memoranda because they do not involve communications between a *lawyer* and client. *See Graf*, 610 F.3d at 1156 (communications protected only when legal advice is sought "from a professional legal adviser in his capacity as such"). At the time the interviews were conducted, Mr. Shapiro was an Assistant Vice President, Research Compliance and Research Conflict

of Interest in USC's Office of Culture, Ethics and Compliance and had not been licensed to practice law in California for two years.  (Schnier Decl., Ex. 3.)  Indeed, USC "acknowledge[s] that [] Mr. Shapiro **was not acting as a lawyer** for the purpose of the interviews."[2]  (Schnier Decl., Ex. 9 (emphasis added).)  And USC's privilege log makes clear that no attorneys were present during the interviews (with the exception of SRT's interview which Dr. Flynn does not seek via this motion) and that Mr. Shapiro was the sole author of the Interview Memoranda.  (Schnier Decl., Ex. 8.)

For the same reasons, the Interview Memoranda are not protected work product. Indeed, the work-product doctrine only "shelters the mental processes of the ***attorney***." *Nobles*, 422 U.S. at 238 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(3) (Protected items include the mental impressions, conclusions, opinions, or legal theories of a party's ***attorney***) (emphasis added); *MD Helicopters, Inc. v. Aerometals, Inc.*, 2019 WL 1227919, at *6 (E.D. Cal. Mar. 15, 2019) ("[T]he work product doctrine is intended only to guard against the divulging of ***attorney's*** strategies and legal impressions.") (emphasis added).  "[I]t does not protect facts concerning the creation of work product of facts contained within the work product."  *Id.*  As a non-attorney, Mr. Shapiro's summary of his witness interviews are not protected from disclosure. *See In re Application of Republic of Ecuador*, 280 F.R.D. 506, 513 (N.D. Cal. 2012), *aff'd sub nom. Republic of Ecuador v. Mackay*, 742 F.3d 860 (9th Cir. 2014) (finding that "task lists, outlines, memoranda, presentations, and draft letters authored by . . . . non-attorney [ ] employees" are not protected work product.).

USC contends nonetheless that both the attorney-client privilege and work product doctrine protect the Interview Memoranda because Mr. Shapiro was "acting

---

[2] Had Mr. Shapiro held himself out as an attorney to USC, he may be subject to disciplinary action by the bar and potential criminal liability.  *See* Cal. Bus. Prof. Code § 6126 ("Any person . . . practicing law who is not an active member of the State Bar, or otherwise authorized pursuant to statute or court rule to practice law in this state at the time of doing so, is guilty of a misdemeanor."); Cal. Prof. Conduct Rule 5.5(b) ("A lawyer who is not admitted to practice law in California shall not . . . hold out to the public or otherwise represent that the lawyer is admitted to practice law in California.").

as an agent" for USC's OGC.  (Schnier Decl., Ex. 10.)  In support, it cites various cases setting forth the general proposition that communications with a non-attorney **_can_** be privileged **_if_** the non-attorney is acting at the behest of an attorney for the purposes of providing legal advice.  *See, e.g., Davies v. Broadcom* Corp., 130 F. Supp. 3d 1343, 1353 (C.D. Cal. 2015); *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014); *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019); *State Farm Fire & Cas. Co. v. Superior Court*, 54 Cal. App. 4th 625 (1997).  But none of these cases support a finding here that Mr. Shapiro was acting as an agent of USC's OGC such that his communications with USC employees or his summaries of those conversations are privileged.  In *Davies*, for example, the court rejected a plaintiff's request to file an unredacted complaint on the basis that the conflicting "he-said-she-said" evidence at such an "early stage" of litigation ought to be resolved in favor of protecting privilege; in doing so, the court merely noted without analysis that communications with non-attorney agents could be privileged.  130 F. Supp. 3d at 1353.  Here, by contrast, the burden is squarely on USC to prove that the attorney-client privilege applies.  Nor is *Dolby* helpful to USC.  There, the Court rejected several privilege claims because the documents themselves failed to suggest that the non-attorney communications in question were created for the purposes of seeking legal advice.  *See, e.g.*, *Dolby*, 402 F. Supp. 3d at 869 (privilege did not apply where there was "no indication that employees engaged in an analysis for which they were seeking legal advice"), 872 (privilege did not apply where document revealed "nothing about what information the attorney is seeking or why").  *See also Nobles*, 422 U.S. at 39 (declining to resolve the scope of work product protection for agent's documents because the protection had clearly been waived).

