HUESTON HENNIGAN LLP
Brian J. Hennigan, State Bar No. 86955
bhennigan@hueston.com
Samantha Schnier, State Bar No. 329595
sschnier@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:   (213) 788-4340
Facsimile:   (888) 775-0898

ANDRUES/PODBERESKY
Vicki I. Podberesky, State Bar No. 123220
vpod@aplaw.law
818 W 7th St #960
Los Angeles, CA 90017
Telephone:   (213) 395-0400
Facsimile:   (213) 395-0401

Attorneys for Defendant
MARILYN LOUISE FLYNN

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    vs.<br><br>MARK RIDLEY-THOMAS and MARILYN LOUISE FLYNN,<br><br>    Defendants. | Case No. 21-CR-00485-DSF<br><br>**DEFENDANT MARILYN LOUISE FLYNN'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO SUBPOENA**<br><br>Date: September 19, 2022<br>Time: 8:30 a.m.<br>Courtroom: 7D<br><br>Judge: The Honorable Dale S. Fischer |

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ............................................................................................. 1

II.     ARGUMENT ................................................................................................... 2

        A.      The Interview Memoranda Are Not Protected Attorney-
                Client Communications or Protected Work Product ............................ 2

        B.      Even If the Interview Memoranda Are Protected Work
                Product, Dr. Flynn Has Demonstrated Substantial Need ...................... 7

        C.      Any Applicable Privilege Was Waived by USC ................................... 9

        D.      The Interview Memoranda Are Admissible Under Rule 17 ................ 11

III.    CONCLUSION ............................................................................................. 12

REPLY ISO MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO SUBPOENA

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Arfa v. Zionist Org. of Am.*,

5

2014 WL 815496 (C.D. Cal. Mar. 3, 2014) ............................................... 6, 7, 8

6

*Chevron Corp. v. Pennzoil Co.*,

7

974 F.2d 1156 (9th Cir. 1992) ............................................................................ 4

8

*Davies v. Broadcom Corp.*,

9

130 F. Supp. 3d 1343 (C.D. Cal. 2015) ............................................................. 3

10

*Dolby Lab'ys Licensing Corp. v. Adobe Inc.*,

402 F. Supp. 3d 855 (N.D. Cal. 2019) .......................................................... 3, 5

11

12

*Ferruza v. MTI Tech.*,

2002 WL 32344347 (C.D. Cal. June 13, 2002) ................................................. 9

13

*Hynix Semiconductor Inc. v. Rambus Inc.*,

14

2008 WL 350641 (N.D. Cal. Feb. 2, 2008) ................................................... 1, 4

15

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,

16

2015 WL 13631248 (N.D. Cal. Oct. 5, 2015) ................................................. 10

17

*In re Grand Jury Subpoena*,

18

357 F.3d 900 (9th Cir. 2004) .............................................................................. 5

19

*In re Grand Jury*,

20

23 F.4th 1088 (9th Cir. 2021) ............................................................................. 6

21

*Largan Precision Co, Ltd v. Genius Elec. Optical Co.*,

2015 WL 124557 (N.D. Cal. Jan. 8, 2015) ....................................................... 7

22

23

*Lewis v. Wells Fargo & Co.*,

266 F.R.D. 433 (N.D. Cal. 2010) ...................................................................... 3

24

25

*Oracle Am., Inc. v. Google, Inc.*,

2011 WL 3794892 (N.D. Cal. Aug. 26, 2011) .................................................. 4

26

*Thompson v. C & H Sugar Co., Inc.*,

27

2014 WL 595911 (N.D. Cal. Feb. 14, 2014) ..................................................... 9

28

REPLY ISO MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO SUBPOENA

1
2

<u>TABLE OF AUTHORITIES</u> (cont.)

