# EXHIBIT 19

FD-302 (Rev. 5-8-10)

\- 1 of 10 -

## FEDERAL BUREAU OF INVESTIGATION

Date of entry   04/22/2019

▮▮▮▮▮, date of birth ▮▮▮ telephone number ▮▮▮, address ▮▮▮, was interviewed at the United States Attorney's Office located at 312 North Spring Street, Los Angeles, CA 90012. Also present for the interview were attorneys Stephanie Yonekura and Dominique Caamano representing University of Southern California (USC), and Assistant United States Attorneys (AUSA) Ruth Pinkel and Lindsey Dotson. Prior to the beginning of the interview, ▮▮▮ was admonished that lying to federal agents was a violation of federal criminal law punishable with time in jail to which ▮▮▮ replied that she understood. After being advised of the identities of the interviewing Agents and the nature of the interview, ▮▮▮ provided the following information:

▮▮▮ has been employed as a ▮▮▮ at USC since March 2016. ▮▮▮ has been employed by USC since August 2011 when she began a work study program as a graduate student in the School of Social Work (SSW). After graduating in January 2013, ▮▮▮ accepted a full-time position as a ▮▮▮. ▮▮▮ reports directly to ▮▮▮, Dean of the USC SSW, and previously reported directly to the former Dean, MARILYN FLYNN. ▮▮▮'s work was primarily project based, and FLYNN continually added more projects and responsibilities to ▮▮▮'s workload over the years. ▮▮▮ felt a lot of pressure as a result of her growing responsibilities and in January 2017 informed FLYNN that she wanted to focus on one or two major initiatives and reduce her workload. ▮▮▮ believed this is when her relationship with FLYNN began to sour.

### Initiatives with Los Angeles County

---

Investigation on  08/22/2018  at  Los Angeles, California, United States (In Person, Phone)

File # ▮▮▮   Date drafted  08/23/2018

by  TORBIC MICHAEL, ADKINS BRIAN C

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its content USAO_000286 are not to be distributed outside your agency.

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  (U) Interview of ▮▮▮▮▮▮▮▮ , On 08/22/2018 , Page 6 of 10

Account. ▮▮ does not recall seeing this specific email asking what the dates for the project are. ▮▮ stated that Sponsorships are treated differently than the contracts that she usually deals with, and assumed that USC just wanted to see what fiscal year the payment would apply to.

▮▮ was given documents bates numbered USC_00000021 to USC_00000024 to review (attached hereto as a 1A). ▮▮ did not see the voucher since the payment came from FLYNN's Operations Account. ▮▮ also never saw the invoice from UWCA. As such, ▮▮ was not aware that on the voucher and invoice the payment was listed as being for a survey. ▮▮ noted that FLYNN became very good at getting money through USC for whatever she wanted. USC cannot issue disbursement vouchers to pay for salary, including the salaries of individuals working at third-party organizations. ▮▮ has seen situations in the past where USC was providing money to an organization and a portion of the payment was clearly being used to pay for an individual's salary. In a scenario such as this, FLYNN would instruct her staff to label the payment "Organizational Support" rather than salary. Otherwise the voucher would have been automatically flagged by USC's system and the payment would have been denied. ▮▮ stated that she and FLYNN are both aware that it was a violation of USC policy to use vouchers to pay for salaries and/or to classify payments for salaries as "Organizational Support."

FLYNN had told ▮▮, during their meeting on May 10, 2018, that the payment to UWCA was to hire support staff for SRT. ▮▮ assumed that FLYNN wanted to help SRT because of her relationship with MRT. It appeared to ▮▮ that FLYNN was trying to "grease the wheels" so that MRT would assist FLYNN and USC in developing work with LAC. ▮▮ believed that if FLYNN had told ▮▮ the payment to UWCA was for a survey (which appeared to occur on May 8, 2018, as indicated on USC_00000023), FLYNN intentionally lied to ▮▮ so that she would process the payment.

▮▮ stated that she did not handle any checks or mail for FLYNN.

▮▮ was given document bates numbered USC_00000031 to review (attached hereto as a 1A). ▮▮ did not recognize the letter. ▮▮ stated that FLYNN's Administrative Staff handles her mail, which goes to her office on USC's main campus. Other than the Los Angeles Times article and her interview with USC's Compliance Office, ▮▮ was unaware of a check payable to USC that came from MRT or his campaign account.

▮▮ was again given documents bates numbered USC_00000019 to USC_00000020 to review (attached hereto as a 1A). ▮▮ stated the first time she read the email, she only read the message from FLYNN and forwarded the email to ▮▮ and ▮▮. After ▮▮ saw the

USAO_000291

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  (U) Interview of ▇▇▇▇▇▇▇ , On 08/22/2018 , Page 9 of 10

UWCA may be illegal. ▇▇ asked ▇▇ to send him the email and told her that he would look into it. After their meeting at Starbucks, ▇▇ informed ▇▇ that he had a meeting scheduled with the Vice Provost at the end of May 2018 to discuss concerns he had regarding SRT's scholarship, the email ▇▇ had provided him, and SRT's position as Professor in Practice.

In June 2018, the USC Compliance Office began asking questions of individuals involved in the transaction. FLYNN never approached ▇▇ to ask about the transaction, the investigation, or her involvement. FLYNN informed ▇▇ that she was asked to step down as Dean during a June 14, 2018 meeting with the Vice Provost.

▇▇ is the only person that ▇▇ has discussed this situation involving the $100,000 transaction and her reporting of the transaction with. ▇▇ is also the only individual that is aware ▇▇ identified and reported the issues with the $100,000 transaction. ▇▇ has not had any communication with SRT or MRT. ▇▇ stated that she regretted getting ▇▇ and ▇▇ involved by forwarding them the email, and ▇▇ does not believe they would have done anything knowingly wrong. Asside from rumors and gossip that have been flowing through the USC SSW, no one has treated ▇▇ differently as a result of her reporting the transaction. ▇▇ and ▇▇'s boyfriend were aware that ▇▇ was meeting with the FBI.

**Clarifying Remarks Provided by ▇▇ on August 29, 2018**

[**Agent's Note:** On August 29, 2018, interviewing agents were notified that ▇▇ wished to clarify statements she had made during the initial interview on August 22, 2018. As such, a follow up interview was conducted via telephone on August 29, 2018. Also present for the interview were attorneys Stephanie Yonekura and Dominique Caamano representing USC. After being advised of the identities of the interviewing Agents and the nature of the interview, ▇▇ provided the following information:]

▇▇ initially stated that she had an in-person meeting with FLYNN on May 10, 2018. However, after looking at her calendar ▇▇ noticed that the May 10, 2018 meeting had been cancelled and rescheduled for May 17, 2018. ▇▇ definitively stated that she met in-person with FLYNN on May 17, 2018, and that content of the meeting she had previously discussed as occurring on May 10, 2018 was still factually accurate.

▇▇ believed she had previously informed the interviewing Agents that during her May 17, 2018 meeting with FLYNN, FLYNN had told ▇▇ the $100,000 payment to UWCA was to hire ▇▇. ▇▇ noted that FLYNN

USAO_000294