E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
LINDSEY GREER DOTSON (Cal. Bar No. 266973)
THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
MICHAEL J. MORSE (Cal. Bar No. 291763)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
       1500 United States Courthouse
       312 North Spring Street
       Los Angeles, California 90012
       Telephone:  (213) 894-4443/8452/7367
       Facsimile:  (213) 894-0141
       E-mail:     lindsey.dotson@usdoj.gov
                   thomas.rybarczyk@usdoj.gov
                   michael.morse@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 21-00485-DSF-1 |
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date:  March 7, 2023<br>Trial Time:  8:30 a.m. |
| MARK RIDLEY-THOMAS, | Location:   Courtroom of the<br>            Hon. Dale S. Fischer |
| Defendant. | |

     Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorneys Lindsey Greer
Dotson, Thomas F. Rybarczyk, and Michael J. Morse hereby submits its
trial memorandum pursuant to Section D.1. of the Court's Criminal
Standing Order for the trial set to begin as to defendant MARK
RIDLEY-THOMAS on March 7, 2023.

1        The Government's Trial Memorandum is based upon the attached

2    memorandum of points and authorities, the files and records in this

3    case, and such further evidence and argument as the Court may permit.

4    Dated: February 28, 2023          Respectfully submitted,

5                                      E. MARTIN ESTRADA
                                       United States Attorney
6
                                       MACK E. JENKINS
7                                      Assistant United States Attorney
                                       Chief, Criminal Division
8

9                                       /s/ Thomas F. Rybarczyk
                                       LINDSEY GREER DOTSON
10                                     THOMAS F. RYBARCZYK
                                       MICHAEL J. MORSE
11                                     Assistant United States Attorneys

12                                     Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

DESCRIPTION                                                                  PAGE

I.    INTRODUCTION...................................................................1

II.   STATEMENT OF THE CASE.........................................................2

      A.    Statement of Charges....................................................2

      B.    Factual Summary of the Government's Case................................2

      C.    Status of Co-Defendant FLYNN's Case.....................................5

      D.    Trial Estimate..........................................................6

      E.    Government Witnesses....................................................6

      F.    Exhibits................................................................7

      G.    Stipulations............................................................8

      H.    Motions in Limine.......................................................8

III.  Elements of the Charges.......................................................9

      A.    Count One: Conspiracy (18 U.S.C. § 371).................................9

      B.    Count Two: Bribery (18 U.S.C. § 666(a)(1)(B))..........................10

      C.    Counts Four Through Twenty: Honest Services Mail and
            Wire Fraud (18 U.S.C. §§ 1341, 1343, 1346)............................14

IV.   EVIDENTIARY ISSUES...........................................................21

      A.    Coconspirator Statements...............................................21

      B.    Summary Charts.........................................................23

      C.    Business Records.......................................................27

      D.    Statements by an Opposing Party Under Rule 801(d)(2)...................30

      E.    Public Records Exception...............................................32

      F.    Statements Offered to Prove State of Mind..............................33

      G.    Statements Not Offered for Their Truth.................................34

      H.    Present Sense Impression and Excited Utterances........................35

      I.    Recordings.............................................................37

      J.    Transcripts............................................................38

i

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                          PAGE

     K.    Character Witnesses......................................38

     L.    Impeaching Witnesses.....................................42

     M.    Defendant Cannot Admit His Own Statements...............42

     N.    Photographs.............................................44

     O.    Duplicates..............................................45

     P.    Cross-Examination.......................................45

     Q.    Cross-Examination of Defendant..........................45

     R.    Discretion as to Order of Proof.........................47

     S.    Lack of Rule 12 Notice..................................47

     T.    Reciprocal Discovery....................................47

V.   CONCLUSION..................................................47

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

**CASES**

Bourjaily v. United States,
   483 U.S. 171 (1987) ...................................... 21, 23, 27

Canatxx Gas Storage Ltd. v. Silverhawk Cap. Partners, LLC,
   No. CIV.A. H-06-1330, 2008 WL 1999234 (S.D. Tex. May 8, 2008) .... 36

City of Columbia v. Omni Outdoor Advert., Inc.,
   499 U.S. 365 (1991) ...................................... 14, 20

Hilao v. Estate of Marcos,
   103 F.3d 767 (9th Cir. 1996) ................................. 31

Hunter v. Bryant,
   502 U.S. 224 (1991) ......................................... 27

In re Sealed Case,
   352 F.3d 409 (D.C. Cir. 2003) ............................... 41

In re Sept. 11 Litig.,
   621 F. Supp. 2d 131 (S.D.N.Y. 2009) ......................... 33

Ionian Corp. v. Country Mut. Ins. Co.,
   836 F. Supp. 2d 1173 (D. Or. 2011) .......................... 29

Kennedy v. Los Angeles Police Dep't,
   901 F.2d 702 (9th Cir. 1990) ................................ 27

La Porte v. United States,
   300 F.2d 878 (9th Cir. 1962) ................................ 28

Lorraine v. Markel Am. Ins. Co.,
   241 F.R.D. 534 (D. Md. 2007) ................................ 36

McDonnell v. United States,
   136 S. Ct. 2355 (2016) ...................................... 18

Melendez-Diaz v. Massachusetts,
   557 U.S. 305 (2009) ......................................... 28

Michelson v. United States,
   335 U.S. 469 (1948) ............................... 38, 39, 40, 41

Monotype Corp. v. Int'l Typeface Corp.,
   43 F.3d 443 (9th Cir. 1994) ................................. 29

iii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

Ohio v. Roberts,
    448 U.S. 56 (1980) ............................................ 28

Skilling v. United States,
    561 U.S. 358 (2010) .......................................... 16

Territory of Guam v. Ojeda,
    758 F.2d 403 (9th Cir. 1985) ................................. 43

United States v. Alarcon-Simi,
    300 F.3d 1172 (9th Cir. 2002) ................................ 36

United States v. Allen,
    425 F.3d 1231 (9th Cir. 2005) ................................ 21

United States v. Altvater,
    954 F.3d 45 (1st Cir. 2020) .................................. 44

United States v. Antico,
    275 F.3d 245 (3d Cir. 2001) .................................. 16

United States v. Arteaga,
    117 F.3d 388 (9th Cir. 1997) ................................. 34

United States v. Avendano,
    455 F.2d 975 (9th Cir. 1972) ................................. 47

United States v. Baker,
    855 F.2d 1353 (8th Cir. 1988) ................................ 28

United States v. Black,
    767 F.2d 1334 (9th Cir. 1985) ................................ 46

United States v. Bowman,
    215 F.3d 951 (9th Cir. 2000) ......................... 21, 22, 23

United States v. Bush,
    58 F.3d 482 (9th Cir. 1995) .................................. 40

United States v. Camejo,
    929 F.2d 610 (9th Cir. 1991) ................................. 39

United States v. Cawley,
    630 F.2d 1345 (9th Cir. 1980) ................................ 35

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                    <u>PAGE</u>

<u>United States v. Chen</u>,
  754 F.2d 817 (9th Cir. 1985) ..................................... 38

<u>United States v. Childs</u>,
  5 F.3d 1328 (9th Cir. 1993) ..................................... 28

<u>United States v. Ciresi</u>,
  697 F.3d 19 (1st Cir. 2012) ..................................... 22

<u>United States v. Collicott</u>,
  92 F.3d 973 (9th Cir. 1996) ..................................... 44

<u>United States v. Dawkins</u>,
  999 F.3d 767 (2d Cir. 2021) ..................................... 39

<u>United States v. Diaz</u>,
  961 F.2d 1417 (9th Cir. 1992) .................................... 41

<u>United States v. Dimora</u>,
  750 F.3d 619 (6th Cir. 2014) ..................................... 39

<u>United States v. Dominguez</u>,
  125 F.3d 1315 (9th Cir. 1997) .................................... 32

<u>United States v. Echeverry</u>,
  759 F.2d 1451 (9th Cir. 1985) .................................... 35

<u>United States v. Emmert</u>,
  829 F.2d 805 (9th Cir. 1987) ..................................... 34

<u>United States v. Ferber</u>,
  966 F. Supp. 90 (D. Mass. 1997) ................................. 36

<u>United States v. Fernandez</u>,
  392 F. App'x 743 (11th Cir. 2010) .............................. 35

<u>United States v. Fernandez</u>,
  839 F.2d 639 (9th Cir. 1988) ..................................... 43

<u>United States v. Flores</u>,
  679 F.2d 173 (9th Cir. 1982) ..................................... 31

<u>United States v. Gardner</u>,
  611 F.2d 770 (9th Cir. 1980) ..................................... 25

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

United States v. Garrido,
    713 F.3d 985 (9th Cir. 2013) .......................................... 11

United States v. Gay,
    967 F.2d 322 (9th Cir. 1992) .......................................... 46

United States v. Gibson,
    690 F.2d 697 (9th Cir. 1982) .......................................... 34

United States v. Hackett,
    638 F.2d 1179 (9th Cir. 1980) ......................................... 35

United States v. Hearst,
    563 F.2d 1331 (9th Cir. 1977) ......................................... 46

United States v. Hedgcorth,
    873 F.2d 1307 (9th Cir. 1989) ......................................... 39

United States v. Henry,
    560 F.2d 963 (9th Cir. 1977) .......................................... 41

United States v. Higgins,
    No. 21-4245, 2022 WL 17592125 (4th Cir. Dec. 13, 2022) ........... 17

United States v. Ho,
    984 F.3d 191 (2d Cir. 2020) ........................................... 25

United States v. Jannotti,
    673 F.2d 578 (3d Cir. 1982) ....................................... 14, 19

United States v. Johnson,
    594 F.2d 1253 (9th Cir. 1979) ......................................... 25

United States v. Jordan,
    No. 4:18-CR-00087, 2022 WL 3088372 (E.D. Tex. Aug. 3, 2022) .. 12, 20

United States v. Kelly,
    722 F.2d 873 (1st Cir. 1983) .......................................... 34

United States v. Kemp,
    500 F.3d 257 (3d Cir. 2007) ........................................... 16

United States v. Kimbrew,
    944 F.3d 810 (9th Cir. 2019) .......................................... 18

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

United States v. Kincaid-Chauncey,
  556 F.3d 923 (9th Cir. 2009) .................................. 16, 17

United States v. Layton,
  720 F.2d 548 (9th Cir. 1983) ...................................... 22

United States v. Lischewski,
  860 Fed. App'x 512 (9th Cir. 2021) ............................... 29

United States v. Mackey,
  117 F.3d 24 (1st Cir. 1997) ...................................... 33

United States v. Matta-Ballesteros,
  71 F.3d 754 (9th Cir. 1995) ...................................... 37

United States v. May,
  622 F.2d 1000 (9th Cir. 1980) .................................... 45

United States v. McNair,
  605 F.3d 1152 (11th Cir. 2010) ................................... 11

United States v. Meyers,
  847 F.2d 1408 (9th Cir. 1988) .................................... 25

United States v. Miranda-Uriarte,
  649 F.2d 1345 (9th Cir. 1981) .................................... 45

United States v. Moss,
  34 F.4th 1176 (11th Cir. 2022) ................................... 41

