DARALYN J. DURIE (SBN 169825)
ddurie@mofo.com
ARTURO J. GONZALEZ (SBN 121490)
agonzalez@mofo.com
GALIA Z. AMRAM (SBN 250551)
gamram@mofo.com
RAMSEY W. FISHER (SBN 334228)
rfisher@mofo.com
JESSICA E. LANIER (SBN 303395)
jlanier@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415-268-7000
Facsimile: 415-268-7522

CHRISTINA M. RANDALL (SBN 320125)
crandall@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213-892-5200
Facsimile: 213-892-5454

Attorneys for Defendant
MARK RIDLEY-THOMAS

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:21-cr-00485-DSF |
| Plaintiff, | **DEFENDANT'S AUTHORITY IN SUPPORT OF RIGHT TO CONDUCT JURY RESEARCH** |
| v. | |
| MARK RIDLEY-THOMAS, et al., | Ctrm:      7D |
| Defendants. | Judge:     Hon. Dale S. Fischer |

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................. 1

II. EXTENSIVE AUTHORITY SUPPORTS DEFENDANT'S RIGHT TO
    CONDUCT JUROR RESEARCH ................................................................. 1

    A.  There is an Established Judicial Acceptance of Jury Research ............. 1

    B.  Ethics Rules and Opinions Explain That Lawyers Can and Should
          Conduct Jury Research........................................................................... 3

    C.  Mr. Ridley-Thomas Proposes Appropriate Conditions for Jury
          Research That Mitigate Any Potential Concerns................................... 5

III. CONCLUSION ............................................................................................. 5

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

5   *Burden v. CSX Transp., Inc.*,
        No. 08-cv-04-DRH, 2011 U.S. Dist. LEXIS 94809 (S.D. Ill. Aug. 24, 2011) ..... 2

6
7   *Carino v. Muenzen*,
        No. A-5491-08T1, 2010 N.J. Super. Unpub. LEXIS 2154 (N.J. Super. App. Div.
8       Aug. 30, 2010) ................................................................................................. 2

9   *Johnson v. McCullough*,
        306 S.W.3d 551 (Mo. 2010) (en banc) ........................................................... 2
10

11  *Oracle Am., Inc. v. Google Inc.*,
        172 F. Supp. 3d 1100 (N.D. Cal. 2016) .......................................................... 4
12

13  *United States v. Raniere*,
        No. 18-CR-204-NGG-VMS, 2019 U.S. Dist. LEXIS 110735 (E.D.N.Y. Jul. 2,
14      2019) ............................................................................................................... 2

15  *United States v. Saipov*,
        No. S1 17-CR-722 (VSB), 2020 U.S. Dist. LEXIS 34672 (S.D.N.Y. Feb. 13,
16      2020) ............................................................................................................... 2
17

18  *United States v. Stone*,
        No. 19-0018-ABJ, 2020 U.S. Dist. LEXIS 67359 (D.D.C. Apr. 16, 2020) ...... 1, 2
19

20  **OTHER AUTHORITIES**

21  ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 14-466 (2014) ....... 3, 5

22  Cal. Rule of Professional Conduct 3.5 ............................................................. 1, 3, 5

23  Co. Bar Ass'n, Formal Ethics Op. 127 (2015) ...................................................... 4, 5

24  District of Columbia Bar, Ethics Op. 371 (2016) .................................................. 4, 5

25  N.Y. State Bar Ass'n, *Social Media Ethics Guidelines,* No. 6.B. (2019) .................. 4
26
27  New Hampshire Bar Ass'n, Formal Op. 2012-13/05 (2013) .................................... 4

28  Or. State Bar, Formal Op. 2013-189 ....................................................................... 4

DEFENDANT'S AUTHORITY IN SUPPORT
OF RIGHT TO CONDUCT JURY RESEARCH                     ii

1

Pa. Bar Ass'n, Formal Op. 2014-300 ...................................................................... 3, 5

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     INTRODUCTION

On February 27, 2023, the Court asked the parties to submit authority indicating that they had the right to conduct background research on potential jurors before voir dire.  The law affords Mr. Ridley-Thomas that right.  Prohibiting Mr. Ridley-Thomas from conducting jury research could impair his rights (1) under the Sixth Amendment to a trial by an impartial jury, by depriving him the ability to preemptively uncover bias, ensure nothing about the jurors' backgrounds calls into question their ability to be impartial, or to bring matters of potential bias to the Court's attention at the earliest opportunity, and (2) to effective representation.

Consistent with California Rule of Professional Conduct 3.5(h), The Court should allow Mr. Ridley Thomas to research public information on prospective jurors using a private web browser.

