# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br><br><br>    v.<br><br><br>MARK RIDLEY-THOMAS,<br><br>    Defendant. | CR 21-485 DSF -1<br><br><br>Order re Online Research on Prospective Jurors |

Defendant Mark Ridley-Thomas seeks the Court's permission to engage in background research to seek out public information related to the prospective jurors in the venire.[1]  The government opposes this request.

The Court recognizes that it has wide discretion over jury selection and almost certainly has the discretion to approve Defendant's request. Unfortunately, despite years of widely available social media profiles, there is no authoritative federal guidance on the proper use – or denial of use – of these tools in jury selection.  Defendant cites opinions from various state professional organizations approving of – or at least allowing – the practice, but these are primarily focused on the ethical implications of juror research and not whether it is a good idea from the perspective of the administration of justice.  The Court recognizes that a number of courts have allowed the kind of juror research Defendant seeks, particularly in state courts.  Defendant even cites two federal

---

[1] While not explicitly so limited, Defendant appears to be contemplating primarily or entirely internet-based research.

cases where the district court found, after trial, that defense counsel should have conducted internet searches during voir dire to find objectionable material on jurors that was uncovered later.  Obviously, if the Court forbids such research, Defendant will not later be penalized for not engaging in the searches.

The Court's objections to the kind of juror research that Defendant seeks were well-summarized by Judge Alsup when he considered a request to allow juror research in Oracle America, Inc. v. Google, Inc., 172 F. Supp. 3d 1100 (N.D. Cal. 2016).  This Court, like Judge Alsup, is very concerned that if and when jurors discover that the lawyers have conducted research into their personal lives, the jurors will believe that they are justified in ignoring the Court's admonition not to conduct their own independent research.  See id. at 1103 ("The one-sidedness of Oracle's approach will be hard to accept and therein lies the danger.").  The Court anticipates that many prospective jurors would be annoyed and insulted to find that their mandatory, compelled jury service also includes having their lives searched through by the attorneys in the case.  It is one thing to sit on a jury; it is another to become a target of inquiry by the litigating parties.  In short, the Court sees a great danger that the natural response from at least some jurors to being investigated by the parties is to feel that "what's good for the goose is good for the gander."

This ties into another reason to deny Defendant's request: the privacy of the jurors.  Judge Alsup noted that the jurors

> are not celebrities or public figures. The jury is not a fantasy team composed by consultants, but good citizens commuting from all over our district, willing to serve our country, and willing to bear the burden of deciding a commercial dispute the parties themselves cannot resolve. Their privacy matters.

Id. at 1103.

The Court agrees with this sentiment.  However, an important amendment should be made to the observation: the jurors are not just

"willing to serve," they are *compelled* to serve.  This makes it even more important not to invade their lives any more than this lengthy trial already will.  It is also not enough to say that counsel will be able to review only material that is public on the internet.  What someone makes public as a person of no great interest to strangers might be very different from what they would share if they knew they would be the subject of extensive investigation by teams of lawyers.

It is reasonable to observe that the jurors' identities will not be secret in this case.  The case is subject to extensive public interest and it may be expected that members of the media might investigate the jurors.  Ultimately, this observation led Judge Alsup very reluctantly to allow juror research by the parties subject to detailed restrictions.[2]

While it is possible that others have had a different experience, the Court has not observed that the media is particularly focused on investigating the jurors during a trial – or at least the media is not focused on publishing such information.  Jurors do often become subjects of media attention *after* a verdict is reached[3] – typically to try to penetrate the black box of juror deliberation – but the Court has not observed any great tendency for the media to focus on jurors' identities prior to a verdict.  This isn't to say that such media research isn't being done, but it is not the Court's observation or experience that such research invades the proceedings in any way.  Also, attention from the media is qualitatively different from court-sanctioned investigations by the lawyers in the case.  Jurors likely expect that the media will do what it does.  But they also likely expect that the Court will do what it can to reduce the invasion into their lives caused by jury service.  The

---

[2] Among other things, he specified that the jurors would be informed of the exact nature and extent of the searches and would be given an opportunity to make their social media profiles private prior to any searches by the lawyers. This Court is not confident that all of the 80 or more jurors the Court plans to call would have the knowledge or ability to do so in the "few minutes" Judge Alsop would provide.

[3] However, there is often at least a suggestion that many of these jurors in part seek out the media attention themselves.

Court has no control over what the media does; it does have control over what the lawyers do.

Defendant suggests that a failure to allow him to research prospective jurors would prejudice his defense, possibly to the point of a Constitutional violation.  The Court is unconvinced by this argument.

There would appear to be two legitimate benefits to juror research: the detection of lies by prospective jurors during voir dire and the more informed use of peremptory challenges.

It is probably impossible to say how significant the issue of juror lying during voir dire is generally, but it is unlikely to be terribly common.  The prospective jurors are admonished that they could be subject to contempt of court if they are not truthful, and, presumably, the seriousness of the setting and the possibility of punishment dissuades most people from lying.  The Court is also skeptical that there are significant numbers of people looking to lie to remain on a jury in a multi-week trial, even in a reasonably high-profile case such as this one.  A more serious possibility might be undisclosed ties to witnesses or institutions involved in the case.  This lack of disclosure could be purposeful or inadvertent.  However, it is questionable whether the kind of surface-level research contemplated here in the time allowed would turn up the kind of ties that a person would either forget about or think they could get away with covering up.  In the Court's opinion, it is significantly more likely that research would turn up what are basically spurious social media ties that would cost court time, alienate jurors, and, in the end, not affect the fairness of the proceedings or provide any grounds for a challenge to a juror.

Preemptory challenges are a long-standing feature of American law; the Internet is not.  In other words, preemptory challenges have been exercised for decades without resort to research on the prospective jurors.  There is no reason to question the fundamental fairness of a proceeding where a party has to exercise challenges relying only on the in-court voir dire.  Both parties have provided proposed voir dire questions and the Court will ask all or most of them in some form.  The parties will be allowed limited time to ask additional questions.  Jurors

who request it will answer certain questions at sidebar.  The questions asked will provide more than enough information to allow the informed use of preemptory challenges.

It is also relevant to note that Federal Rule of Criminal Procedure 24 explicitly allows the limitation of voir dire questioning to those questions the "court considers proper."  That is, the rule contemplates that there may be *improper* questioning of jurors – *e.g.*, irrelevant, unduly invasive, insulting.  Private research can be seen as a way around an important part of the trial court's administration of the jury selection process.

Defendant's request to undertake research on jurors is DENIED.

IT IS SO ORDERED.

Date: March 6, 2023

Dale S. Fischer

United States District Judge