To avoid a finding of waiver where attorney-client communications were disclosed to a third party, that individual must be "necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit."  *United States v. Kovel*, 296 F.2d 918, 922 (2nd Cir. 1961)

(holding that presence of accountant did not destroy privilege where accountant's role could be analogized to an interpreter providing translation services to assist in the provision of legal advice); *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (environmental consultant hired by defendant's counsel to help prepare a defense against CERCLA violations was "agent" for purposes of work product analysis). And even then, the communication must specifically "be made in confidence for the purpose of obtaining legal advice from the lawyer." *United States v. Gurtner*, 474 F.2d 297, 298-99 (9th Cir. 1973) (citing *Olender v. United States*, 210 F.2d 795, 805-806 (9th Cir. 1954)). USC's claim that the witness interviews were "directed by" counsel is insufficient. *See United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 129 (D.D.C. 2012) (holding that internal investigation results were not privileged despite evidence that outside counsel "recommended initiating an internal investigation"); *Gurtner*, 474 F.2d at 299 (noting that "not all consultations with such agents are privileged" and holding that communications with accountant were not privileged even though attorney directed client to consult with accountant).

Here, Mr. Shapiro clearly conducted the interviews in his capacity as a compliance officer—not to assist OGC in preparing for any litigation involving USC. There is no indication that OGC "directed" Mr. Shapiro in any way—for example, by providing the questions to be asked or other litigation-related objectives for the interviews. He conducted the interviews alone, without any attorneys present, and was the sole author of the Interview Memoranda. (Schnier Decl., Ex. 8.) To the extent that USC contends that the Interview Memoranda are privileged because they were eventually provided to counsel, such an argument is meritless. *In re CV Therapeutics, Inc. Sec. Litig.*, 2006 WL 1699536, at *4 (N.D. Cal. June 16, 2006) ("The mere fact that a document was sent to an attorney does not make it a privileged communication.") Indeed, courts have rejected claims of attorney-client privilege where a company chooses to "exclude counsel from conducting the internal

investigation but retain them in a watered-down capacity to 'consult' on the investigation in order to cloak the investigation with privilege." *ISS Marine Servs., Inc.*, 905 F. Supp. 2d at 129. When, as here, "a company fails to involve lawyers directly in an internal investigation, the company faces a higher burden to demonstrate that the attorney-client privilege applies to the results of that investigation." *Id.* at 130. "Once again, although materials prepared by non-attorneys supervised by attorneys are capable of enjoying work-product protection, the degree to which counsel is involved in creating the document bears directly on whether the document was prepared in anticipation of litigation." *Id.* at 134–35.

Additionally, the Interview Memoranda are not protected work product because they were not prepared "*because of* anticipated litigation." *Torf*, 357 F.3d at 908 (emphasis added). At the time, no litigation was pending nor even contemplated. No grand jury subpoenas had been issued. To this day, no civil or criminal complaint nor any indictment relating to the subject matter of the Interview Memoranda has been filed against USC. To the extent USC contends that it believed future litigation of some kind was possible, this is insufficient. *Arfa*, 2014 WL 815496, at *4 ("The work product rule does not apply merely because there is a remote prospect of future litigation."); *see also Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 441 (N.D. Cal. 2010) ("A generalized fear of litigation does not turn a compliance audit into attorney work product."). Instead, there must be "identifiable prospect of litigation or specific claims have already arisen." *Arfa*, 2014 WL 815496, at *4.

That is not the case here. USC itself concedes that "the purpose of the interviews was to investigate the internal complaint(s) made by certain personnel at the USC Suzanne Dworak-Peck School of Social Work." (Schnier Decl., Ex. 9.) It did so in the ordinary course of business, presumably to ensure compliance with its own university policies and determine whether disciplinary action was warranted. The Interview Memoranda would "have been created in substantially similar form" regardless of the prospect of litigation and thus, are not attorney work product. *Hooke*