<u>Page(s)</u>

3
4

*United States v. Coburn,*
    2022 WL 357217 (D.N.J. Feb. 1, 2022)...............................................2, 10, 11

5
6

*United States v. Cuthbertson,*
    630 F.2d 139 (3d Cir. 1980) ............................................................................ 12

7
8

*United States v. Graf,*
    610 F.3d 1148 (9th Cir. 2010) ........................................................................... 3

9
10

*United States v. Gurtner,*
    474 F.2d 297 (9th Cir. 1973) ............................................................................. 5

11

*United States v. Hussain,*
    2018 WL 1091083 (N.D. Cal. Feb. 28, 2018)................................................. 12

12
13

*United States v. ISS Marine Servs., Inc.,*
    905 F. Supp. 2d 121 (D.D.C. 2012) ..........................................................4, 5, 7

14
15

*United States v. Kail,*
    535 F.Supp.3d 888 (N.D. Cal. Apr. 26, 2021) ................................................. 8

16
17

*United States v. Kovel,*
    296 F.2d 918 (2nd Cir. 1961) ............................................................................ 5

18
19

*United States v. Nixon,*
    418 U.S. 683 (1974) ........................................................................................ 12

20
21

*United States v. Reyes,*
    239 F.R.D. 591 (N.D. Cal. 2006) ..........................................................9, 11, 12

22
23

*United States v. Richey,*
    632 F.3d 559 (9th Cir. 2011)............................................................................. 3

24

*United States v. Sanmina Corp.,*
    968 F.3d 1107 (9th Cir. 2020) ........................................................................... 3

25

**<u>Rules</u>**

26
27

Fed. R. Crim. P. 17(c)..................................................................................... 11, 12

28

Fed. R. Civ. P. 26(b)(3) ....................................................................................... 3, 8

- iii -

FLYNN'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO SUBPOENA

## I. __INTRODUCTION__

The University of Southern California ("USC") has failed to meet its burden of showing that the witness interview memoranda ("Interview Memoranda" or "Memoranda") sought by Defendant Marilyn Flynn ("Dr. Flynn") are protected from disclosure by the attorney-client privilege or work-product doctrine. USC's privilege claim over these reports—created by a non-attorney and memorializing conversations between non-attorneys—is based on the premise that the non-attorney was acting as an agent of USC's Office of the General Counsel ("OGC"). USC fails to cite any direct evidence that the interviews were in fact conducted with the guidance and input of ***any*** lawyers. Instead, the ***only*** evidence USC relies on are vague and conclusory statements by Daniel Shapiro that OGC "instructed" and "directed" the Office of Compliance ("OOC") to conduct the investigation and draft the memoranda. But a mere conclusory statement that an investigation was "directed by" counsel is insufficient to shield documents that otherwise have no indicia of legal or litigation purpose. *See Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 350641, at *3 (N.D. Cal. Feb. 2, 2008) ("A vague declaration that states only that the document 'reflects' an attorney's advice is insufficient to demonstrate that the document should be found privileged.").

USC's refusal to produce the Interview Memoranda is just the latest attempt to stonewall Dr. Flynn's constitutionally protected efforts to prepare her defense. USC has worked hand-in-hand with the Government to avoid liability for the conduct alleged in the Indictment, instead serving up Dr. Flynn as a scapegoat on a silver platter. It was USC that referred this case to the Government. USC divulged the results of its investigation into potential policy violations, including the names of witnesses interviewed, contents of emails reviewed, and key investigative findings—providing the Government with a roadmap for its own investigation. And once the Government commenced its interviews of USC employees (essentially handpicked by USC), Hogan Lovells, USC's outside counsel, was inexplicably allowed to join those interviews as "counsel for ***USC***"—not the witnesses. (*See, e.g.*, Schnier Decl., Ex. 19.)

USC now claims privilege over the Interview Memoranda, which "'concern the same subject matter' and 'ought in fairness be considered together' with [USC's] actual disclosures to DOJ." *United States v. Coburn*, 2022 WL 357217, at *7 (D.N.J. Feb. 1, 2022) ("[W]here summaries of interviews were conveyed to the government, whether orally or in writing, the privilege is waived as to all memoranda, notes, summaries, or other records of the interviews themselves."). Hogan Lovells now claims to represent all of the individual USC witnesses and has denied Dr. Flynn's request to interview those witnesses (Schnier Decl., Ex. 16), though these witnesses will unquestionably testify for the Government at trial. USC's obstructionist tactics have left Dr. Flynn unable to obtain crucial evidence in support of her defense.