United States v. Nagin,
  810 F.3d 348 (5th Cir. 2016) ................................. 13, 19

United States v. Naranjo,
  634 F.3d 1198 (11th Cir. 2011) ................................... 29

United States v. Ng Lap Seng,
  934 F.3d 110 (2d Cir. 2019) ...................................... 11

United States v. Norton,
  867 F.2d 1354 (11th Cir. 1989) ................................... 28

United States v. Oaxaca,
  569 F.2d 518 (9th Cir. 1978) ..................................... 45

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

United States v. Orellana-Blanco,
  294 F.3d 1143 (9th Cir. 2002) ............................... 32, 33

United States v. Ortega,
  203 F.3d 675 (9th Cir. 2000) ........................... 42, 43, 44

United States v. Perez,
  658 F.2d 654 ................................................... 47

United States v. Pheaster,
  544 F.2d 353 (9th Cir. 1976) .................................. 34

United States v. Phillips,
  577 F.2d 495 (9th Cir. 1978) .................................. 38

United States v. Plunk,
  153 F.3d 1011 (9th Cir. 1998) ................................. 38

United States v. Porter,
  886 F.3d 562 (6th Cir. 2018) .................................. 12

United States v. Quinn,
  359 F.3d 666 (4th Cir. 2004) .............................. 13, 19

United States v. Ray,
  930 F.2d 1368 (9th Cir. 1990) ............................. 27, 28

United States v. Riley,
  621 F.3d 312 (3d Cir. 2010) ................................... 31

United States v. Rizk,
  660 F.3d 1125 (9th Cir. 2011) ............................. 24, 25

United States v. Roberson,
  998 F.3d 1237 (11th Cir. 2021) ............................... 11

United States v. Salazar-Gaeta,
  447 F.2d 468 (9th Cir. 1971) .................................. 40

United States v. Scales,
  594 F.2d 558 (6th Cir. 1979) .................................. 24

United States v. Shirley,
  884 F.2d 1130 (9th Cir. 1989) ................................. 25

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

United States v. Shores,
    33 F.3d 438 (4th Cir. 1994) ...................................... 23

United States v. Silver,
    948 F.3d 538 (2d Cir. 2020) .................................. 13, 19

United States v. Smith,
    893 F.2d 1573 (9th Cir. 1990) .................................... 45

United States v. Stearns,
    550 F.2d 1167 (9th Cir. 1977) .................................... 44

United States v. Terry,
    No. 1:10-CR-00390, 2011 WL 5008415 (N.D. Ohio Oct. 19, 2011) ..... 15

United States v. Torres,
    908 F.2d 1417 (9th Cir. 1990) .................................... 37

United States v. Traylor,
    656 F.2d 1326 (9th Cir. 1981) .................................... 22

United States v. Turner,
    528 F.2d 143 (9th Cir. 1975) ..................................... 47

United States v. Weiner,
    578 F.2d 757 (9th Cir. 1978) ..................................... 45

United States v. Williams,
    989 F.2d 1061 (9th Cir. 1993) .................................... 22

United States v. Wilson,
    788 F.3d 1298 (11th Cir. 2015) ................................... 31

United States v. Zemek,
    634 F.2d 1159 (9th Cir. 1980) .................................... 47

United States v. Zidar,
    178 Fed. App'x 673 (9th Cir. 2006) .............................. 26

Volterra Semiconductor Corp. v. Primarion, Inc.,
    No. 08-CV-5129, 2011 WL 4079223 (N.D. Cal. Sept. 12, 2011) ....... 29

Wagner v. Cnty. of Maricopa,
    747 F.3d 1048 (9th Cir. 2013) .................................... 33

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

Williamson v. United States,
    512 U.S. 594 (1994) ............................................. 43

**STATUTES**

18 U.S.C. § 201.............................................. 11, 12

18 U.S.C. § 371............................................. 1, 2, 9

18 U.S.C. § 666.............................................. passim

18 U.S.C. § 1341....................................... 1, 2, 14, 15

18 U.S.C. § 1343....................................... 1, 2, 14, 15

18 U.S.C. § 1346....................................... 1, 2, 14, 15

**RULES**

Fed. R. Evid. 104................................................ 27

Fed. R. Evid. 404................................................ 41

Fed. R. Evid. 405................................................ 40

Fed. R. Evid. 608................................................ 42

Fed. R. Evid. 611............................................ 41, 45

Fed. R. Evid. 801........................................ 21, 31, 44

Fed. R. Evid. 803........................................ 28, 33, 36

Fed. R. Evid. 901................................................ 37

Fed. R. Evid. 902................................................ 27

Fed. R. Evid. 1003.............................................. 45

Fed. R. Evid. 1006.............................................. 24

Fed. R. Evid. 1101.............................................. 27

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

**OTHER AUTHORITIES**

2 Fed. Jury Prac. & Instr. § 27:11..............................13, 19

30B Fed. Prac. & Proc. § 6864 ....................................29

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3      While a Member of the Los Angeles County Board of Supervisors,

4 defendant MARK RIDLEY-THOMAS ("defendant") conspired with co-

5 defendant MARILYN LOUISE FLYNN, the then-Dean of the University of

6 Southern California School of Social Work, to steer County contracts

7 to the school in exchange for a variety of benefits for defendant

8 RIDLEY-THOMAS's son, Sebastian Ridley-Thomas.  In addition to

9 offering Sebastian Ridley-Thomas admission to USC, a full tuition

10 scholarship, and a paid professorship, co-defendant FLYNN helped

11 disguise and funnel a $100,000 payment from the Mark Ridley-Thomas

12 Committee ("Committee") for a Better L.A. to another nonprofit,

13 United Ways of California ("United Ways") for the benefit of the

14 Policy, Research & Practice Initiative ("PRPI"), a new nonprofit

15 initiative founded by Sebastian Ridley-Thomas.  By funneling the

16 payment through USC, defendant and co-defendant FLYNN attempted to

17 disguise the true source of the payment to make it appear as though

18 USC, not defendant, was the generous benefactor supporting his son

19 and PRPI.  For his part, defendant delivered on his end of the

20 corrupt bargain.  He voted on three County proposals that Dean Flynn

21 had sought to shore up her School's shoddy financial situation,

22 including a vote approving a much more lucrative amended TeleHealth

23 agreement with School of Social Work.  He also sought to influence

24 key County decisionmakers associated with these approvals and made

25 sure co-defendant FLYNN knew of his efforts.

26      For his conduct, he is charged with Conspiracy (18 U.S.C.

27 § 371), Bribery (18 U.S.C. § 666), and Honest Services Mail and Wire

28 Fraud (18 U.S.C. §§ 1341, 1343, 1346).  Pursuant to Section D.1. of

the Court's Criminal Standing Order, the government has attempted to obtain defense counsel's agreement to the factual summary, statement of the charges, and time-estimate for cross-examination.  The government has also met and conferred with defense counsel on the categories of legal and evidentiary issues as discussed more thoroughly below.  Trial is set for March 7, 2023 at 8:30 a.m. Defendant is currently on bond.

## II.  STATEMENT OF THE CASE

### A.  Statement of Charges[1]

On October 13, 2021, a federal grand jury returned a 20-count Indictment with 19 of the counts against defendant.  (Dkt. 1.)  In the Indictment, Count One charged defendant with Conspiracy, in violation of 18 U.S.C. § 371, Count Two charged him with Bribery, in violation of 18 U.S.C. § 666, Counts Four and Five charged him Honest Services Mail Fraud, in violation of 18 U.S.C. §§ 1341, 1346, and Counts Six through Twenty charged him with Honest Services Wire Fraud, in violation of 18 U.S.C. §§ 1343, 1346.

### B.  Factual Summary of the Government's Case[2]

In 2017, defendant's son, Sebastian Ridley-Thomas, was a Member of the California State Assembly and, unbeknownst to the public, the subject of a sexual harassment investigation.  Defendant was working behind the scenes to help his son navigate the unfolding crisis in the midst of the #MeToo movement.[3]  In an attempt to skirt scandal

---

[1] The government and defendant agree to this statement of charges.

[2] Defendant objects to this factual summary.

[3] For a more detailed factual background, please see the government's Supplemental Brief in Support of the Government's Opposition to Defendant's Motion to Sever filed at docket number 91.

2

1    and prevent the sexual harassment allegations from surfacing,

2    Sebastian Ridley-Thomas decided to resign from public office, citing

3    "health concerns."  But with his sudden and premature exit from

4    public life, he needed a career and other landing spots to publicly

5    justify his abrupt resignation and tackle a mounting personal debt.

6    Defendant was looking for ways to provide his son with those landing

7    spots.

8         At the same time, co-defendant FLYNN had been the Dean of the

9    USC Dworak-Peck School of Social Work ("Social Work School") for two

10   decades.  Under her leadership, the school was facing a multimillion-

11   dollar budget deficit.  To salvage her deanship, the substantial

12   compensation she received on account of her position as Dean, and her

13   reputation within the field of social work, co-defendant FLYNN needed

14   lucrative County contracts for the Social Work School.

15        Both uniquely positioned to help the other, defendant and co-

16   defendant FLYNN soon came to each other's mutual aid.  In exchange

17   for help securing County contracts and amendments to existing

18   contracts, defendant solicited and demanded from co-defendant FLYNN

19   and USC a variety of benefits primarily intended to help his son.

20   Co-defendant FLYNN readily obliged, gladly offering any perk and

21   benefit at her disposal to sway defendant in the performance of his

22   official duties.  In exchange for County contracts and amendments to

23   existing contracts, defendant solicited and demanded, and co-

24   defendant FLYNN offered and agreed to give, the following: (1)

25   admission to USC for Sebastian Ridley-Thomas to obtain a master's

26   degree; (2) a full tuition scholarship for Sebastian Ridley-Thomas to

27   attend USC; (3) a paid professorship for Sebastian Ridley-Thomas to

28   teach at USC while he was a student; and (4) the secret funneling of

                                    3

$100,000 from defendant's ballot committee account through USC to
Sebastian Ridley-Thomas's new nonprofit, PRPI.

With respect to the $100,000 payment, defendant wanted to donate
funds from Committee to his son's new nonprofit, PRPI, but needed to
do so covertly to ensure the donation's success after a prior, failed
attempt.  Earlier, in December 2017, defendant donated $100,000 from
his Committee to African American Civic Engagement Project ("AACEP")
-- a project long affiliated with defendant -- through its fiscal
sponsor Community Partners.  At the time, AACEP needed funding.
Unbeknownst to Community Partners at the time of the donation,
defendant intended for his son to take over AACEP when he resigned
from the State Assembly.  When defendant revealed his plan to
Community Partners near the end of December 2017, it caused the staff
there to pause and consider the optics of the arrangement.  Their
concerns with the optics eventually led to Community Partners
returning the $100,000 to defendant's Committee in late January 2018.