## II.    EXTENSIVE AUTHORITY SUPPORTS DEFENDANT'S RIGHT TO CONDUCT JUROR RESEARCH

### A.     There is an Established Judicial Acceptance of Jury Research

The practice of researching jurors has widespread acceptance, and several courts have even imposed an affirmative duty on lawyers to conduct such research. In *United States v. Stone*, for example, the court rejected a bid for a new trial, holding that information that was publicly available on a jury foreperson's social media could not constitute "newly discovered evidence" where the defense "was free to avail itself of these publicly available sources" but failed to review the foreperson's social media in connection with voir dire.  *United States v. Stone*, No. 19-0018-ABJ, 2020 U.S. Dist. LEXIS 67359, at *95 (D.D.C. Apr. 16, 2020). In other words, the court concluded that defendant and/or his counsel should have done their research at the time and could not be heard to raise on appeal an objection to a juror that they should have uncovered.  Observing that "the practice has become fairly commonplace, with *courts, practitioners, and state bar associations all approving and encouraging its use*," the court explained that such

research is a "rudimentary," "inexpensive[,] and popular arrow in the trial practitioner's quiver" that defendant should have taken advantage of. *Id*. at *93, n.54 (emphasis added). *See also Burden v. CSX Transp., Inc.*, No. 08-cv-04-DRH, 2011 U.S. Dist. LEXIS 94809, at *25 (S.D. Ill. Aug. 24, 2011) ("defendant waived its current allegations of juror dishonesty by not raising them during voir dire or the trial" where the apparent bias could have been found "in public documents, primarily by internet searches.").

Depriving a criminal defendant of his/her right to conduct jury research likely constitutes reversible error. In *Carino*, the appellate court considered a plaintiff's request for a new trial after the plaintiff had been prevented by the trial judge from conducting online research on the venire panel. *Carino v. Muenzen*, No. A-5491-08T1, 2010 N.J. Super. Unpub. LEXIS 2154, at *26-27 (N.J. Super. App. Div. Aug. 30, 2010). Although the appellate court affirmed the defense verdict on other grounds, the court recognized the right to use the Internet to investigate potential jurors during voir dire and concluded that the trial judge "acted unreasonably in preventing use of the internet" to research potential jurors in the name of "fairness" or maintaining "a level playing field." *Id*. at *27.

Indeed, many courts not only approve of such research but actively facilitate the ability to perform it by disclosing the jurors' identities "to the parties *before* voir dire, allowing the parties to do ample research to ensure nothing about the jurors' backgrounds called into question their ability to be impartial." *United States v. Raniere*, No. 18-CR-204-NGG-VMS, 2019 U.S. Dist. LEXIS 110735, at *6 (E.D.N.Y. Jul. 2, 2019) (emphasis added); *see also United States v. Saipov*, No. S1 17-CR-722 (VSB), 2020 U.S. Dist. LEXIS 34672, at *7 (S.D.N.Y. Feb. 13, 2020) ("permit[ting] the parties to conduct research in advance of and as part of the voir dire process"); *Johnson v. McCullough*, 306 S.W.3d 551, 559 (Mo. 2010) (en banc) ("a party *must* use reasonable efforts to examine the litigation history on Case.net of those jurors selected but not empanelled and present to the trial court any relevant

information prior to trial") (emphasis added).  Mr. Ridley-Thomas requests only that the Court permit him to conduct such research as soon as he is able to learn the names of the individuals in the venire, no later than at the beginning of the day on which jury selection is to occur.[1]

### B. Ethics Rules and Opinions Explain That Lawyers Can and Should Conduct Jury Research

This Court has adopted the California Rules of Professional Conduct to govern conduct before it.  *See* L.R. 83-3.1.2.; L.Cr.R. 57-1.  California Rule 3.5(h) provides that a lawyer may not "conduct an out of court investigation of a person* who is either a member of a venire or a juror ***in a manner likely to influence the state of mind of such person* in connection with present or future jury service***." (emphasis added). The rule does not forbid investigation otherwise and, by implication, permits it.

The ethics opinions promulgated by various ethics bodies and the American Bar Association (ABA) support Mr. Ridley-Thomas's right to conduct juror research.  Recognizing "a strong public interest in identifying jurors who might be tainted by improper bias or prejudice," the ABA has explained that "[u]nless limited by law or court order, a lawyer *may review a juror's or potential juror's Internet presence*, which may include postings by the juror or potential juror *in advance of and during a trial . . .*"  ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 14-466 (2014) (emphasis added).  Other state bar ethics opinions have also concluded that lawyers may access information about the jury open to all members of the public before trial.  Pa. Bar Ass'n, Formal Op. 2014-300 (2014) ("During jury selection and trial, an attorney may access the public portion of a

---

[1]Ideally, the parties would receive the names of potential jurors the day before jury selection so that they have an adequate opportunity to view public records pertaining to the potential jurors.

juror's social networking website."); Co. Bar Ass'n, Formal Ethics Op. 127 (2015) (same); Or. State Bar, Formal Op. 2013-189 (2013) (explaining that lawyers may "review a person's publicly available information on a social networking website" and may even "request access to a person's *nonpublic information*") (emphasis added).