*v. Foss Mar. Co.*, 2014 WL 1457582, at *2 (N.D. Cal. Apr. 10, 2014) ("[m]aterials or investigative reports developed in the ordinary course of business do not rise to the status of work product."); *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 29 F. Supp. 3d 142, 149 (E.D.N.Y. 2014) ("[T]he internal investigation related to Mr. Koumoulis and responding to his complaints. Such advice would have been provided even absent the specter of litigation, and therefore do not constitute litigation-related work product."); *Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345, 362 (E.D.N.Y. 2009) (even where document "might also help in preparation for litigation," it will not be protected by the work-product doctrine if it "would have been created in essentially similar form irrespective of the litigation."); *see also ISS Marine Servs., Inc.*, 905 F. Supp. 2d at 135 ("[W]hether or not a company involves attorneys in creating a document is a telling indication about whether the document was prepared in anticipation of litigation.")   The fact that USC later self-disclosed the information learned during these interviews to the Government further evidences USC's desire to ***avoid*** litigation—not prepare for it.  *Koumoulis*, 29 F. Supp. 3d at 150 ("Legal advice given for the purpose of *preventing* litigation is different than advice given in an *anticipation* of litigation.").

## C. Dr. Flynn Has a Compelling Need for the Interview Memoranda

Even if the Interview Memoranda were attorney work product (they are not), Dr. Flynn has a compelling need for the witness statements contained therein. "Ordinary" work product, which consists of "raw factual information" as opposed to attorney theories and strategy, is discoverable where the requesting party "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Arfa*, 2014 WL 815496, at *4; Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii).

Here, Dr. Flynn has substantial need for the Interview Memoranda[3] because they contain information crucial to her defense that she is unable to obtain without undue hardship.  Indeed, the Government's theory is that Dr. Flynn had a secret *quid pro quo* arrangement with MRT pursuant to which she would help SRT in exchange for MRT's help to secure certain County contracts for USC.  (Indictment at 5.)  The existence of the *quid pro quo*, the Government contends, is evidenced by the supposedly extraordinary efforts Dr. Flynn made to help SRT, "working tirelessly to get everything approved for the scholarship and professorship despite the uniqueness of Sebastian Ridley-Thomas's requests," and that at Dr. Flynn's direction, "USC was making numerous exceptions to accommodate Sebastian-Ridley Thomas." (Indictment at 11.)  In truth, none of Dr. Flynn's actions were done in secret, but instead, at the direction of or in concert with high level administrators at USC, and she took no extraordinary measures that required USC to make exceptions to accommodate SRT.

For example, in emails between various administrators and Mark Todd, the Vice Provost for Academic Operations in the Provost's Office, Dr. Flynn specifically shares her intent to request MRT's support on the expansion of Telehealth and Mr. Todd makes a tongue-in-cheek suggestion that USC "put [MRT's] face on the side of the clinic van," in exchange for his "discretionary money."  (Schnier Decl., Ex. 12 (USAO_038039).)  In response, Dr. Flynn shares that MRT's son, "Sebastian, is planning to enroll for his MSW," that she and Jack Knott, Dean of USC's Price School for Public Policy "are going to try to make it a joint degree" and "will offer a full scholarship [for SRT] between the two schools."  (*Id.*)  Mr. Todd responds encouragingly: "That's great. I hope the meeting goes well. I hope he knows that partnering with the Dworak-Peck school is the smartest thing he could do if he wants to make a positive change in LA."  (*Id.*)  Dr. Flynn believes the statements contained

---

[3]  To the extent the Court concludes that the Interview Memoranda contain attorney mental impressions, they can be easily redacted before production to Dr. Flynn.

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO A SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES

within the Interview Memoranda will provide further corroborating evidence that her efforts to foster a relationship with MRT were not only known to high-level University administrators, but also encouraged, thus negating an essential element of the Government's case: "corrupt" intent.