Dr. Flynn now seeks only to level the playing field. Dr. Flynn does ***not*** seek any memoranda drafted by Hogan Lovells during Hogan Lovell's investigation of the events at issue in this case. Dr. Flynn does ***not*** seek any memoranda drafted by OGC lawyers (if any exist). Dr. Flynn ***only*** seeks the narrow production of the interview memoranda drafted by a ***non-attorney*** as part of a non-legal OOC investigation. The Interview Memoranda are neither privileged attorney-client communications nor protected work product, and even if either privilege could apply, they were expressly waived during USC's July 17, 2018 presentation to the Government. Moreover, these highly relevant and specifically identified documents are likely admissible.

Dr. Flynn respectfully requests that this Court grant her Motion to Compel. Alternatively, this Court should order USC to produce the Interview Memoranda for *in camera* review to determine (1) if the documents can be disclosed with attorney impressions redacted, and (2) if the documents are not admissible before trial under Rule 17, whether they may still be produced during trial for impeachment purposes.

## II. ARGUMENT

### A. The Interview Memoranda Are Not Protected Attorney-Client Communications or Protected Work Product

To meet its burden of showing that the Interview Memoranda are either

attorney-client communications or protected work product, USC must demonstrate that they: (1) contain communications made for the purpose of providing legal advice, *see United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010), or (2) were prepared in anticipation of litigation and contain attorney "mental impressions, conclusions, opinions, or legal theories." Fed. R. Civ. P. 26(b)(3); *Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 441 (N.D. Cal. 2010) ("A generalized fear of litigation does not turn a compliance audit into attorney work product."); *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) ("The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication.").

USC has completely failed to meet this burden because, as its opposition reveals, the Interview Memoranda were prepared solely by a non-attorney memorializing conversations with other non-attorney employees and reflect only the mental impressions of the non-attorney author. USC, as expected, cites caselaw laying out the general proposition that in certain narrow circumstances, non-attorney communications and work product can be protected when the non-attorney acts as an agent of an attorney and certain preconditions are met—for example, if the communication is sought for the purpose of providing legal advice, or if a document is created in anticipation of litigation. *See, e.g., United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020); *Davies v. Broadcom Corp.*, 130 F. Supp. 3d 1343, 1353 (C.D. Cal. 2015); *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019). But those cases have no bearing on the instant dispute because USC has failed to present sufficient evidence showing that the Interview Memoranda here ***in fact*** reflect communications sought for the purpose of providing legal advice or were ***in fact*** created in anticipation of litigation.

Specifically, USC relies almost entirely on a June 18, 2018 letter from a former OGC attorney "instructing" the OOC "to conduct a privileged internal investigation to assist the [OGC] in providing legal advice to USC regarding a whistleblower complaint" (the "OGC Letter"). (Shapiro Decl. ¶ 4.) But noticeably absent from USC's

submission in opposition to the motion is the letter itself or a declaration from anyone in OGC confirming that OGC instructed OOC to conduct an investigation to assist in providing legal advice to USC. Instead, USC puts forth only a vague statement by Mr. Shapiro that in his "experience," the OGC only directs OOC to conduct investigations "when such investigations are premised on allegations that, on their face, may result in potential criminal, civil, or other legal liabilities." (Opp. at 11.)

That is not enough. Courts routinely deny privilege claims on similarly sparse evidentiary bases. *See, e.g.*, *Hynix*, 2008 WL 350641, at \*3 ("A vague declaration that states only that the document 'reflects' an attorney's advice is insufficient to demonstrate that the document should be found privileged."); *Oracle Am., Inc. v. Google, Inc.*, 2011 WL 3794892, at \*3 (N.D. Cal. Aug. 26, 2011) (finding attorney affidavit insufficient to establish privilege where attorney did not testify that document was "connected to the work he requested…as part of the provision of legal advice he describes in his declaration."); *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 129 (D.D.C. 2012) (holding that internal investigation results were not privileged even where counsel "recommended initiating an internal investigation").

Here, too, USC's evidence is deficient. USC again engages in selective disclosure, relying on the OGC Letter as the sole basis for its privilege claim over the Interview Memoranda yet refusing to produce the letter in its entirety, arguing that the letter is itself privileged. (Schnier Decl., Ex. 17.) USC cannot disclose only the portions of a purportedly privileged document that are favorable to its position while withholding the rest. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (attorney-client privilege "may not be used both as a sword and a shield").