After this failed attempt, defendant and his son created a new
nonprofit project, PRPI, before defendant enlisted co-defendant
FLYNN's help funneling the payment through USC.  In May 2018, he
directed a $100,000 "donation" from his campaign account to the
Social Work School supposedly for the school's good work in the
community.  But unbeknownst to USC leadership, defendant already had
arranged with co-defendant FLYNN for USC to make a simultaneous
$100,000 donation to PRPI's fiscal sponsor (United Ways of
California) for PRPI's benefit. By funneling the $100,000 payment
through USC, both defendants attempted to disguise the true nature of
the payment to make it appear as though USC, not defendant, was the
generous benefactor supporting Sebastian Ridley-Thomas and PRPI.  To

4

execute their plan, both defendants concealed material facts and misled USC and United Ways of California to expeditiously funnel the $100,000 through USC to PRPI.

Ultimately, co-defendant FLYNN delivered on each of the requested benefits for defendant's son.  Defendant delivered too. Upon his son receiving the benefit (or at least the promise of it), defendant took official action, including voting on at least three Board of Supervisors agenda items and motions as defendant FLYNN requested.  Specifically, defendant voted on the following items: (1) an August 1, 2017 motion directing the Chief Probation Officer to provide a report detailing recommendations on a potential contract and partnership between the County and USC School of Social Work; (2) an October 17, 2017 motion relating to "Probation University," a concept whereby an outside university, such as the School of Social Work, would help train County Probation employees and receive compensation for those services; and (3) an amended Telehealth agreement with the School of Social Work that provided for higher reimbursement rate per session and access to more patients.  In addition to voting on these items, defendant also sought to influence key decisionmakers connected to some of these motions, including then County Department of Mental Health Director, and would ensure that co-defendant FLYNN know of his efforts to influence these individuals.

### C.    Status of Co-Defendant FLYNN's Case

On September 19, 2022, co-defendant FLYNN pled guilty to Count Three of the Indictment charging her with Bribery, in violation of 18 U.S.C. § 666, pursuant to a plea agreement.  (Dkt. 114.)  Co-defendant FLYNN's sentencing is set for June 26, 2023.

5

**D.   Trial Estimate**

The government estimates approximately two weeks for its case-in-chief, exclusive of jury selection.  Defendant estimates his case will take between two to three weeks, though he indicated this estimate may change.

**E.   Government Witnesses**[4]

The government is currently considering calling the following the witnesses in its case-in-chief:

| Witness Initials | Anticipated Length of Direct Examination | Anticipated Length of Cross Examination |
|---|---|---|
| Los Angeles County Person Most Knowledgeable and/or witness to testify about the Board of Supervisors generally | 30 Minutes | 30 Minutes |
| Individual S.D.B. | 2 hours | 2 hours |
| Individual J.C. | 4 hours | 4 hours |
| Individual M.C. | 3 hours | 3 hours |
| Individual R.F. | 45 minutes | 45 minutes |
| Individual C.F. | 2 hours | 2 hours |
| Individual A.G. | 2 hours | 2 hours |
| Individual Y.H. | 30 minutes | 30 minutes |
| Individual K.J. | 1.5 hours | 1.5 hours |
| Individual P.M. | 3 hours | 3 hours |
| Individual J.M. | 45 minutes | 45 minutes |
| Individual M.M. | 45 minutes | 45 minutes |
| Individual M.N. | 2.5 hours | 2.5 hours |
| Individual R.S. | 30 minutes | 30 minutes |

---

[4] Consistent with the Court's standing order, the government will send the Court a Word version of its exhibit list with the witnesses' full names on March 2, 2023.

6

| Witness Initials | Anticipated Length of Direct Examination | Anticipated Length of Cross Examination |
|---|---|---|
| Individual J.S. | 2 hours | 2 hours |
| Individual L.T. | 1.5 hours | 1.5 hours |
| Individual P.V. | 2 hours | 2 hours |
| Individual B.W. | 30 minutes | 30 minutes |
| FBI Special Agents Brian Adkins and Ian Faith | 10 hours | 10 hours |

**F.   Exhibits**

Prior to trial, consistent with the Court's order regarding Pretrial Exchange of Trial Exhibits, (Dkt. 126), the government and defendant exchanged their proposed trial exhibits on January 6, 2023 and exchanged objections on January 20, 2023.  After multiple meet and confers concerning the government and defendant's respective objections, the government and defendant provided the Court their proposed exhibit lists with the opposing party's remaining objections on February 17, 2023.

At present, the government has marked approximately 555 exhibits for trial.  These exhibits primarily consist of the following:

      1) Emails seized from defendant's personal AOL email account;

      2) Emails exchanged between defendant and co-defendant FLYNN;

      3) Emails exchanged between co-defendant FLYNN and SEBASTIAN RIDLEY-THOMAS;

      4) USC business records, including emails exchanged between co-defendant FLYNN and USC staff, faculty handbooks, and lobbying forms;

      5) Community Partners and United Ways of California's business records, including internal emails and financial records;

6) California Fair Political Practices Commission Form 460s
   for defendant's Ballot Committee, Mark Ridley-Thomas
   Committee for a Better LA ("Campaign Committee");

7) Bank records for defendant's Campaign Committee;

8) Medical records;

9) County of Los Angeles records; and

10) Summary charts, including summary charts of phone
    records, the mailings and wirings charged in the
    Indictment, and a summary timeline of emails, phone calls,
    and other events all based upon evidence the government
    expects to admit at trial.

This is a non-exhaustive summary of the government's exhibits. The government reserves the right to offer additional exhibits and will file its final exhibit list in advance of trial.

**G. Stipulations**

The parties have filed nine fact stipulations, which the government has marked and intends to admit into evidence. (Dkts. 127, 140, 168, 181.) The parties have also filed a stipulation concerning the authenticity of certain documents produced in discovery. (Dkt. 127, Stipulation No. 5.) Pursuant to the stipulations, the parties agree that each stipulation may be marked as an exhibit, admitted and displayed at trial, and provided to the jury during their deliberations.

**H. Motions in Limine**

The government filed two motions in limine. The government's first motion in limine seeks to exclude the irrelevant, foundationless, and misleading expert testimony of Ann Ravel. (Dkts. 128, 149.) The government's second motion in limine seeks to

8

preclude irrelevant, improper, and unfairly prejudicial evidence of defendant's good acts. (Dkts. 131, 148.) Defendant opposed both motions in limine. (Dkts. 142, 143.)

Defendant filed a motion in limine seeking to exclude three statements from co-defendant FLYNN as inadmissible hearsay and unfairly prejudicial. (Dkt. 135.) The government opposed, (Dkt. 138), and defendant filed a reply, (Dkt. 150). The Court granted in part and denied in part defendant's motion, excluding only one of the three statements identified by defendant in his motion. (Dkt. 184.)

Apart from the aforementioned motions, the parties have not filed any other motions in limine. The deadline for filing motions in limine passed on January 13, 2023. (Dkt. 115.)

## III. Elements of the Charges

Government and defendant do not agree as to the elements of any of the charges. (See Dkt. 175, Compare Gov't Proposed Instruction Nos. 36-40 with Def. Proposed Instruction Nos. 36-40.)

### A.   Count One: Conspiracy (18 U.S.C. § 371)

With respect to Conspiracy, the government submits it must prove the following:

1. Beginning on a date unknown and continuing until in or around August 2018, there was an agreement between two or more persons to commit at least one crime as charged in the Indictment;[5]

2. The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help

---

[5] In the government's proposed Conspiracy jury instruction, the preamble to these elements indicates the crimes charged in the Indictment are Bribery Concerning Programs Receiving Federal Funds, Honest Services Mail Fraud, and Honest Services Wire Fraud.

9

accomplish it; and

3. One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

**B.** **Count Two**: **Bribery (18 U.S.C. § 666(a)(1)(B))**

With respect to Bribery, the government submits it must prove the following:

1. Defendant was an agent of a State or local government, or any agency thereof -- namely, the County of Los Angeles ("County");

2. Defendant solicited, demanded, accepted, or agreed to accept a thing of value from a person for the benefit of any person -- namely, one or more of the following things of value:

   a. Admission to the University of Southern California ("USC") for Sebastian Ridley-Thomas;

   b. A scholarship for Sebastian Ridley-Thomas to attend USC;

   c. A paid professorship for Sebastian Ridley-Thomas to teach at USC; or

   d. A $100,000 payment from USC to the United Ways of California;

3. Defendant acted corruptly, that is, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of the County involving anything of value of $5,000 or more; and

4. The County received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan,

10

1          guarantee, insurance, or other form of Federal assistance

2          in any one-year period.

3  18 U.S.C. §§ 666(a)(1)(B), (b); Ninth Circuit Model Criminal Jury

4  Instructions, No. 10.2 (2022 ed.) [Bribery of Federal Public Official

5  (18 U.S.C. § 201(b)(2))] (defining "corruptly").

6      Controlling Ninth Circuit law holds that the government does <u>not</u>

7  need to prove that there was a <u>quid pro quo</u> of benefits in exchange

8  for an official act for purposes of section 666 bribery.  <u>United</u>

9  <u>States v. Garrido</u>, 713 F.3d 985, 996–97 (9th Cir. 2013) (no <u>quid pro</u>

10 <u>quo</u> of benefits in exchange for an official act required for section

11 666 bribery); <u>United States v. McNair</u>, 605 F.3d 1152, 1187–88 (11th

12 Cir. 2010) (same); <u>see also</u> <u>United States v. Lindberg</u>, 39 4th 151,

13 176 (4th Cir. 2022) (rejecting official act requirement in Section

14 666 post-<u>McDonnell</u>); <u>United States v. Roberson</u>, 998 F.3d 1237, 1247

15 (11th Cir. 2021), <u>cert. denied</u>, 142 S. Ct. 1109 (2022) (holding that

16 section 666 bribery does <u>not</u> require the government to prove an

17 "official act"); <u>id.</u> ("The only Circuit Courts of Appeals to directly

18 consider the issue [of whether section 666 requires an 'official

19 act'] in published cases post-<u>McDonnell</u>, the Second and Sixth, have

20 not imported an 'official act' requirement into section 666.  In

21 considering the purpose of section 666 to protect the integrity of

22 entities receiving substantial sums of federal funds and the

23 statute's expansive, unqualified language, the court has repeatedly

24 rejected statutory constructions aimed at narrowing section 666's

25 scope.  Consistent with the views of our sister Circuits, we hold

26 that <u>McDonnell</u> does not disturb this court's holding in <u>McNair</u> and we

27 do not read into section 666 limitations unsupported by the language

28 of the statute.") (internal quotations and citations omitted); <u>United</u>

11

States v. Ng Lap Seng, 934 F.3d 110, 134 (2d Cir. 2019) (McDonnell's "official act" standard does not pertain to section 666 bribery, only to section 201 bribery); United States v. Porter, 886 F.3d 562, 565–66 (6th Cir. 2018) (same).