Not allowing a criminal defendant to review public records of potential jurors may impair his right to effective representation. Several bar associations have recognized that "[c]ompetent and zealous representation…*may require* investigation of relevant information from social media sites of jurors or potential jurors to discover bias or other relevant information for jury selection." District of Columbia Bar, Ethics Op. 371 (2016); *see also* N.Y. State Bar Ass'n, *Social Media Ethics Guidelines,* No. 6.B. (2019) (noting that "standards of competence and diligence may require doing everything reasonably possible to learn about the jurors who will sit in judgment on a case" and explaining that "[a] lawyer may view the social media profile of a prospective juror or sitting juror provided that there is no communication (whether initiated by the lawyer or her agent or automatically generated by the social media network) with the juror"); New Hampshire Bar Ass'n, Formal Op. 2012-13/05 (2013) (noting that "counsel has a general duty to be aware of social media as a source of potentially useful information" and explaining that "[i]n the case of criminal defense counsel, these obligations, including the obligation to investigate, may have a constitutional as well as an ethical dimension"). And while "California has not promulgated a rule regarding the ethical scope of Internet research on jurors or prospective jurors, nor has the California State Bar issued an opinion on that subject[,] . . . [t]he California State Bar website provides a link to the ABA opinion discussed above as well as links to opinions from the Association of the Bar of the City of New York and the Oregon State Bar." *Oracle Am., Inc. v. Google Inc.*, 172 F. Supp. 3d 1100, 1107 (N.D. Cal. 2016). The same reasoning set forth by the ABA and other bar associations should

apply here and further support Mr. Ridley-Thomas's right to conduct jury research. Such research is especially important when a person's liberty is at stake.

### C. Mr. Ridley-Thomas Proposes Appropriate Conditions for Jury Research That Mitigate Any Potential Concerns

Mr. Ridley-Thomas recognizes that the Court may be concerned that permitting jury research could intrude on juror privacy or result in improper communications with potential jurors.  But such concerns are easily mitigated. Even though several jurisdictions[2] have adopted the ABA's position that "[t]he fact that a juror or a potential juror may become aware that a lawyer is reviewing his Internet presence when a network setting notifies the juror of such does not constitute a communication from the lawyer in violation of Rule 3.5(b)," Mr. Ridley-Thomas's counsel would agree to seek only public information on prospective jurors and would do so discreetly using a private browser.[3]  An outright ban on jury research, however, would deprive Mr. Ridley-Thomas the ability to preemptively "identify[] jurors who might be tainted by improper bias or prejudice," ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 14-466 (2014), which could threaten his fundamental right under the Sixth Amendment to a trial by an impartial jury, and to competent representation.

## III.   CONCLUSION

Mr. Ridley Thomas's ability to research the public presence of prospective jurors is vital to maintaining his right to seating an honest, unbiased jury, to

---

[2] *See* District of Columbia Bar, Ethics Op. 371 (2016) ("[S]ome social media networks automatically provide information to registered users or members about persons who access their information.  In the Committee's view, such notification does not constitute a communication between the lawyer and the juror or prospective juror."); Pa. Bar Ass'n, Formal Op. 2014-300 (2014) ("There is no *ex parte* communication if the social networking website independently notifies users when the page has been viewed."); Co. Bar Ass'n, Formal Ethics Op. 127 (2015) (same).

[3] Mr. Ridley-Thomas's counsel also recognizes, and will of course honor, California Rules 3.5(d) and (e) regarding communication with jurors.

1  competent representation, and to ensuring that any online misconduct is promptly

2  brought to the Court's attention.  He requests that the Court permit his counsel to

3  research public information concerning their potential biases.

4   Dated:     March 2, 2023                    MORRISON & FOERSTER LLP

5

6                                              By: */s/ Daralyn J. Durie*

7                                                 DARALYN J. DURIE

8                                              Attorneys for Defendant
                                               MARK RIDLEY-THOMAS

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on March 2, 2023 the within document was filed with

3   the Clerk of the Court using CM/ECF which will send notification of such filing to

4   the attorneys of record in this case.

5

6                                               */s/ Daralyn J. Durie*
                                        DARALYN J. DURIE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28