Moreover, Dr. Flynn has no ability to obtain this critical material from other sources without undue hardship (or in some cases, at all).  She cannot depose these witnesses; none have yet to agree to be interviewed by Dr. Flynn's counsel and one (Leslie Wind) is now deceased.  (Schnier Decl. ¶ 13.)  And even if these witnesses made themselves available for interviews, it is highly likely that their recollection of the events—which occurred more than four years ago[4]—will have faded significantly. Mr. Shapiro's interviews, on the other hand, were conducted very near in time to the events alleged in the Indictment and therefore the Interview Memoranda will inevitably contain a more complete and accurate accounting of the facts than could be obtained through re-interviewing those same witnesses now.  *See* 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2025 The Work–Product Rule (3d ed. 2022) ("[S]tatements taken from witnesses at about the time of the occurrence described in them are unique, in that they provide an immediate impression of the facts. On this view mere lapse of time can in itself suffice to justify production of material otherwise protected as work product."); *Bowling v. Appalachian Elec. Supply, Inc.*, 2014 WL 1404572, at *6 (S.D.W. Va. Apr. 10, 2014) ("An account of an event given when fresh in the mind of the speaker is universally held to be more reliable than an account provided after the passage of time.") (witness statement obtained near in time to the auto accident at issue was discoverable years later even if it constituted work product).

---

[4] The delay in seeking this information is no fault of Dr. Flynn's.  Despite being made aware of the events alleged in the Indictment in July 2018, the Government waited until October 2021 to indict Mark Ridley-Thomas and Dr. Flynn and only recently completed its production of documents to Defendants.

### D.  Any Applicable Privilege Was Waived by USC

Even if the attorney-client privilege or work-product doctrine applied to the Interview Memoranda (they do not), any such privilege was waived by USC on multiple occasions.

*First*, USC waived any attorney-client or work product protection by having Mr. Shapiro conduct the witness interviews and draft the Interview Memoranda summarizing them.  At the time, Mr. Shapiro was not a licensed California attorney and had not been licensed to practice in California for nearly two years.  Disclosure to a third party of otherwise privileged information destroys the privilege.  *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126–27 (9th Cir. 2012) ("[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege.").

*Second*, USC expressly waived any attorney-client or work product protection by voluntarily and intentionally disclosing "important" and "significant" portions of the Interview Memoranda to the Government during its July 17, 2018 meeting with AUSA Mack Jenkins and Special Agent Adkins.  Once a party voluntarily waives privilege over documents in one proceeding, the privilege is destroyed and cannot shield the documents from production in any other proceedings.  *See, e.g., In re Pacific Pictures Corp.*, 679 F.3d at 1126-27 (rejecting the selective waiver theory and stating that "voluntarily disclosing privileged documents to third parties will generally destroy the [attorney-client] privilege"); *see also TIG Ins. Co. of Michigan v. Vision Serv. Plan*, 2006 WL 8458848, at *4 (E.D. Cal. Jan. 4, 2006); *Reyes*, 239 F.R.D. at 603; *Kintera*, 219 F.R.D. at 513 (work product protection waived where "important" and "significant" portions of otherwise privileged documents disclosed).

*In re Pacific Pictures Corp*. is particularly instructive here. In that case, Toberoff, a lawyer in the midst of a civil lawsuit against D.C. Comics over the intellectual property rights to Superman, voluntarily disclosed certain documents to the U.S. Attorney's Office in response to a subpoena.  D.C. Comics immediately thereafter requested the documents, which Toberoff had to that point refused to

produce in the civil suit on the basis of privilege.  The District Court found that Toberoff had waived any claim of privilege after voluntarily disclosing the documents to the Government on the grounds that such "disclosure of privileged materials breaches confidentiality and is inconsistent with the theory behind the privilege," regardless of whether the third party is the government or a civil litigant.  *In re Pac. Pictures Corp.*, 679 F.3d at 1125.  The Ninth Circuit affirmed, concluding, "selective waiver does not serve the purpose of encouraging full disclosure to one's attorney in order to obtain informed legal assistance; it merely encourages voluntary disclosure to government agencies, thereby extending the privilege beyond its intended purpose." *Id.* at 1127 (quoting *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1425 (3d Cir. 1991)).

USC need not have provided copies of the Interview Memoranda to the Government; its disclosure of their contents is sufficient for waiver.  *Reyes*, 239 F.R.D. at 604 ("[T]he transmission of privileged information is what matters, not the medium through which it is conveyed.").  Indeed, courts across the country routinely hold that where counsel discloses to the Government information learned during the course of an internal investigation, both the attorney-client privilege and work product protection for the interview summaries are waived.  *Id.* at 603 (outside counsel hired to conduct internal investigation waived attorney-client privilege and work product protection over investigative interviews and reports after orally sharing the substance of those documents with the government); *S.E.C. v. Roberts*, 254 F.R.D. 371, 377 (N.D. Cal. 2008) (same).