Moreover, even if it were true that OGC gave a ***general*** instruction to OOC to conduct the investigation, that does not provide blanket protection for the OOC investigation. For example, even in cases where communications with (or work product created by) non-attorney agents, like experts or investigators, have been found to be protected, there must be some showing that those agents are "necessary, or at

- 4 -

least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." *United States v. Kovel*, 296 F.2d 918, 922 (2nd Cir. 1961); *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004) (environmental consultant hired by counsel to help prepare a defense against CERCLA violations counted as "agent" for purposes of work product analysis). Here, there is no indication that any attorney was in fact ***involved*** in the interviews. USC provides no evidence that OGC exercised any control or judgment in how the interviews were conducted or the memoranda prepared, no instructions concerning the questions to be asked or specific areas to explored. Rather, the evidence shows that OOC conducted the investigation autonomously and OOC "determined what information was material and the manner in which to inquire about" and "what information was germane and the manner in which to record it." (Shapiro Decl. ¶¶ 9–10.) Indeed, Mr. Shapiro concedes that the Interview Memoranda "contain ***OOC's*** thoughts, analyses, case assessment, and mental impressions," not those of any lawyer. (Shapiro Decl. ¶ 10.)

When "a company fails to involve lawyers directly in an internal investigation, the company faces a higher burden to demonstrate that the attorney-client privilege applies to the results of that investigation." *ISS Marine Servs.*, 905 F. Supp. 2d at 130. Here, there is no evidence beyond the conclusory statements of Mr. Shapiro that the Memoranda reflect any conversations made "for the purpose of obtaining legal advice ***from the lawyer***." *United States v. Gurtner*, 474 F.2d 297, 298-99 (9th Cir. 1973); *Dolby*, 402 F. Supp. 3d at 869 (no privilege where "no indication that employees engaged in an analysis for which they were seeking legal advice"), 872 (same where document revealed "nothing about what information the attorney is seeking or why").

Instead, what the record ***does*** show is that the OOC investigation concerned potential violations of school policy, which USC concedes is insufficient to support a claim of privilege. (Opp. at 10 ("communications made during investigations into violations of the University's general business policies . . . are not protected by the attorney-client privilege"). Indeed, from its inception, this entire matter has been about

- 5 -

Dr. Flynn's alleged violations of USC policies.  *See* Indictment ¶ 15 (faculty members prohibited from being candidates for degrees in same program in which they had faculty appointment), ¶ 16 (donations intended to be used to hire staff and pay salary are prohibited), ¶ 17 (donation recipients required to commit to using all donated funds by end of University's fiscal year). Even the Government's 302 Interview Report states that "USC initiated an internal investigation into Flynn *for the appearance of impropriety*." (Schnier Decl., Ex. 1 at 2.)

Contemporaneous documents produced in this action further support the conclusion that OOC's investigation concerned only violations of USC policies. A July 2018 email from Dr. Flynn to the USC Provost at the time makes clear that Dr. Flynn understood her conversation with OOC to pertain solely to "a concern about *compliance with university policy*." (Schnier Decl., Ex. 14 (emphasis added).) The email also makes clear that Dr. Flynn did not even know that the interview was part of an "investigation." (*Id*.) The termination letter attached to that email also informs Dr. Flynn that "the Office of Compliance is conducting an investigation involving you." (Schnier Decl., Ex. 18.) The letter does ***not*** say "the Office of Compliance, as directed by the Office of the General Counsel." The termination letter sent to Sebastian Ridley-Thomas also references his interview with OOC regarding "the facts about [his] appointment to a joint faculty position in Social Work" and that such appointment violated "Faculty Handbook 3-J." (Schnier Decl., Ex. 15.) Finally, the Government's own interview reports with USC witnesses describe the interviews as interviews "with the USC Compliance Office." (*See, e.g.*, Schnier Decl., Ex. 19.) In sum, USC has not met its burden of showing that the communications memorialized in the Interview Memoranda were conducted for the primary purpose—let alone any purpose—of securing legal advice. *See In re Grand Jury*, 23 F.4th 1088, 1094 (9th Cir. 2021).

For similar reasons, USC has not met its burden of showing that the Interview Memoranda were created in anticipation of litigation. The "work product rule does not apply merely because there is a remote prospect of future litigation." *Arfa v. Zionist*

REPLY ISO MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO SUBPOENA

*Org. of Am.*, 2014 WL 815496 (C.D. Cal. Mar. 3, 2014). Instead, there must be an "identifiable prospect of litigation or specific claims have already arisen." *Id*. Here, no grand jury subpoenas had been issued at the time of the interviews, and even now, no civil or criminal complaint nor any indictment relating to the subject matter of the interviews has been filed against USC.

Moreover, while "it is certainly true that a document need not be prepared personally by an attorney to qualify as work product," "attorney involvement—or the lack thereof—is far from irrelevant," because "the fact that the withheld documents do not involve any attorneys is a useful sign, in conjunction with other indicators, that they are not protected work product." *Largan Precision Co, Ltd v. Genius Elec. Optical Co.*, 2015 WL 124557, at *4 (N.D. Cal. Jan. 8, 2015); *ISS Marine Servs., Inc.*, 905 F. Supp. 2d at 135 ("[W]hether or not a company involves attorneys in creating a document is a telling indication about whether the document was prepared in anticipation of litigation."). As explained above, while OGC may have sought assistance from OOC, there is no evidence that OGC directed the specific questions or the creation of the actual memoranda. According to Mr. Shapiro, it was "***OOC*** [that] determined what information was material and the manner in which to inquire." (Shapiro Decl. ¶ 9.) And there is evidence that the Memoranda would "have been created in substantially similar form" regardless of the prospect of litigation, since OOC was clearly investigating potential violations of school ***policy***, not law.

Because USC has adduced no evidence supporting its claim that the Interview Memoranda contain communications made for the purpose of providing legal advice or were created in anticipation of anything more than a remote chance of litigation, it has failed to meet its burden of showing that the Memoranda are privileged attorney-client communications or attorney work product.

## **B.      Even If the Interview Memoranda Are Protected Work Product, Dr. Flynn Has Demonstrated Substantial Need**

Even if the Interview Memoranda are protected work product, they are at most

ordinary *fact* work product for which Dr. Flynn has demonstrated substantial need. Indeed, Mr. Shapiro acknowledges that the Memoranda contain *OOC's* "thoughts, analyses, case assessment, and mental impressions"—not the thoughts, analyses, case assessment, or impressions of lawyers. (Shapiro Decl. ¶ 10.) To be clear, this would not necessarily destroy privilege if Mr. Shapiro were truly acting as an agent of OGC and prepared the Memoranda in anticipation of litigation. But as explained both in Dr. Flynn's Motion and above, the evidence simply does not support a finding that Mr. Shapiro was acting in any capacity other than a compliance officer investigating potential violations of school policy. Accordingly, any "opinions" do not at all reflect and were not at all derived from the advice, guidance, instruction of actual counsel, and there is no basis to withhold the Interview Memoranda as opinion work product.

Moreover, USC does not (and cannot) dispute that the witnesses are unavailable to Dr. Flynn before trial. Since filing its opposition, USC has confirmed that it now represents the employees Dr. Flynn initially inquired about in advance of her Motion, as well as three additional employees. USC has uniformly denied Dr. Flynn's interview requests. (Schnier Decl., Ex. 16.) Instead, USC baselessly argues that "unavailability" in the criminal context covers *only* situations where a witness is literally unable to attend trial.[1] (Opp. at 21.) But USC provides no support for its point that Dr. Flynn's inability to interview the employees—due to USC's own refusal to make the witnesses available—is insufficient to establish substantial need for the Interview Memoranda.

In the alternative, if the Court determines that the Interview Memoranda do potentially implicate opinion work product, then Dr. Flynn respectfully requests that this Court order USC to produce the Interview Memoranda for *in camera* review. *See, e.g., Thompson v. C & H Sugar Co., Inc.*, 2014 WL 595911, at *4 (N.D. Cal. Feb. 14,

---

[1] USC cites a case from the Confrontation Clause context. *See United States v. Kail*, 535 F.Supp.3d 888 (N.D. Cal. Apr. 26, 2021). That case does not lay out the correct standard for substantial need of ordinary work product, which is discoverable where the requesting party "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Arfa*, 2014 WL 815496, at *4; Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii).

2014) ("Therefore, the Court orders Defendants, within seven days of this order, to submit the memos to the Court for in camera review, so that the Court may determine if redactions are required to protect the mental impressions of [the lawyer]."). To the extent that the Interview Memoranda contain opinion work product, such as the mental impressions of USC's lawyers, then those portions may be redacted. Dr. Flynn has more than demonstrated substantial need for the factual portions of the documents.

## C. Any Applicable Privilege Was Waived by USC

Even if the Interview Memoranda were privileged (they are not), any privilege was expressly waived when USC chose to substantially disclose the *contents* of the *interviews themselves* during the July 17, 2018 presentation to the Government by Hogan Lovells and USC representative Michael Blanton. This is true even if USC never gave the Government copies of the Interview Memoranda. *United States v. Reyes*, 239 F.R.D. 591, 604 (N.D. Cal. 2006) ("[T]he transmission of privileged information is what matters, not the medium through which it is conveyed."). USC contends that its disclosure consisted only of facts and that it did not reveal the substance of any "confidential communications reflected in the Interview Memoranda." (Opp. at 12.) Specifically, USC argues that it only disclosed: (1) "allegations made in a whistleblower complaint pertaining to potential misconduct"; (2) "factual information contained in several non-privileged, evidentiary documents"; and (3) "names of the USC employees who had been interviewed." (Opp. at 13.)

There are two problems with USC's argument. First, USC *did* disclose protected information to the Government. Many courts have held that the identities of interview subjects are work product because this information tends to reveal which witnesses an attorney considers important enough to interview. *See, e.g.*, *Ferruza v. MTI Tech.*, 2002 WL 32344347, at *3 (C.D. Cal. June 13, 2002) (holding that identities of interview subjects were work product because "if the identity of interviewed witnesses is disclosed, opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy. Such evaluations, impressions, and

- 9 -

strategy are at the heart of the work product rule."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 13631248, at \*5 (N.D. Cal. Oct. 5, 2015) (holding that "identity of the individuals its outside counsel selected to interview is itself protected work product"). USC need not literally state to the Government that "these witnesses have the most relevant information," as USC suggests (Opp. at 13); that conclusion is inherent in the fact that USC chose to focus on those witnesses during its investigation.

The second problem with USC's waiver argument is that USC's contentions about the limited nature of its disclosure are belied by the FBI 302 Interview Summary and related notes memorializing the meeting. For example, USC maintains that it never disclosed the ***contents*** of any witness interviews to the Government, only the fact that it conducted the interviews. Yet, the 302 Interview Report for the meeting reveals this to be untrue—referencing how, "in a subsequent ***interview*** of SRT [Sebastian Ridley-Thomas], SRT ***admitted*** to being the Director of PRPI." (Schnier Decl., Ex. 1 at 2.) In other words, USC disclosed to the Government the substance of what SRT "admitted to" during OOC's interview of him. That goes beyond mere "factual information contained in several non-privileged, evidentiary ***documents***," as USC claims.

Likewise, the Government's interview notes suggest that USC went beyond merely pulling out "factual information" from documents, but rather, showed those documents to the Government, or at the very least read directly from them, as evidenced by FBI Agent Brian Adkins' notes which appear to directly quote from certain documents. (*See* Schnier Decl., Ex. 2 at 1 (referencing May 3 email containing language that it was "necessary to act w/ dispatch to facilitate onboarding of Zaneta Smith").) Indeed, both the 302 Interview Report and the handwritten agent notes are rife with references to specific documents. (Schnier Decl., Exs. 1, 2.) That, too, is enough to establish waiver over the Memoranda. *See Coburn*, 2022 WL 357217, at \*7.

Moreover, the notes of Agent Adkins contain the statement: "100K would have been appropriate if not for the appearance of impropriety," which is clearly reflects USC's conclusion about the legality of the $100,000 sponsorship. (Schnier Decl., Ex.

2 at 3.) USC's claim that this statement "was in fact Special Agent Adkin's opinion, not the opinion of USC or Hogan Lovells" strains credulity. (Opp. at 14.) The notes as a whole make clear that the agent merely recorded what USC conveyed during the meeting. Nowhere else does the agent insert his own impressions about the information conveyed, and it is highly unlikely that he would have arbitrarily decided to insert his opinion on just this one topic. It is even less likely that he, a non-lawyer whose job is to gather information to support a criminal prosecution, would conclude on his own, upon first learning of the $100,000 transaction, that it "would have been appropriate if not for the appearance of impropriety." The more likely story is that this line in the notes, like every other, reflects what was disclosed to the Government *by USC*.

USC voluntarily shared "the fruits of its investigation to the DOJ," effectuating a waiver of "communications that 'concern the same subject matter' and 'ought in fairness be considered together' with the actual disclosures to DOJ." *Coburn*, 2022 WL 357217, at *7; *see also Reyes*, 239 F.R.D. at 604 (outside counsel hired to conduct internal investigation waived privilege and work product protection over interviews and reports after orally sharing the substance of those documents with government).

### D.   The Interview Memoranda Are Admissible Under Rule 17

Finally, USC raises (for the first time in its opposition) the argument that the Interview Memoranda fail to meet the threshold requirement of admissibility under Rule 17. USC has forfeited this argument. USC could have "promptly" filed a motion to quash the Rule 17 subpoena when it was served more than three months ago. *See* Fed. R. Crim. P. 17(c)(2) ("On motion made ***promptly***, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive."). USC failed to do so. Nor did USC raise this objection (orally or in writing) during one of the many meet and confers with Dr. Flynn over the past three months. (*See, e.g.*, Schnier Decl., Exs. 6, 7, 10, 13.) It cannot now rely on an objection it failed to preserve.

USC's argument likewise should fail on the merits. Rule 17 only asks for a "sufficient preliminary showing" that documents contain "evidence admissible with

respect to the offenses charged in the indictment." *United States v. Nixon*, 418 U.S. 683, 700 (1974). And here, production of the exceedingly specific, highly relevant, and otherwise unprocurable set of documents would not even come close to implicating the policy concerns animating *Nixon's* admissibility requirement, which is ultimately a gatekeeping function designed to prevent "fishing expedition[s]" and undue burden on subpoena recipients. 418 U.S. at 700.

Even if the Interview Memoranda themselves are ultimately not eligible for pretrial production to **Dr. Flynn**, this Court should nonetheless order pretrial production to **the Court** for *in camera* review to determine whether the impeachment value of the Memoranda warrants production to Dr. Flynn after the relevant witnesses testify **during** trial. There is little question that the Memoranda can be used for impeachment during trial, given the high likelihood that the Government will call the relevant witnesses to testify. Thus, this Court should order "pretrial production for *in camera* review . . . to aid its preparation for ruling on whether these statements will be produced to the defendants at trial in an attempt to avoid unnecessary delay and disruption of the trial." *United States v. Cuthbertson*, 630 F.2d 139, 145 (3d Cir. 1980). Indeed, courts have adopted this approach when, as here, the relevance and impeachment value of documents is clear. In *Reyes*, for example, the Court ordered *in camera* pretrial production where the "defendant has made a persuasive showing that a third party possesses specific material that both is highly relevant to the criminal charges pending against him, and may become admissible upon the testimony of witnesses who are likely to testify at trial" and where "the specific documents sought were, at least in part, the very impetus for such the government's prosecution." 239 F.R.D. at 601; *United States v. Hussain*, 2018 WL 1091083, at *2 (N.D. Cal. Feb. 28, 2018) (witness statements for impeachment properly produced *in camera* during trial).

## III.   **CONCLUSION**

Dr. Flynn respectfully requests that this Court grant the Motion, or in the alternative, order USC to produce the Interview Memoranda for *in camera* review.

Dated: September 6, 2022

Respectfully submitted,

HUESTON HENNIGAN LLP

By: */s/ Brian J. Hennigan*

Brian J. Hennigan
Samantha Schnier
Attorneys for Defendant
MARILYN LOUISE FLYNN