The fact that an act is motivated, in part, by a family relationship or other noncorrupt purpose is no legal defense. Actions taken with a dual motive constitute bribery so long as one of the motives is to be influenced or rewarded in connection with any business, transaction, or series of transactions of the County involving anything of value of $5,000 or more. See United States v. Jordan, No. 4:18-CR-00087, 2022 WL 3088372, at *20 (E.D. Tex. Aug. 3, 2022) (Mixed motive jury instruction properly given as follows: "An act is 'corruptly' done if it is done intentionally with an unlawful purpose. The fact that an act is motivated, in part, by friendship or a romantic interest is no defense. Actions taken with a dual motive constitute bribery so long as one of the motives is to influence or reward the public official. It is no legal defense that the official acts were good for the community or were acts that the public official would have or should have taken without the bribe. On the other hand, if actions were entirely motivated by legitimate reasons, like romantic interest, then they do not constitute bribery."); United States v. Quintanilla, No. 7:19-CR-00522, Dkt. No. 389 (S.D. Tex.) (The court instructed: "The fact that an act is motivated, in part, by family relationship or friendship is no defense. Actions taken with a dual motive constitute bribery so long as one of the motives is to influence or reward the public official. It is no legal defense that the official acts were good for the community or were acts that the public official would have or should

12

have taken without the bribe.  On the other hand, if actions were entirely motivated by legitimate reasons, like family relationship or friendship then they do not constitute bribery.").

Section 666 bribery is consummated the moment that the defendant "solicits," "demands," "accepts," or "agrees to accept" the thing of value, irrespective of whether he actually took any action or always planned to take certain action.  It is the corrupt "ask" or "acceptance" that constitutes the crime, not the follow-through.  To that end, it is no legal defense that any acts taken were good for the community or were acts that defendant would have or should have taken without the bribe.  O'Malley 2 Fed. Jury Prac. & Instr. § 27:11 (6th ed.) ("It is not a defense to the crime of bribery as charged in Count of the indictment that the [offer] [or] [promise] [demand] [or] [receipt] of anything of value was made [to] [by] the public official to influence an official act which is actually lawful, desirable, or even beneficial to the public."); United States v. Nagin, 810 F.3d 348, 351 (5th Cir. 2016) (finding no error in an honest services wire fraud prosecution where district court's instructed the jury that "[i]t is not a defense to claim that a public official would have lawfully performed the official action in question even without having accepted a thing of value"); United States v. Silver, 948 F.3d 538, 562 n.14 (2d Cir. 2020) ("It is no defense that an official would have taken certain actions regardless of any alleged bribe."); United States v. Quinn, 359 F.3d 666, 675 (4th Cir. 2004) (finding no error with the instruction that "[i]t is not a defense that the official act sought to be influenced would have been done anyway regardless of the fact that the bribe was received or accepted.  That is to say, even if the defendant acted as he or she normally would if

13

the bribe had not been requested, the crime of bribery has still been committed."); United States v. Jannotti, 673 F.2d 578, 601 (3d Cir. 1982) (en banc) ("[I]t is neither material nor a defense to bribery that had there been no bribe, the (public official) might, on the available data, lawfully and properly have made the very recommendation that (the briber) wanted him to make." (internal quotation marks omitted)); see also City of Columbia v. Omni Outdoor Advert., Inc., 499 U.S. 365, 378 (1991) ("A mayor is guilty of accepting a bribe even if he would and should have taken, in the public interest, the same action for which the bribe was paid. (That is frequently the defense asserted to a criminal bribery charge -- and though it is never valid in law, it is often plausible in fact.)" (internal citation omitted)).

**C.** **Counts Four Through Twenty: Honest Services Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343, 1346)**

With respect to Honest Services Mail and Wire Fraud, the government submits it must prove the following:

1.   Defendant devised or knowingly participated in a scheme or plan to deprive the residents of the County of Los Angeles ("County") of their right of honest services;

2.   The scheme or plan consisted of a bribe or kickback in exchange for at least one official act by defendant, with all of you agreeing as to which act.  The "exchange" may be express or may be implied from all the surrounding circumstances;

3.   Defendant owed a fiduciary duty to the residents of the County;

4.   Defendant acted with the intent to defraud by depriving the

14

residents of the County of their right of honest services;

5. Defendant's act or omission was material; that is, it had a natural tendency to influence, or was capable of influencing, a person or entity's acts; and

6. Defendant used, or caused someone to use, the [mails/interstate wiring] to carry out or to attempt to carry out an essential part of the scheme or plan.

Ninth Circuit Model Criminal Jury Instructions, No. 15.34 (2022 ed.) [Mail Fraud -- Scheme to Defraud -- Deprivation of Intangible Right of Honest Services (18 U.S.C. §§ 1341 and 1346)] (modified to fit facts of case); Ninth Circuit Model Criminal Jury Instructions, No. 15.35 (2022 ed.) [Wire Fraud (18 U.S.C. § 1343)].

Bribery and kickbacks involve the exchange of a thing or things of value for official acts by a public official, in other words, a "quid pro quo." Bribery and kickbacks also include offers and solicitations of things of value in exchange for official acts. That is, for the payor, bribery and kickbacks include the offer or agreement to provide a thing of value to a public official in exchange for an official act. For the public official, bribery and kickbacks include the public official's solicitation or agreement to accept a thing of value in exchange for an official act. The public official and the payor need not state the quid pro quo in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods. Rather, the intent to exchange may be established by circumstantial evidence, based upon the defendant's words, conduct, acts, and all the surrounding circumstances disclosed by the evidence and the rationale or logical inferences that may be drawn from them. United States v. Terry, No. 1:10-CR-00390, 2011 WL 5008415, at *3-4

(N.D. Ohio Oct. 19, 2011) (providing a similar instruction in an honest services fraud prosecution); see also United States v. Kincaid-Chauncey, 556 F.3d 923, 937 (9th Cir. 2009), overruled on other grounds by, Skilling v. United States, 561 U.S. 358 (2010) ("[I]t is well established that to convict a public official of Hobbs Act extortion for receipt of property other than campaign contributions, [t]he official and the payor need not state the quid pro quo in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods.  An explicit quid pro quo is not required; an agreement implied from the official's words and actions is sufficient to satisfy this element." (internal quotations and citation omitted)); United States v. Kemp, 500 F.3d 257, 284 (3d Cir. 2007) (In an honest services mail and wire fraud case, "evidence of a quid pro quo can be implicit, that is, a conviction can occur if the Government shows that [the defendant] accepted payments or other consideration with the implied understanding that he would perform or not perform an act in his official capacity.  As we have recognized, the official and the payor need not state the quid pro quo in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods." (internal quotation marks and citation omitted)); United States v. Antico, 275 F.3d 245, 257 (3d Cir. 2001), abrogated on other grounds by Skilling, 561 U.S. 358 ("The quid pro quo can be implicit, that is, a conviction can occur if the Government shows that Antico accepted payments or other consideration with the implied understanding that he would perform or not perform an act in his official capacity 'under color of official right.'").

In addition, the government does not have to prove an explicit promise to perform a particular act made at the time of the payment.

16

Rather, it is sufficient if the public official understands that he is expected, as a result of the payment or thing of value offered, to exercise particular kinds of influence as specific opportunities arise.  Kincaid-Chauncey, 556 F.3d at 937 (approving of a similarly-worded instruction in a prosecution of a Hobbs Act color of official right charge); United States v. Higgins, No. 21-4245, 2022 WL 17592125, at *2 (4th Cir. Dec. 13, 2022) (in an honest service fraud prosecution, holding that "[t]he government does not have to prove an explicit promise to perform a particular act made at the time of payment. [Instead, it] is sufficient if the defendant understood that he was expected as a result of the payment to exercise particular kinds of influence as specific opportunities arose.").

Unlike section 666 Bribery, Honest Services Fraud does require an "official act," or at least the agreement to perform one. "Official act" means any decision or action on a question, matter, cause, suit, proceeding, or controversy involving the formal exercise of governmental power.  The question, matter, cause, suit, proceeding, or controversy must be pending, or be able by law to be brought, before a public official, and the question, matter, cause, suit, proceeding, or controversy must be something specific and focused, rather than a broad policy objective.  The official's decision or action may include using his official position to exert pressure on another official to perform an official act, or to advise another official, knowing or intending that such advice will form the basis for an official act by another official.  The bribe recipient need not be the final decisionmaker.  The government does not need to prove that the official ever actually intended to perform an official act or that the official ever did, in fact, perform an official act,

provided that he agreed to do so.  Merely arranging a meeting, hosting an event, or giving a speech do not qualify as the taking of a specific action.  Ninth Circuit Model Criminal Jury Instructions, No. 10.1 (2022 ed.) [Official Act -- Defined]; see McDonnell v. United States, 136 S. Ct. 2355, 2370-71 (2016) (defining "official act").

A public official is not required to actually make a decision or take an action to perform an "official act;" it is enough that the official agrees to do so.  The agreement need not be explicit; the public official need not specify the means that he will use to perform his end of the bargain.  Ninth Circuit Model Criminal Jury Instructions, No. 10.3 cmt. (2022 ed.) [Receiving Bribe by a Public Official] (comments regarding official acts (citing McDonnell, 136 S. Ct. 2355, 2370-71)).

It is immaterial whether the public official who receives a thing of value ever intended to follow through with his end of the bargain; all that is necessary is that he agreed to perform the official act.  The offense is complete at the moment of agreement -- liability does not depend on the outcome of any follow-through.  Ninth Circuit Model Criminal Jury Instructions, No. 10.3 cmt. (2022 ed.) [Receiving Bribe by a Public Official] (comments regarding official acts); United States v. Kimbrew, 944 F.3d 810, 815-16 (9th Cir. 2019) ("[T]he offense of bribery is complete upon the agreement between the briber and the public official.  The Supreme Court has emphasized that the official need not follow through to be found guilty.  The official can be convicted even if he never intended to perform the official act for which he was bribed.  In short, execution is immaterial.")

It is no legal defense that the demand or receipt of anything of value was made to influence an official act which is actually lawful, desirable, or even beneficial to the public.  It is not a defense that any official acts taken were good for the community or were acts that the public official would have or should have taken without the bribe or kickback.  In other words, it is not a defense that the official act would have been done anyway even without the bribe or kickback.  O'Malley 2 Fed. Jury Prac. & Instr. § 27:11 (6th ed.) ("It is not a defense to the crime of bribery as charged in Count of the indictment that the [offer] [or] [promise] [demand] [or] [receipt] of anything of value was made [to] [by] the public official to influence an official act which is actually lawful, desirable, or even beneficial to the public."); United States v. Nagin, 810 F.3d 348, 351 (5th Cir. 2016) (finding no error in an honest services wire fraud prosecution where district court's instructed the jury that "[i]t is not a defense to claim that a public official would have lawfully performed the official action in question even without having accepted a thing of value."); United States v. Silver, 948 F.3d 538, 562 n.14 (2d Cir. 2020) ("It is no defense that an official would have taken certain actions regardless of any alleged bribe."); United States v. Quinn, 359 F.3d 666, 675 (4th Cir. 2004) (finding no error with the instruction that "[i]t is not a defense that the official act sought to be influenced would have been done anyway regardless of the fact that the bribe was received or accepted.  That is to say, even if the defendant acted as he or she normally would if the bribe had not been requested, the crime of bribery has still been committed."); United States v. Jannotti, 673 F.2d 578, 601 (3d Cir. 1982) (en banc) ("[I]t is neither material nor a defense to bribery

that 'had there been no bribe, the (public official) might, on the available data, lawfully and properly have made the very recommendation that (the briber) wanted him to make." (internal quotation marks omitted)); see also City of Columbia v. Omni Outdoor Advert., Inc., 499 U.S. 365, 378 (1991) ("A mayor is guilty of accepting a bribe even if he would and should have taken, in the public interest, the same action for which the bribe was paid. (That is frequently the defense asserted to a criminal bribery charge -- and though it is never valid in law, [] it is often plausible in fact.)" (internal citation omitted)).

The fact that an official act is motivated, in part, by a family relationship or other noncorrupt purpose is no legal defense, provided that the elements of Honest Services Mail Fraud or Honest Services Wire Fraud are otherwise met.  Jordan, 2022 WL 3088372, at *20 (Mixed motive jury instruction properly given as follows: "An act is 'corruptly' done if it is done intentionally with an unlawful purpose.  The fact that an act is motivated, in part, by friendship or a romantic interest is no defense.  Actions taken with a dual motive constitute bribery so long as one of the motives is to influence or reward the public official.  It is no legal defense that the official acts were good for the community or were acts that the public official would have or should have taken without the bribe."); United States v. Quintanilla, No. 7:19-CR-00522, Dkt. No. 389 (S.D. Tex.) (The court instructed: "The fact that an act is motivated, in part, by family relationship or friendship is no defense.  Actions taken with a dual motive constitute bribery so long as one of the motives is to influence or reward the public official.  It is no legal defense that the official acts were good for the community or

1    were acts that the public official would have or should have taken

2    without the bribe.  On the other hand, if actions were entirely

3    motivated by legitimate reasons, like family relationship or

4    friendship then they do not constitute bribery.")

5    **IV.  EVIDENTIARY ISSUES**

6         **A.   Coconspirator Statements**

7         The government intends to admit a number of statements made by

8    defendant's coconspirators, co-defendant FLYNN and SEBASTIAN RIDLEY-

9    THOMAS, pursuant to Federal Rule of Evidence 801(d)(2)(E).[6]

10        Coconspirator statements made during and in furtherance of a

11   conspiracy are, by definition, not hearsay and thus admissible at any

12   trial against any fellow coconspirator.  Fed. R. Evid. 801(d)(2)(E).[7]

13   "Under Rule 801(d)(2)(E), the statement of a co-conspirator is

14   admissible against the defendant if the government shows by a

15   preponderance of the evidence that [1] a conspiracy existed at the

16   time the statement was made; [2] the defendant had knowledge of, and

17   participated in, the conspiracy; and [3] the statement was made in

18   furtherance of the conspiracy."  United States v. Bowman, 215 F.3d

19   951, 960-61 (9th Cir. 2000) (citing Bourjaily v. United States, 483

20   U.S. 171, 175 (1987)).  While mere "[n]arrations of past events are

21   inadmissible," the Ninth Circuit has held that that "expressions of

22   future intent" as well as "statements that further the common

23   objectives of the conspiracy or set in motion transactions that are

24

25        [6] Both the government and defendant have briefed this issue for
26   the Court.  (See Dkt. 72, 76, 81, 135, 138, 150.)

          [7] Coconspirator statements admitted under Rule 801(d)(2)(E)
27   present no Confrontation Clause issue.  See, e.g., United States v.
     Allen, 425 F.3d 1231, 1235 (9th Cir. 2005) ("co-conspirator
28   statements are not testimonial and therefore beyond the compass of
     Crawford's holding").

an integral part of the conspiracy" are admissible under Rule
801(d)(2)(E).  Id. at 961 (internal quotations and citation omitted).
Moreover, the "reach of the co-conspirator exception" is so
substantial that even narrations of past events are admissible as
coconspirator statements where the narrations themselves served to
further some aspect of the conspiracy.  United States v. Layton, 720
F.2d 548, 556-57 (9th Cir. 1983), overruled on other grounds by
United States v. W.R. Grace, 526 F.3d 499 (9th Cir. 2008).

Coconspirator statements are not limited to conversations
between coconspirators.  United States v. Williams, 989 F.2d 1061,
1068 (9th Cir. 1993) ("It is not necessary that the statement be made
to another member of the conspiracy for it to come under rule
801(d)(2)(E).").  Statements to third parties are admissible under
Rule 801(d)(2)(E) provided that the statement was intended, at least
in part, to move some goal of the conspiracy forward.  Id.  Where a
coconspirator makes a statement to a third party to get some form of
assistance to achieve the conspiracy's objectives, that statement is
in furtherance of the conspiracy.  Layton, 720 F.2d at 556-57.  For
example, "[a] statement to someone to secure utensils and mixing
bowls for the mixing of drugs is sufficiently in furtherance of a
conspiracy to sell drugs, even if the person ordered to obtain the
materials was not part of the conspiracy."  Id. (citing United States
v. Traylor, 656 F.2d 1326, 1333 (9th Cir. 1981)); see also United
States v. Ciresi, 697 F.3d 19, 28 (1st Cir. 2012).  Indeed, "[t]o be
deemed 'in furtherance,' a statement need not be necessary or even
important to the conspiracy, or even made to a coconspirator, as long
as it can be said to advance the goals of the conspiracy in some
way."  Ciresi, 697 F.3d at 28 (internal quotation marks omitted).

Beyond that, a statement to a third party is still in furtherance of a conspiracy "even though it is susceptible of alternative interpretations and was not exclusively, or even primarily, made to further the conspiracy, so long as there is some reasonable basis for concluding that it was designed to further the conspiracy." United States v. Shores, 33 F.3d 438, 444 (4th Cir. 1994) (internal quotation marks omitted). Whether a statement is admissible under Rule 801(d)(2)(E) is a fact-specific inquiry, requiring a "careful examination of the context in which it was made." Id. That is because oftentimes statements "at first blush" may "appear to be nothing more than casual conversation about past events," but when the full context of the statements develops at trial, one of the purposes of those statements may be to further some aspect of the conspiracy. Id.

The government bears the burden of proving the existence of a conspiracy and defendant's knowledge of it by a preponderance of the evidence. Bowman, 215 F.3d at 960. In determining whether the government has met its burden, both Federal Rule of Evidence 104(a) and Supreme Court precedent confirm that the Court may consider any evidence, including the coconspirator statements themselves, subject only to the rules of privilege. Bourjaily, 483 U.S. at 178-79.

**B.   Summary Charts**

The government seeks to admit two types of summary charts for two different purposes, one under Federal Rule of Evidence 1006 and the other to aid the jury in rendering its verdict as to the counts charged. First, the government seeks to admit summary evidence of voluminous records, and to have a witness testify concerning those summaries pursuant to Rule 1006. In this category, the government

seeks to admit six summary charts, five of which are summary charts of toll records showing calls between defendant and other key individuals in the case, including co-defendant FLYNN, which summarize well over 28,000 pages of toll records. (Gov't Exs. 780, 781, 782, 783, 784.) The other summary chart the government seeks to admit is a timeline of events during the course of the conspiracy, which summarizes evidence from those same toll records, over a hundred email messages (taken together, the email messages span hundreds of pages of documents themselves), financial records, Los Angeles County Board of Supervisor Motions, minutes of Los Angeles County Board of Supervisor meetings, and recordings. (Gov't Ex. 787.) The government will lodge Government Exhibits 780 and 781 due to their size and will file Government Exhibits 782, 783, 784, and 787 with the Court contemporaneous with this trial memorandum.

A "proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. "The purpose of the rule is to allow the use of summaries when the documents are unmanageable or when the summaries would be useful to the judge and jury." United States v. Rizk, 660 F.3d 1125, 1130 (9th Cir. 2011) (internal quotation marks omitted). Rule 1006 only requires the "writings" be "voluminous," not that they be impossible to examine before the Court may permit the use of a chart. "All that is required for the rule to apply is that the underlying 'writings' be 'voluminous' and that in-court examination not be convenient." United States v. Scales, 594 F.2d 558, 562 (6th Cir. 1979).

Because the government's proffered summary charts are based on

1   admissible materials that were made available for inspection to the

2   defense, the charts may be admitted as substantive evidence.  See

3   Rizk, 660 F.3d at 1130.  Although the materials underlying the

4   summary chart must be "admissible," they need not themselves be

5   "admitted" into evidence.  United States v. Meyers, 847 F.2d 1408,

6   1412 (9th Cir. 1988).  Any contention that the chart may contain

7   inaccuracies or omissions goes to the weight of the evidence, not its

8   admissibility.  Id. at 1131 n.2.

9        A summary witness may properly testify about and use a chart to

10   summarize evidence that has already been admitted.  The Court and

11   jury are entitled to have a witness "organize and evaluate evidence

12   which is factually complex and fragmentally revealed."  United States

13   v. Shirley, 884 F.2d 1130, 1133-34 (9th Cir. 1989) (DEA agent's

14   testimony regarding her review of various telephone records, rental

15   receipts, and other previously offered testimony held to be proper

16   summary evidence, as it helped jury organize and evaluate evidence;

17   summary charts properly admitted); see also United States v. Johnson,

18   594 F.2d 1253, 1255 (9th Cir. 1979) (revenue agent could testify

19   about summaries of voluminous tax records).

20        Finally, it does not matter that the evidence highlighted in a

21   timeline presents a narrative supporting the government's theory.

22   United States v. Ho, 984 F.3d 191, 209–10 (2d Cir. 2020) (rejecting

23   defense argument that timeline charts should be precluded because it

24   presented a "narrative supporting the prosecution's theory of the

25   case" and affirming district court's admission of summary charts

26   providing a summary of "hundreds of pages evidence," i.e., certain

27   text messages, emails, and other documents, in a "complex fraud

28   trial"); United States v. Gardner, 611 F.2d 770, 776 (9th Cir. 1980)

1  (in tax case, use of chart summarizing defendant's assets,

2  liabilities, and expenditures "contributed to the clarity of the

3  presentation to the jury, avoided needless consumption of time and

4  was a reasonable method of presenting the evidence").  Because this

5  is a historical, document-intensive case, a summary timeline of

6  events, documents, emails, phone calls, mailings, ballot committee

7  donations, and bank wirings will assist the trier of fact and

8  significantly shorten the agent's testimony in this case.

9       The second type of summary chart the government seeks to admit

10  into evidence is a summary of the applicable mailing and wiring

11  counts in the case.  Because defendant does not want to send the

12  indictment back (even a trial indictment that removes references to

13  co-defendant FLYNN and Count Three), refused to stipulate to these

14  charts months earlier, and objects to the government's proposed jury

15  instructions that contain these charts, the government proposes to

16  send charts back with the jury, so the jury knows what the charged

17  mailings and wirings are.  United States v. Zidar, 178 Fed. App'x

18  673, 678 (9th Cir. 2006) (holding district court did not abuse its

19  discretion in a multi-count conspiracy, mail fraud, wire fraud, and

20  money laundering case by admitting a chart that "alleged facts

21  underlying each count of the indictment" where the jury was

22  instructed the indictment is not evidence).  The government will file

23  these exhibits, Government's Exhibits 785 and 786, contemporaneous

24  with this trial memorandum.

25  ///

26  ///

27  ///

28

1

     **C.   Business Records**

2

    The government intends to offer into evidence in its case-in-

3

chief business records obtained from USC, United Ways, Community

4

Partners, Kaiser Permanente, and financial institutions.

5

    Business records are admissible under Rule 803(6) where the

6

following foundation is laid: (1) the document was made or

7

transmitted by a person with knowledge at or near the time of the

8

incident recorded, (2) the document was kept in the course of a

9

regularly conducted business activity, and (3) making that record was

10

a regular practice of that activity.  United States v. Ray, 930 F.2d

11

1368, 1370 (9th Cir. 1990); Kennedy v. Los Angeles Police Dep't, 901

12

F.2d 702, 717 (9th Cir. 1990), overruled on other grounds by Hunter

13

v. Bryant, 502 U.S. 224 (1991).  In determining if these foundational

14

facts have been established, the court may consider hearsay and other

15

evidence not admissible at trial.  See Fed. R. Evid. 104(a),

16

1101(d)(1); Bourjaily, 483 U.S. at 178-79.

17

    Business records are self-authenticating when accompanied by a

18

written declaration of a "custodian or another qualified person"

19

establishing the same requirements as Rule 806(6) as described in the

20

paragraph above. Fed. R. Evid. 902(11) (citing Fed. R. Evid.

21

806(6)(A)-(C)).  Additionally, "[b]efore the trial or hearing, the

22

proponent must give an adverse party reasonable written notice of the

23

intent to offer the record -- and must make the record and

24

certification available for inspection -- so that the party has a

25

fair opportunity to challenge them."  Id.  Here, it has provided

26

notice to defendant of its intent to rely on USC's Custodian of

27

Records declaration for certain records marked as government

28

exhibits, including emails and quarterly lobbying reports.  The

government expects to receive this custodian declaration prior to trial.

In the absence of a 902(11) certificate, the foundation may also be established either through a custodian of records or "another qualified witness." Fed. R. Evid. 803(6)(D). "'The phrase other qualified witness is broadly interpreted to require only that the witness understand the record-keeping system.'" United States v. Childs, 5 F.3d 1328, 1334 (9th Cir. 1993) (quoting Ray, 930 F.2d at 1370) (internal quotation marks omitted). The government does not need to establish when and by whom the document was prepared. Ray, 930 F.2d at 1370.

Challenges to the accuracy or completeness of the business records ordinarily goes to the weight of the evidence and not its admissibility. See, e.g., La Porte v. United States, 300 F.2d 878, 880-81 (9th Cir. 1962). Because Rule 803(6) represents a firmly rooted hearsay exception, if non-testimonial evidence meets the requirements for admission under the rule, no further showing of reliability is necessary for admission under the Confrontation Clause. See Ohio v. Roberts, 448 U.S. 56, 66 n.8 (1980), overruled on other grounds by Crawford v. Washington, 541 U.S. 36 (2004); Ray, 930 F.2d at 1371; United States v. Norton, 867 F.2d 1354, 1363 (11th Cir. 1989); United States v. Baker, 855 F.2d 1353, 1360 (8th Cir. 1988); see also Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324 (2009) ("[b]usiness and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not

1  testimonial"); United States v. Naranjo, 634 F.3d 1198, 1213-14 (11th
2  Cir. 2011) (holding business records are "not testimonial").

3      Emails are admissible as business records where they meet the
4  requirements of Rule 803(6).  See United States v. Lischewski, 860
5  Fed. App'x 512, 515-16 (9th Cir. 2021) ("The district court did not
6  abuse its discretion in admitting [defendant's] email as a business
7  record under Federal Rule of Evidence 803(6)."); Wright & Miller, 30B
8  Fed. Prac. & Proc. § 6864 (2022 ed.) ("An email can qualify for
9  admission under Rule 803(6), so long as the proponent shows that the
10 email was 'kept in the course of a regularly conducted activity' and
11 was generated as part of a 'regular practice' of that activity.  As
12 email has become such a dominant mechanism for communication in many
13 modern organizations, this showing will often be possible.").
14 Although the Ninth Circuit previously expressed skepticism concerning
15 the admissibility of emails as a business record nearly 30 years ago,
16 Monotype Corp. v. Int'l Typeface Corp., 43 F.3d 443, 450 (9th Cir.
17 1994) (affirming decision concluding emails not admissible as a
18 business record and observing that in 1994, exchanging emails was a
19 "less of a systematic business activity"), email has become a much
20 more "systematic business activity."  As a result of this sea change,
21 district courts in the Ninth Circuit have found that emails are
22 admissible as business records under Rule 803(6) so long as the
23 parties lay a proper foundation.  See, e.g., Ionian Corp. v. Country
24 Mut. Ins. Co., 836 F. Supp. 2d 1173, 1193 (D. Or. 2011) (admitting an
25 email as a business record); Volterra Semiconductor Corp. v.
26 Primarion, Inc., No. 08-CV-5129, 2011 WL 4079223, at *7 (N.D. Cal.
27 Sept. 12, 2011) (admitting emails as business records); see also
28 United States v. Balwani, No. 5:18-CR-00258-EJD-1, 2022 WL 597040, at

1  *25 (N.D. Cal. Feb. 28, 2022) ("To the extent the Government seeks a
2  ruling that, as a general principle, emails can serve as business
3  records, the Court agrees.").

4      D.    **Statements by an Opposing Party Under Rule 801(d)(2)**

5          The government will offer, as the statement of an opposing
6  party, defendant's statements under Rule 801(d)(2).  This goes beyond
7  defendant's own words and includes statements "made by the party in
8  an individual or representative capacity" under Rule 801(d)(2)(A),
9  statements "made by a person whom the party authorized to make a
10 statement on the subject" under Rule 801(d)(2)(C), and statements
11 "made by the party's agent or employee on a matter within the scope
12 of that relationship and while it existed" under Rule 802(d)(2)(D).
13 Under any of these prongs of Rule 801(d)(2), statements by County
14 employees who worked for and represented defendant, including
15 deputies in his Supervisor office and his communications and press
16 team making public statements on his behalf, are admissible.

17         The government may seek to admit statements of County employees
18 made at the direction of defendant and within their scope of
19 employment under Federal Rule of Evidence 801(d)(2)(D).  One such
20 statement is a voicemail left for co-defendant FLYNN by the head
21 County's Department of Mental Health in which he indicates he "had
22 the pleasure of spending some time" with defendant and that he "gave
23 me the heads up" that the Department was "not making progress" on the
24 renegotiated TeleHealth agreement.  (Gov't Ex. 196, 196A
25 (transcript).)  Later, the department head indicated that he would
26 "love to hear" that directly from co-defendant FLYNN with the obvious
27 implication he would rather not be hearing from it from defendant.
28 In a later interview with the FBI, the department head referred to

1    defendant as one of his "bosses."  This statement nor any of the

2    others the government may seek to admit under Rule 801(d)(2)(D) were

3    made to law enforcement and came well before USC discovered the

4    funneled money and reported it to law enforcement.

5         A statement is not hearsay if the statement is offered against a

6    party and is a statement by the party's agent or employee concerning

7    a matter within the scope of the agency or employment, made during

8    the existence of the relationship.  Fed. R. Evid. 801(d)(2)(D);

9    United States v. Riley, 621 F.3d 312, 338 (3d Cir. 2010) (in a

10   bribery and honest services mail fraud prosecution, affirming the

11   district court's admission of the deputy mayor's statement regarding

12   what the mayor (and one of the defendants) wanted done under Rule

13   801(d)(2)(D) in a prosecution of the mayor and holding that "a

14   statement of illegal activity can still be within the scope of

15   employment and can be admissible under 801(d)(2)(D)").  The existence

16   of an agency relationship is a question for the judge under Rule

17   104(a) and must be proved by substantial evidence but not by a

18   preponderance of the evidence.  Hilao v. Estate of Marcos, 103 F.3d

19   767, 775 (9th Cir. 1996) (citing United States v. Flores, 679 F.2d

20   173, 178 (9th Cir. 1982)).  The fact of agency or employment can be

21   proved by the alleged agent's extrajudicial statements, which is why

22   the Court may consider an out of court statement in making its Rule

23   104(a) determination of the admissibility of a statement under Rule

24   801(d)(2)(D).  Hilao, 103 F.3d at 775.  Where, as here, none of the

25   agent or employee statements sought to be introduced at trial were

26   testimonial, i.e., statements that "an objective witness would [not]

27   reasonably expect [the texts] to be used prosecutorially"; therefore,

28   there is Confrontation Clause issue.  See United States v. Wilson,

788 F.3d 1298, 1316 (11th Cir. 2015) (affirming admission of attorney agent statements under Rule 801(d)(2)(D), analyzing to see if statements were in testimonial in nature, and concluding they were not) (internal quotation marks omitted).

### E. Public Records Exception

The government seeks to admit the Los Angeles County Board of Supervisors' Statement of Proceedings (the minutes of the Board of Supervisors' meeting), motions, excerpts of transcripts, and agendas.

Federal Rule of Evidence 803(8) provides an exception to hearsay for a "record or statement of a public office" if it sets outs "(i) the office's activities" or "(ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel" and where "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness."

Documents that fall under the Public Records Exception are presumed trustworthy, and therefore the burden of establishing untrustworthiness shifts to the opponent of the evidence. United States v. Dominguez, 125 F.3d 1315, 1318 (9th Cir. 1997). The Public Records Exception functions "to admit the sundry sorts of public documents for which no serious controversy ordinarily arises about their truth," such that "it would be a great waste of time it would be a great waste of time to have the person who created them come to court and testify, such as birth certificates, death certificates, judgments, licenses, and the like." United States v. Orellana-Blanco, 294 F.3d 1143, 1150 (9th Cir. 2002). Such documents are admissible under the Public Records Exception, which is a "firmly rooted hearsay exception." (Id.) The Public Records Exception is

32

"within a hearsay category whose conditions have proved over time to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of an oath and cross-examination at a trial."  (Id. (internal quotation marks omitted).)

The Public Records Exception, however, does not resolve double hearsay.  See United States v. Mackey, 117 F.3d 24, 28-29 (1st Cir. 1997) ("decisions in this and other circuits squarely hold that hearsay statements by third persons such as [that of the witness] are not admissible under this exception merely because they appear within public records.  This is the same 'hearsay within hearsay' problem that is familiar in many contexts." (citation omitted)); see also In re Sept. 11 Litig., 621 F. Supp. 2d 131, 157 (S.D.N.Y. 2009) ("A statement recorded in a public record made by an individual with no business duty to report is considered hearsay-within-hearsay and is excluded, unless it satisfies some other hearsay exception.  Since no other exception is offered, the statements are excluded.")

**F.   Statements Offered to Prove State of Mind**

The government may seek to admit a number of co-defendant FLYNN's statements under Federal Rule of Evidence 803(3), which permits admission of statements of a declarant's then "state of mind," including her "motive, intent, or plan," as well as her then-existing "emotional" condition and "mental feeling."  Fed. R. Evid. 803(3).[8]  A statement of a declarant's mental state and emotional condition at the time of an event or conversation falls within the Rule 803(3) exception.  See, e.g., Wagner v. Cnty. of Maricopa, 747

---

[8] Defendant addressed the government's state of mind argument in his reply in support of his motion in limine to exclude three of co-defendant FLYNN's statements.  (Dkt. 150.)

F.3d 1048, 1053 (9th Cir. 2013) ("The statements were offered to show his state of mind at the time of the conversation, thus satisfying any contemporaneity requirement."). The key factors in deciding whether to admit a statement under Rule 803(3) is "contemporaneousness, chance for reflection, and relevance." United States v. Emmert, 829 F.2d 805, 810 (9th Cir. 1987) (internal quotation marks omitted); United States v. Kelly, 722 F.2d 873, 878 (1st Cir. 1983) (affirming admission of statements that individuals were fearful in an extortion prosecution because 18 U.S.C. § 1951 required proof of the victim's state of mind as an essential element). The Ninth Circuit has held that statements evidencing the declarant's state of mind and intent could be admitted to prove a non-declarant's future conduct and intent, too. United States v. Pheaster, 544 F.2d 353, 376-80 (9th Cir. 1976); Lynn McLain, "I'm Going to Dinner with Frank": Admissibility of Nontestimonial Statements of Intent to Prove the Actions of Someone Other Than the Speaker -- and the Role of the Due Process Clause, 32 Cardozo L. Rev. 373, 398-404 (2010).

### G.   Statements Not Offered for Their Truth

Federal Rule of Evidence 801(c) defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Testimony that is not offered for the truth of the matter asserted, but for another purpose, is not hearsay. See e.g., United States v. Gibson, 690 F.2d 697, 700 (9th Cir. 1982) (statements admissible because offered to establish fact they were made and not for truth of matter asserted); United States v. Arteaga, 117 F.3d 388, 396 n.13 (9th Cir. 1997)

34

(statements offered for "effect on hearer" are offered for a non-truth-related purpose and are admissible nonhearsay statements); United States v. Echeverry, 759 F.2d 1451, 1456-57 (9th Cir. 1985) (statements offered not for truth of matter asserted but as necessary background information admissible as non-hearsay).  Included in this category of out-of-court statements are ones relevant to showing why witnesses took subsequent actions.  United States v. Cawley, 630 F.2d 1345, 1349-50 (9th Cir. 1980) (testimony as to confidential tip admissible as non-hearsay to explain why the officer took the investigative steps he did);  United States v. Fernandez, 392 F. App'x 743, 746 (11th Cir. 2010) ("certain out-of-court statements can be admitted as non-hearsay evidence if they are offered, not for the truth of the assertions therein, but to explain a witness's state of mind and subsequent actions").

Where statements of a coconspirator are offered not for the truth of the matter asserted but for some other purpose, such as consciousness of guilt of one's participation in the conspiracy, the statements are properly admitted against all defendants because they help establish the conspiracy's existence.  United States v. Hackett, 638 F.2d 1179, 1187 (9th Cir. 1980).  In such cases, it is error to limit admission of the non-hearsay statement for use against the speaker alone.  Id.  And because the statements are not offered for their truth, no analysis is necessary to determine whether the speaker made the statements during and in furtherance of the conspiracy.  Id.

## H.   Present Sense Impression and Excited Utterances

The government may seek to admit certain statements made by various USC employees in their email correspondence, including co-

defendant FLYNN, as present sense impressions and/or excited utterances.

Declarations of present sense impressions -- which "describ[e] or explain[] an event or condition, made while or immediately after the declarant perceive[s] it" -- are substantively admissible despite the general prohibition on hearsay statements. Fed. R. Evid. 803(1). Unlike present sense impressions, excited utterances typically require more temporal proximity to the event. Such statements must relate "to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). To fall under this exception, the following must be true: (1) there must have been some event "startling enough" to generate a "nervous excitement" that would render statements "spontaneous and unreflecting"; (2) the utterance must be made "before there had been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance"; and (3) the utterance must "relate to the circumstances of the occurrence preceding it." United States v. Alarcon-Simi, 300 F.3d 1172, 1175 (9th Cir. 2002) (internal quotation marks omitted).

District courts have admitted emails as present sense impressions. United States v. Ferber, 966 F. Supp. 90, 99 (D. Mass. 1997) (finding email to supervisor recounting conversation in which defendant inculpated himself admissible as a present sense impression under Rule 803(1)); Canatxx Gas Storage Ltd. v. Silverhawk Cap. Partners, LLC, No. CIV.A. H-06-1330, 2008 WL 1999234, at *14 (S.D. Tex. May 8, 2008) (finding email qualified for admission as present sense impression). If the foundational requirements are met, emails should be admissible as excited utterances, too. See Lorraine v.

36

1  <u>Markel Am. Ins. Co.</u>, 241 F.R.D. 534, 569-70 (D. Md. 2007)

2  (recognizing emails can qualify as both excited utterances and

3  present sense impressions).

4  **I.   Recordings**

5      The government intends to offer three recordings of defendant

6  leaving voicemails for the president of United Ways and a recording

7  of a voicemail from a County employee left for co-defendant FLYNN.

8  The foundation that must be laid for the introduction into evidence

9  of recorded conversations is a matter largely within the discretion

10  of the trial court.  There is no rigid set of foundational

11  requirements.  Rather, the Ninth Circuit has held that recordings are

12  sufficiently authenticated under Federal Rule of Evidence 901(a) if

13  sufficient proof has been introduced "so that a reasonable juror

14  could find in favor of authenticity or identification," which can be

15  done by "proving a connection between the evidence and the party

16  against whom the evidence is admitted" and can be done by both direct

17  and circumstantial evidence.  <u>United States v. Matta-Ballesteros</u>, 71

18  F.3d 754, 768 (9th Cir. 1995), <u>modified by</u> 98 F.3d 1100 (9th Cir.

19  1996).

20      Witnesses may testify competently as to the identification of a

21  voice on a recording.  A witness's opinion testimony in this regard

22  may be based upon his having heard the voice on another occasion

23  under circumstances connecting it with the alleged speaker.  Fed. R.

24  Evid. 901(b)(5); <u>United States v. Torres</u>, 908 F.2d 1417, 1425 (9th

25  Cir. 1990) ("Testimony of voice recognition constitutes sufficient

26  authentication.").  "Rule 901(b)(5) establishes a low threshold for

27  voice identifications offered to determine the admissibility of

28  recorded conversations," and that "[s]o long as the identifying

1  witness is 'minimally familiar' with the voice he identifies, Rule

2  901(b) is satisfied." <u>See</u> <u>United States v. Plunk</u>, 153 F.3d 1011, 1023

3  (9th Cir. 1998), <u>overruled on other grounds</u> by <u>United States v.</u>

4  <u>Hankey</u>, 203 F.3d 1160, 1169 n.7 (9th Cir. 2000).

5      **J.   Transcripts**

6      The government has prepared transcripts for four recording it

7  intends to use at trial.  Because all these recorded conversations

8  are in English, the recording itself is the evidence, and a

9  transcript of the recording may be provided as an aid in following

10  the conversation.  <u>United States v. Chen</u>, 754 F.2d 817, 824 (9th Cir.

11  1985); <u>United States v. Phillips</u>, 577 F.2d 495, 501-02 (9th Cir.

12  1978).  Because the transcripts themselves are merely aids, the

13  government will not offer the transcripts as evidence nor ask that

14  they be provided to the jury during deliberations.

15      **K.   Character Witnesses**

16      The government does <u>not</u> intend to offer character evidence, and

17  defendant indicated he does not intend to do so either.

18  Nevertheless, in the event the issue were to arise at trial, the

19  government herein addresses it.

20      The Supreme Court has recognized that character evidence --

21  particularly cumulative character evidence -- has weak probative

22  value and great potential to confuse the issues and prejudice the

23  jury.  <u>See</u> <u>Michelson v. United States</u>, 335 U.S. 469, 480, 486 (1948).

24  The Court has thus given trial courts wide discretion to limit the

25  presentation of character evidence.  <u>Id.</u> at 480-81.

26      In addition, the form of the proffered evidence must be proper.

27  Federal Rule of Evidence 405(a) sets forth the sole methods for which

28  character evidence may be introduced.  It specifically states that

where evidence of a character trait is admissible, proof may be made in two ways: (1) by testimony as to reputation and (2) by testimony as to opinion.  Thus, defendant may not introduce specific instances of his good conduct through the testimony of others.  See Michelson, 335 U.S. at 477 ("The witness may not testify about defendant's specific acts or courses of conduct or his possession of a particular disposition or of benign mental and moral traits."); see also United States v. Camejo, 929 F.2d 610, 613 (9th Cir. 1991) (evidence of specific instances is not admissible to prove the defendant's good character); United States v. Hedgcorth, 873 F.2d 1307, 1313 (9th Cir. 1989) (defendant's testimony regarding his role as government intelligence operative, offered to show that he was "patriotic," "pro-government" individual, properly excluded).

As the government argued in its second motion in limine, (Dkt. 131, 148),[9] a defendant cannot circumvent the prohibition of his offering so-called "good acts" evidence under any other theory of admissibility, including with respect to proof of his intent in this case.  While Rule 404(b) allows for limited uses of "other crimes, wrongs, or acts" in a criminal case, courts have consistently denied defendants' attempts to offer evidence of their own good deeds or noncorrupt acts in public corruption and white-collar cases.  See, e.g., United States v. Dawkins, 999 F.3d 767, 792-93 (2d Cir. 2021) (affirming exclusion of "good act" evidence in public corruption case where defendant could not establish innocence "through proof of the absence of criminal acts on specific occasions"); United States v.

_____

[9] Defendant's responses to the government's motion in limine can be found at Docket Numbers 142 and 151. Portions of these filings were filed in camera with the Court.

*Dimora*, 750 F.3d 619, 630 (6th Cir. 2014) (affirming exclusion of public official's "good acts" of helping constituents without anything in return, as "prior 'good acts' generally may not be used to show a predisposition not to commit crimes").  In addition, no trait of character is an "essential element of a charge, claim, or defense" in this case and thus specific instances of conduct are not admissible under this narrow exception. Fed. R. Evid. 405(b); *see also id.* Adv. Comm. Notes ("[T]he rule confines the use of evidence of [specific instances of conduct] to cases in which character is, in the strict sense, in issue and hence deserving of a searching inquiry.").

On cross-examination of a defense character witness, however, the government may inquire into specific instances of a defendant's past conduct relevant to the character trait at issue. *See* Fed. R. Evid. 405(a).  In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes, wrongful acts, and arrests to prevent this advantage given to the defendant from "becoming an unfair and unreasonable one." *See Michelson*, 335 U.S. at 479, 481; *see also* United States v. Bush, 58 F.3d 482, 489 (9th Cir. 1995) ("A witness who has endorsed the character of the defendant may be cross-examined about whether he's heard about prior bad acts of the defendant.").  The only prerequisite is that there must be a good faith basis that the incidents inquired about are relevant to the character trait at issue.  *See* United States v. Salazar-Gaeta, 447 F.2d 468, 469 (9th Cir. 1971). "The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has

40

1  kept closed for his benefit and to make himself vulnerable where the
2  law otherwise shields him." Michelson, 335 U.S. at 479.

3      Here, in light of the conspiracy and bribery-related charges, it
4  would be proper for character witnesses to testify about defendant's
5  alleged character traits for law-abidingness and truthfulness.  See
6  Fed. R. Evid. 404(a)(2)(A); United States v. Diaz, 961 F.2d 1417,
7  1419 (9th Cir. 1992); In re Sealed Case, 352 F.3d 409, 412 (D.C. Cir.
8  2003).  If the defense opens the door in this way, the government may
9  inquire regarding specific instances of prior bad acts by defendant.
10 To the extent the defense offers any such character evidence, it
11 should do so during the defense's case and not on cross-examination
12 during the government's case-in-chief.  The scope of a cross-
13 examination is within the discretion of the trial court.  Fed. R.
14 Evid. 611(b).  Cross-examination should be limited to the subject
15 matter of the direct examination and matters affecting the
16 credibility of the witness.  Id.  While the Court has discretion to
17 permit inquiry into additional matters on cross-examination, id., the
18 Court should bar the defense from seeking to elicit self-serving
19 character testimony from those who have worked for him or with whom
20 he has worked with closely.

21     Further, the Court maintains the "right to impose some
22 limitation on the number of witnesses testifying about a particular
23 fact," including defendant's character, as such "must be left to the
24 sound discretion of the judge."  United States v. Henry, 560 F.2d
25 963, 965 (9th Cir. 1977) (no abuse of discretion limiting defendant
26 to two character witnesses instead of four); see also United States
27 v. Moss, 34 F.4th 1176, 1188 (11th Cir. 2022) (court properly limited
28 defense to six character witnesses instead of 16, explaining "[i]t is

1  well-established that district courts have considerable discretion to
2  limit the number of character witnesses and that we should overturn
3  these determinations rarely and only on a clear showing of
4  prejudicial abuse of discretion.") (quotation marks omitted).

5  **L.   Impeaching Witnesses**

6       Federal Rule of Evidence 608(a) permits attacks on a witness's
7  credibility through testimony about the witness's general character
8  or reputation for truthfulness or untruthfulness.  Fed. R. Evid.
9  608(a).  However, extrinsic evidence (including testimony from third-
10 party witnesses) about the witness's specific instances of conduct
11 for the purpose of attacking the witness's character for truthfulness
12 or untruthfulness is prohibited, except in the case of prior
13 convictions.  Fed. R. Evid. 608(b).  Counsel may only probe specific
14 instances of conduct probative of a witness's character for
15 truthfulness or untruthfulness during cross-examination (without
16 proffering extrinsic evidence) with respect to (1) the testifying
17 witness or (2) other witnesses about whose character the witness has
18 testified about.  Id.  Thus, counsel may not offer testimony or any
19 other extrinsic evidence about specific instances of conduct for the
20 purpose of attacking a testifying witness's credibility.

21 **M.   Defendant Cannot Admit His Own Statements**

22      As discussed above, the government intends to introduce certain
23 statements made by the defendant himself and by others associated
24 with him under Rule 801(d)(2), i.e., his coconspirators,
25 representatives, agents, and employees.  Under Rule 801(d)(2), a
26 defendant's prior statement is admissible if offered against him (or
27 his agent or employee, under Rule 801(d)(2)(D), or his co-
28 conspirators, under Rule 801(d)(2)(E)).  See United States v. Ortega,

1  203 F.3d 675, 682 (9th Cir. 2000) (stating that "self-inculpatory

2  statements, when offered by the government, are admissions by a

3  party-opponent and are therefore not hearsay," but that "non-self-

4  inculpatory statements are inadmissible hearsay").  A statement of a

5  party opponent is not hearsay if the statement is offered against a

6  party and is his own statement in either his individual or

7  representative capacity and relates to the offense in question.

8  Territory of Guam v. Ojeda, 758 F.2d 403, 408 (9th Cir. 1985).  A

9  statement need not be incriminating to be an admission. Id.

10     A defendant, however, may not offer his own statements or the

11  statements of his agents, employees, or co-conspirators.  Ortega, 203

12  F.3d at 682 (citing Williamson v. United States, 512 U.S. 594, 599

13  (1994)); see also United States v. Fernandez, 839 F.2d 639, 640 (9th

14  Cir. 1988) (district court properly sustained government's hearsay

15  objection to defendant's attempt to solicit defendant's post-arrest

16  statements during cross-examination of FBI agent).

17     The Ninth Circuit held in Ortega that the defendant's non-self-

18  inculpatory statements were inadmissible "even if they were made

19  contemporaneously with other self-inculpatory statements."  Ortega,

20  203 F.3d at 682.  The Ninth Circuit held that "[i]f the district

21  court [had] ruled in his favor, [the defendant] would have been able

22  to place his exculpatory statements before the jury without

23  subjecting [himself] to cross-examination, precisely what the hearsay

24  rule forbids.  Thus, the district court did not abuse its discretion

25  when it limited [the defendant's] ability to elicit his exculpatory

26  hearsay statements on cross-examination."  Id. (internal punctuation

27  and citation omitted).

28

43

1      Further, it is entirely proper to admit segments of a recording

2  or an email, and defendants are not entitled to offer additional

3  statements just because they were recorded, and the proponent has not

4  offered them.  United States v. Collicott, 92 F.3d 973, 983 (9th Cir.

5  1996); United States v. Altvater, 954 F.3d 45, 49 (1st Cir. 2020)

6  ("But, Rule 106 is not a pathway to the admission of otherwise

7  inadmissible portions of a writing or recorded statement merely

8  because some distinct portions of that writing or statement are

9  admissible.").  The "rule of completeness" set forth in Federal Rule

10 of Evidence 106 is applicable where one party seeks to introduce a

11 misleadingly tailored snippet of a statement that creates a

12 misleading impression by being taken out of context.  Rule 106 does

13 not render admissible evidence that is otherwise inadmissible under

14 the hearsay rules.[10]  Altvater, 954 F.3d at 50.  Accordingly, "non-

15 self-inculpatory statements are inadmissible even if they were made

16 contemporaneously with other self-inculpatory statements."  Ortega,

17 203 F.3d at 682 ("[S]elf-inculpatory statements, when offered by the

18 government, are admissions by a party-opponent and are therefore not

19 hearsay, see Fed. R. Evid. 801(d)(2), but the non-self-inculpatory

20 statements are inadmissible hearsay.").

21     **N.  Photographs**

22     Photographs are generally admissible as evidence.  See United

23 States v. Stearns, 550 F.2d 1167, 1170-71 (9th Cir. 1977)

24 (photographs of crime scene admissible).  Photographs should be

25 admitted so long as they fairly and accurately represent the event or

26

27      [10] This general rule applies not only to a defendant seeking to
   admit his own statements but to inadmissible hearsay statements of
28 other individuals that defendant seeks to admit under the Rule of
   Completeness.

object in question.  See United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978).  The Ninth Circuit has held that "[p]hotographs are admissible as substantive as well as illustrative evidence."  United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980).

### O.  Duplicates

"A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."  Fed. R. Evid. 1003; see also United States v. Smith, 893 F.2d 1573, 1579 (9th Cir. 1990).

### P.  Cross-Examination

The scope of cross-examination "should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility."  Fed. R. Evid. 611(b).  Pursuant to Federal Rule of Evidence 611(a), the district court has broad authority to control the extent of cross-examination and "in its discretion may limit cross-examination in order to preclude repetitive questioning, upon determining that a particular subject has been exhausted, or to avoid extensive and time-wasting exploration of collateral matters."  United States v. Weiner, 578 F.2d 757, 766 (9th Cir. 1978).

### Q.  Cross-Examination of Defendant

A defendant who testifies at trial may be cross-examined as to all matters reasonably related to the issues the defendant puts in dispute.  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).  "A defendant has no right to avoid cross-examination on matters which call into question his claim of innocence."  Id. at 1354.  Moreover, a defendant who testifies at trial waives his Fifth Amendment privilege and may be cross-examined

45

on matters made relevant by his direct testimony.  United States v.
Black, 767 F.2d 1334, 1341 (9th Cir. 1985).

The scope of a "defendant's waiver is coextensive with the scope
of relevant cross-examination."  United States v. Cuozzo, 962 F.2d
945, 948 (9th Cir. 1992); Black, 767 F.2d at 1341.  The extent of the
waiver is determined by whether the question reasonably relates to
subjects covered by defendant's direct testimony.  United States v.
Hearst, 563 F.2d 1331, 1340 (9th Cir. 1977).  For this reason, if
defendant testifies and denies that he had the requisite intent to
commit bribery, the government should be permitted to ask defendant
about other corrupt acts he engaged in throughout his career.  In
doing so, the government should be permitted to show him documents
relating to these other corrupt acts.

Federal Rule of Evidence 608(b) provides that:

> [E]xtrinsic evidence is not admissible to prove specific
> instances of a witness's conduct in order to attack or
> support the witness's character for truthfulness.  But the
> court may, on cross-examination, allow them to be inquired
> into if they are probative of the character for
> truthfulness or untruthfulness of (1) the witness; or (2)
> another witness whose character the witness being cross-
> examined has testified about.

If he chooses to testify, defendant's credibility and state of mind
will be central.  As the Ninth Circuit has held, Federal Rule of
Evidence 608(b) "specifically contemplates inquiries into prior
behavior in order to challenge a witness's credibility[,]" which is
why "[e]vidence of prior frauds is considered probative of the
witness's character for truthfulness or untruthfulness."  United
States v. Gay, 967 F.2d 322, 328 (9th Cir. 1992).

### R. Discretion as to Order of Proof

The order of proof is a matter committed to the discretion of the district court, which may conditionally introduce evidence or otherwise permit deviations from the natural order of a case.  E.g. United States v. Zemek, 634 F.2d 1159, 1169 (9th Cir. 1980); see also United States v. Perez, 658 F.2d 654, 658-59 (court may admit co-conspirator statement subject to motion to strike if foundation for admissibility not laid, so long as the motion to strike would cure any defect); United States v. Turner, 528 F.2d 143, 162 (9th Cir. 1975) ("The trial judge has wide discretion in supervising the order of proof in a conspiracy case."); United States v. Avendano, 455 F.2d 975, 975 (9th Cir. 1972) (calling witnesses out-of-order).

### S. Lack of Rule 12 Notice

The government has not received notice from defendant of the intent to rely on any affirmative defense pursuant to Rule 12.3 of the Federal Rules of Criminal Procedure.  Similarly, the government has received no notice of defendant's intent to rely on a defense of duress or entrapment.  As such, the government does not expect that any such defense will be raised, in any form, during the trial.

### T. Reciprocal Discovery

Defendant has produced to date approximately 4,700 pages of discovery as well as several videos.  Defendant has represented that at the moment he does not have additional reciprocal discovery.

## V. CONCLUSION

The government hereby respectfully requests leave to file supplemental trial memorandum before or during trial, as it may become appropriate.