A recent case in the District of New Jersey addressed this exact issue, concluding that the recipient of a Rule 17 subpoena's "voluntary turnover of materials or revelation of the fruits of its investigation to the DOJ" constituted a broad waiver of the attorney-client and work product privileges not only for the specific documents shared, but also "communications that concern the same subject matter and ought in fairness be considered together with the actual disclosures to DOJ." *United States v.*

*Coburn*, 2022 WL 357217, at *7 (D.N.J. Feb. 1, 2022) (internal quotation marks omitted). Specifically, the Court held: (1) "to the extent that summaries of [internal investigation] interviews were conveyed to the government, whether orally or in writing, the privilege is waived as to all memoranda, notes, summaries, or other records of the interviews themselves," (2) "to the extent the summaries directly conveyed the contents of documents or communications, those underlying documents or communications themselves are within the scope of the waiver," and (3) "the waiver extends to documents and communications that were reviewed and formed any part of the basis of any presentation, oral or written, to the DOJ in connection with this investigation." *Id*. at *7.

Here, too, USC's claim of selective waiver must be rejected.  During USC's July 17 meeting with the U.S. Attorney's Office, Ms. Yonekura and Mr. Blanton, on behalf of USC, voluntarily disclosed the "revelation of the fruits of its investigation," to curry favor with the Government and avoid prosecution. *Coburn*, 2022 WL 357217, at *7.  Justice Department policy requires that a corporation that "wishes to receive credit for [ ] cooperation . . . must disclose the relevant facts of which it has knowledge." (JM 9-28.720.)  Based on the Government produced discovery, it is undisputed that at a minimum, USC identified Michele Clark as the "whistleblower" that initiated the investigation, (Schnier Decl., Ex. 1 at USAO_000002, Ex. 2 at USAO_000007), and the identity of the witnesses it had interviewed in the course of its internal investigation.  USC also disclosed that from these interviews, it had identified three primary "issues," including the (1) $100,000 donation, (2) that Dr. Flynn had awarded SRT a scholarship for his coursework at the School of Social Work, and (3) that the School of Public Policy had given SRT his appointment as a Professor of Practice, (Schnier Decl., Ex. 2 at USAO_000005–06),  and finally, that it had concluded that the $100,000 donation "would have been appropriate if not for the appearance of impropriety." (Schnier Decl., Ex. 2 at USAO_000007.)

By revealing to the Government (1) the identities of the witnesses whom it determined had the most relevant information (and as a result, interviewed), (2) the key issues learned through the course of those interviews, and (3) its own legal analysis of the $100,000 donation, USC disclosed important and substantive portions of the Interview Memoranda, expressly waiving any attorney-client or work product protection that might otherwise apply.  *In re Pac. Pictures Corp.*, 679 F.3d at 1126–27 (voluntary disclosure of privileged documents to U.S. Attorney's Office waived attorney-client privilege for those documents); *Kintera*, 219 F.R.D. at 513 ("A party cannot reasonably expect to preserve confidentiality of work product while simultaneously disclosing substantive components of that document.")   "Having lowered the shield to foster an amicable relationship with the government, [USC's] attorneys may not then raise it against parties injured by their disclosures." *Reyes*, 239 F.R.D. at 603; *see also Bittaker*, 331 F.3d at 720 ("[O]nce documents have been turned over to another party voluntarily, the privilege is gone, and the litigant may not thereafter reassert it to block discovery of the information and related communications by his adversaries.").[5]

For these reasons, USC expressly waived any privilege or work product protection that might have otherwise applied to the Interview Memoranda.

## IV. **CONCLUSION**

For the foregoing reasons, Dr. Flynn respectfully requests that this Court grant the motion to compel the production of documents in response to Dr. Flynn's Rule 17 subpoena to USC.

---

[5] As expressly noted by the Court in *Bittaker*, its opinion, though "couched in terms of the attorney-client privilege, [ ] applies equally to the work product privilege, a complementary rule that protects many of the same interests."  331 F.3d at 722 n.6.

Dated:  August 15, 2022

Respectfully submitted,

HUESTON HENNIGAN LLP


By:  */s/ Brian J. Hennigan*

Brian J. Hennigan
Samantha Schnier
Attorneys for Defendant
MARILYN LOUISE FLYNN

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO A SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES