DARALYN J. DURIE (SBN 169825)
ddurie@mofo.com
ARTURO J. GONZALEZ (SBN 121490)
agonzalez@mofo.com
GALIA Z. AMRAM (SBN 250551)
gamram@mofo.com
RAMSEY W. FISHER (SBN 334228)
ramseyfisher@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415-268-7000
Facsimile: 415-268-7522

CHRISTINA M. RANDALL (SBN 320125)
crandall@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213-892-5200
Facsimile: 213-892-5454

Attorneys for Defendant
MARK RIDLEY-THOMAS

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARK RIDLEY-THOMAS, et al.,<br><br>Defendants. | Case No. 2:21-cr-00485-DSF<br><br>**DECLARATION OF GALIA Z. AMRAM IN SUPPORT OF DEFENDANT MARK RIDLEY-THOMAS'S OBJECTIONS TO PRESENTENCE REPORT**<br><br>Hearing Date: August 21, 2023<br>Time:          8:30 a.m.<br>Courtroom:  7D<br>Judge:       Hon. Dale S. Fischer |

I, Galia Z. Amram, declare as follows:

1.    I am an attorney admitted to practice in the State of California and a member of the bar of this Court.  I am an attorney at the law firm of Morrison & Foerster LLP, counsel for Defendant Mark Ridley-Thomas.  I submit this declaration in support of Defendant Mark Ridley-Thomas's Objections to Presentence Report.  I have personal knowledge of the facts set forth below and if called as a witness could and would competently testify thereto.

2.    Attached hereto as Exhibit A is a true and correct copy of excerpts from the official Trial Transcript.

3.    Attached hereto as Exhibit 576 is a true and correct excerpted copy of the Government's Trial Exhibit 576.

4.    Attached hereto as Exhibit 1081 is a true and correct excerpted copy of the Defendant's Trial Exhibit 1081.

5.    Attached hereto as Exhibit 1274 is a true and correct copy of the Defendant's Trial Exhibit 1274.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed this 31st day of July, 2023, at Alameda, California.


                                                    */s/ Galia Z. Amram*
                                                    Galia Z. Amram

# EXHIBIT A

```
 1                    UNITED STATES DISTRICT COURT

 2                  CENTRAL DISTRICT OF CALIFORNIA

 3                         WESTERN DIVISION

 4        THE HONORABLE DALE S. FISCHER, JUDGE PRESIDING

 5

 6  UNITED STATES OF AMERICA,        )
                                     )
 7                   Plaintiff,      )
                                     )
 8            vs.                    ) NO. CR 21-485-DSF
                                     )
 9  MARK RIDLEY-THOMAS,              )
                                     )
10                   Defendant.      )
    _____)

11

12

13

14            REPORTER'S TRANSCRIPT OF PROCEEDINGS

15

16                  Los Angeles, California

17             Thursday, March 9, 2023, 7:44 A.M.

18

19      Day 3 of Jury Trial, Page 512 to ***, Inclusive

20

21                              PAT CUNEO CSR 1600
22                              Official Reporter
                                First Street Courthouse
23                              350 West 1st Street
                                Room 4311
24                              Los Angeles, CA 90012
                                213-894-1782
25                              patcuneo1600@gmail.com
                                www.patcuneo.com
```

1  additional money?

2  A.   I don't recall.

3        MR. GONZALEZ:   Andrew, can we please put up

4  Exhibit 576.   Jump to page 49, paragraph 2.   Thank you.

5        *(The exhibit was displayed on the screen.)*

6  BY MR. GONZALEZ:

7  Q.   Sir, paragraph 2 of that amendment has the words

8  "Maximum Contract Amount"; right?

9  A.   Yes.

10 Q.   And it says that the total reimbursements from March 1

11 of 2016 through August 31 of 2019 shall not exceed

12 $547,500; right?

13 A.   Yes.

14 Q.   Now, do you know how much of that money had already

15 been paid to USC as of the date of the amendment in July of

16 2018?

17 A.   I do not.

18 Q.   There is nothing in this contract about $8 million, is

19 there?

20 A.   No.

21 Q.   Reading -- you're generally familiar with contracts,

22 given your experience; correct?

23 A.   Yes.

24 Q.   And when you see a contract that says "Maximum Contract

25 Amount," that means that for the entire four years the total

1    for the four years is $547,500; right?

2    A.    The way I would interpret this is that is the maximum

3    that would come out of a county fund, but it doesn't

4    necessarily preclude the Short-Doyle billing, which would've

5    been the additional revenue.

6    Q.    Do you have any factual basis for testifying that this

7    contract has any language on what you've just said that

8    would provide those additional revenues?

9    A.    No.

10   Q.    So, for example, if USC had already been paid $500,000

11   as of the date of the amendment, that means that with the

12   amendment you would get maybe $47,500; right?

13   A.    Yeah.  Yes, I believe that's how it would work.

14   Q.    And if you had already reached your cap, if you had

15   already been paid the $547,500 in the prior three years,

16   then this amendment would get you no additional money at

17   all; right?

18   A.    Yes.

19        MR. GONZALEZ:   Andrew, could we go to Exhibit 15,

20   please.  First page.

21        (The exhibit was displayed on the screen.)

22   BY MR. GONZALEZ:

23   Q.    Sir, you were asked questions about this email from

24   Marilyn Flynn in the summer of 2017.  Do you see that?

25   A.    Yes.

1  that led you to go to the Provost, did you ask Dean Flynn

2  about that?

3  A.    No.

4            MR. GONZALEZ:  Andrew, could we put up 2022?

5            *(The exhibit was displayed on the screen.)*

6  BY MR. GONZALEZ:

7  Q.    You were just asked on redirect whether Ms. Flynn ever

8  told you that she was going to get permission from the

9  Provost for Sebastian Ridley-Thomas to be both a teacher and

10  a student.  Do you recall that?

11  A.    Yes.

12  Q.    But Dean Knott told you and Ms. Flynn that he was going

13  to do that; right?

14  A.    Yes, he did.

15  Q.    And it wasn't necessary for both deans to seek that

16  approval, was it?

17  A.    I don't know.

18  Q.    By the way, the online program that was being proposed,

19  that could have been used for other students as well; true?

20  A.    Yes, if it was developed.

21            MR. GONZALEZ:  And back to the contract, Andrew,

22  576.

23            *(The exhibit was displayed on the screen.)*

24  BY MR. GONZALEZ:

25  Q.    Sir, do you have any basis for testifying here today

1    that this contract, July 2018, the amendment, generated a
2    single dollar for USC?
3    A.   I don't.
4    Q.   And lastly, at the first interview with the FBI when
5    you said something about a deal, you told the FBI, actually,
6    she may have used the word "arrangement"; right?
7    A.   I don't recall.
8    Q.   But whatever it was, you didn't ask -- you didn't ask
9    Ms. Flynn what arrangement or what deal she was talking
10   about, did you?
11   A.   No.
12   Q.   And so you don't have any basis for knowing here today;
13   true?
14   A.   I don't, no.
15   Q.   All right.  And then lastly, the -- the favor, I had to
16   do a favor.  You do not know -- I'm sorry.  You did not ask
17   her what favor, did you?
18   A.   I did not, no.
19   Q.   You didn't ask her a favor for who, did you?
20   A.   No.
21   Q.   So you have no idea, sitting here today, either what
22   the favor was or who the favor was for; true?
23   A.   That is true.
24          MR. GONZALEZ:  Thank you, sir.  That's all I have.
25          THE COURT:  Any further questions from the

663

```
 1                           CERTIFICATE

 2

 3              I, PAT CUNEO, CSR 1600, hereby certify that

 4      pursuant to Section 753, Title 28, United States Code, the

 5      foregoing is a true and correct transcript of the

 6      stenographically reported proceedings held in the

 7      above-entitled matter and that the transcript page format is

 8      in conformance with the regulations of the Judicial

 9      Conference of the United States.

10
        Date:  March 9, 2023
11

12

13

14

15                              /s/_____

16                              PAT CUNEO, OFFICIAL REPORTER
                                CSR NO. 1600
17

18

19

20

21

22

23

24

25
```

*Day 3 of Jury Trial, March 9, 2023, AM Session*

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    WESTERN DIVISION

4    THE HONORABLE DALE S. FISCHER, JUDGE PRESIDING

5

6    UNITED STATES OF AMERICA,            )
                                          )
7                      Plaintiff,         )
                                          )
8            vs.                          ) NO. CR 21-485-DSF
                                          )
9    MARK RIDLEY-THOMAS,                  )
                                          )
10                     Defendant.         )
     _____)

11

12

13

14            REPORTER'S TRANSCRIPT OF PROCEEDINGS

15

16            Los Angeles, California

17        Thursday, March 16, 2023, 7:44 A.M.

18

19    Day 7 of Jury Trial, Page 1625 to 1776, Inclusive

20

21                           PAT CUNEO CSR 1600
22                           Official Reporter
                             First Street Courthouse
23                           350 West 1st Street
                             Room 4311
24                           Los Angeles, CA 90012
                             213-894-1782
25                           patcuneo1600@gmail.com
                             www.patcuneo.com

1  someone in an investigation is a cost benefit analysis; is
2  that right?
3  A.   That's correct.
4  Q.   So let's start by talking about the benefit side of
5  the equation.  So the benefit of talking to
6  Supervisor Ridley-Thomas's deputies would have been that you
7  might have learned why Supervisor Ridley-Thomas had
8  supported these particular agenda items; right?
9            MS. DOTSON:  Objection.  Speculation.
10           THE COURT:  If you can answer.  Don't guess.  If
11 you can answer based on your investigation.
12           THE WITNESS:  Can you repeat the question?  Sorry.
13 BY MS. DURIE:
14 Q.   Sure.
15           If you -- one of the benefits when you were
16 thinking about the cost benefit of whether to talk to
17 Mark Ridley-Thomas's deputies or not, one thing on the
18 benefit side of the equation would be the opportunity to
19 learn why he supported those agenda items; right?
20 A.   I don't know that that bene- -- that I assessed that as
21 a benefit because that was known to me at the time.
22 Q.   Oh, so you knew from your investigation why
23 Mark Ridley-Thomas had supported each of these agenda items?
24 A.   Generally speaking, I knew that he supported the
25 substance of these agenda items.

1    Q.    And you knew why?

2    A.    I -- I think it was because he supported them in -- in

3    theory.

4    Q.    When you say "he supported them in theory," you mean

5    because they were consistent with his legislative agenda?

6    A.    I would agree with that.

7    Q.    Okay.  So to be clear, each of the agenda items that my

8    client is accused of corruptly supporting in this case are

9    agenda items that were consistent with his legislative

10   agenda?

11   A.    Yes.

12   Q.    Okay.  Now, was one of the benefits of talking to

13   Mark Ridley-Thomas's deputies that you thought about, that

14   you might've learned whether any of these agenda items were

15   controversial?

16   A.    I -- I don't think so.  Can you -- I'm sorry, can you

17   repeat the question?

18   Q.    Well, in your investigation as to whether

19   Mark Ridley-Thomas's support of these agenda items was

20   corrupt, did you want to know whether any of them were

21   remotely controversial?

22   A.    I hadn't thought about that, the controversial aspect

23   of these agenda items.

24   Q.    Did you want to know whether he expressed any unusual

25   interest in any of these agenda items?

```
 1                          CERTIFICATE

 2

 3          I, PAT CUNEO, CSR 1600, hereby certify that

 4   pursuant to Section 753, Title 28, United States Code, the

 5   foregoing is a true and correct transcript of the

 6   stenographically reported proceedings held in the

 7   above-entitled matter and that the transcript page format is

 8   in conformance with the regulations of the Judicial

 9   Conference of the United States.

10
     Date:  _____
11

12

13

14

15          /s/_____

16          PAT CUNEO, OFFICIAL REPORTER
            CSR NO. 1600
17

18

19

20

21

22

23

24

25
```

1              UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                WESTERN DIVISION

4      THE HONORABLE DALE S. FISCHER, JUDGE PRESIDING

5

6  UNITED STATES OF AMERICA,      )
                          )
7              Plaintiff,    )
                          )
8        vs.             ) NO. CR 21-485-DSF
                          )
9  MARK RIDLEY-THOMAS,         )
                          )
10            Defendant.    )
                          )
11  _____)

12

13

14         REPORTER'S TRANSCRIPT OF PROCEEDINGS

15

16            Los Angeles, California

17        Thursday, March 16, 2023, 11:28 A.M.

18

19    Day 7 of Jury Trial, Page 1777 to 1891, Inclusive

20

21

22                   WIL WILCOX, CSR 9178
                   Official Reporter
23                    First Street Courthouse
                   350 West 1st Street
24                    Room 4311
                   Los Angeles, CA 90012
25                    wil.wilcox@gmail.com

1   A.   Correct.

2   Q.   Now, somebody else was also quoted in this press

3   release, right, if we go to the next paragraph?

4   A.   It looks like Dean Flynn was.

5   Q.   "'With this innovative project, we will finally be able

6   to stay in easy and immediate touch with those youth who so

7   much need to hear from us as they struggle with trauma and

8   troubled family life,' USC School of Social Work

9   Dean Marilyn Flynn said."

10           And then she went on to say more about why she

11   supported this telehealth program, right?

12   A.   Correct.

13   Q.   So fair to say that well before there was any alleged

14   conspiracy in this case, both Mark Ridley-Thomas and

15   Dean Flynn were on the public record supporting USC's

16   telehealth program?

17   A.   Yes.

18   Q.   Did you discover in your investigation that Dean Flynn

19   actually thanked Mark Ridley-Thomas back in 2016 for his

20   support?

21   A.   She may have, yes.

22           MS. DURIE:  May I approach?

23           THE COURT:  Yes.

24   BY MS. DURIE:

25   Q.   (Tenders.)

1   BY MS. DURIE:

2   Q.   So the reimbursement rate has changed, right?

3   A.   Correct.

4   Q.   And it's gone up from, I think, 89 to 120 --

5   A.   Yes.

6   Q.   -- right?

7            The maximum contract amount has not changed,

8   right?

9   A.   No.

10  Q.   And if we take a look at A, it says, "County's total

11  reimbursement to Contractor for March 1, 2016, through

12  August 31, 2019, shall not exceed $547,500," right?

13  A.   Correct.

14  Q.   So that's over the entire life of the contract, right?

15  A.   Yes, it appears to be.

16  Q.   And if we go to page 25 of -- I'm sorry.

17            MS. DURIE:  If I could have 1314.  577.  Yeah,

18  I'll use 577.  If I can go to 577.  There we go, and we can

19  blow up item 27.

20  BY MS. DURIE:

21  Q.   This is the record of the vote on the amendment to the

22  telehealth contract, right?

23  A.   Yes.

24  Q.   It is a motion of Supervisor Barger, seconded by

25  Supervisor Solis, right?

1   A.    Yes.

2   Q.    And it passed with a 5/0 vote, right?

3   A.    Yes.

4   Q.    It was also on the consent calendar?

5   A.    It may have been.

6   Q.    Now, you're not saying that a person would have to be

7   corrupt in order to support this extension of the telehealth

8   contract, are you?

9   A.    No.

10  Q.    Okay.  Did you find any evidence that

11  Mark Ridley-Thomas had not supported USC's

12  telehealth program from the very beginning?

13  A.    The evidence that we found seemed to indicate that he

14  didn't support -- well, rephrase the question again.  I'm

15  sorry.  Ask the question.

16  Q.    Sure.

17        Did you find any evidence that Mark Ridley-Thomas

18  had not supported USC's telehealth program from the very

19  beginning?

20  A.    No.

21  Q.    Did you find evidence that Mark Ridley-Thomas had ever

22  at any point from 2014 to 2018 voiced opposition to USC's

23  telehealth program?

24  A.    No.

25  Q.    Now, we've talked a bunch about this hand-delivered

1891

**CERTIFICATE**

1
2
3          I, WIL S. WILCOX, CSR 9178, hereby certify that
4    pursuant to Section 753, Title 28, United States Code, the
5    foregoing is a true and correct transcript of the
6    stenographically reported proceedings held in the
7    above-entitled matter and that the transcript page format
8    is in conformance with the regulations of the Judicial
9    Conference of the United States.
10
     Date:  March 17, 2023
11
12
13
14
15                              /s/_____
16                              WIL S. WILCOX, OFFICIAL REPORTER
                                CSR NO. 9178
17
18
19
20
21
22
23
24
25

1                   UNITED STATES DISTRICT COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3                        WESTERN DIVISION

4         THE HONORABLE DALE S. FISCHER, JUDGE PRESIDING

5

6   UNITED STATES OF AMERICA,          )
                                       )
7                      Plaintiff,      )
                                       )
8             vs.                      ) NO. CR 21-485-DSF
                                       )
9   MARK RIDLEY-THOMAS,                )
                                       )
10                     Defendant.      )
    _____)

11

12

13

14            REPORTER'S TRANSCRIPT OF PROCEEDINGS

15

16                  Los Angeles, California

17             Friday, March 17, 2023, 11:51 A.M.

18

19      Day 8 of Jury Trial, Page 2047 to 2117, Inclusive

20

21

22                              WIL WILCOX, CSR 9178
                                Official Reporter
23                              First Street Courthouse
                                350 West 1st Street
24                              Room 4311
                                Los Angeles, CA 90012
25                              wil.wilcox@gmail.com

1    A.    Yes.

2    Q.    Has United Ways acted as a fiscal?

3    A.    Yes.

4    Q.    And generally, what does a fiscal sponsor do?

5    A.    Well, there's a right way and a wrong way to do it.

6    The right way to do it, if -- the fiscal sponsor is

7    basically vouching to the IRS and the public that they are

8    overseeing all the activities of the sponsored project,

9    right, as if we were doing it ourselves, you know, so -- and

10   so technically, that means that if the sponsor isn't able to

11   complete the work or isn't doing the work properly, or the

12   project, right, the fiscally sponsored project, then the

13   fiscal sponsor is supposed to step in and make changes.

14   We're responsible for whether the project is pursuing a

15   public benefit mission.

16   Q.    Is it fair to say that those projects then, the people

17   that work for them would be considered your employees?

18   A.    So when sponsors -- when projects we sponsor need

19   employees, they become our employees.  They're on our books

20   as our employee, yes.

21   Q.    Who raises the funds to pay for those projects'

22   employees?

23   A.    Typically, the projects themselves, right, the project

24   leadership.

25   Q.    How about the health benefits?

2116

```
1                          CERTIFICATE

2

3              I, WIL S. WILCOX, CSR 9178, hereby certify that

4      pursuant to Section 753, Title 28, United States Code, the

5      foregoing is a true and correct transcript of the

6      stenographically reported proceedings held in the

7      above-entitled matter and that the transcript page format

8      is in conformance with the regulations of the Judicial

9      Conference of the United States.

10
       Date:  March 18, 2023
11

12

13

14

15                             /s/_____

16                             WIL S. WILCOX, OFFICIAL REPORTER
                               CSR NO. 9178
17

18

19

20

21

22

23

24

25
```

1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                   WESTERN DIVISION

4        THE HONORABLE DALE S. FISCHER, JUDGE PRESIDING

5

6    UNITED STATES OF AMERICA,        )
                                      )
7                   Plaintiff,        )
                                      )
8            vs.                      ) NO. CR 21-485-DSF
                                      )
9    MARK RIDLEY-THOMAS,              )
                                      )
10                  Defendant.        )
     _____)

11

12

13

14           REPORTER'S TRANSCRIPT OF PROCEEDINGS

15

16              Los Angeles, California

17         Thursday, March 23, 2023, 7:35 A.M.

18

19    Day 11 of Jury Trial, Page 2774 to 2914, Inclusive

20

21                              PAT CUNEO CSR 1600
22                              Official Reporter
                                First Street Courthouse
23                              350 West 1st Street
                                Room 4311
24                              Los Angeles, CA 90012
                                213-894-1782
25                              patcuneo1600@gmail.com
                                www.patcuneo.com

1   words.  She got a lot of actions in this case.  She's
2   admitting Sebastian Ridley-Thomas to USC despite in an email
3   talking about she thinks he might have poor grades.
4           She's giving him a full-tuition scholarship
5   despite the school's financial crisis at this time.  She's
6   tapping the endowed funds of the school.
7           It's paid professorship on top of it which you've
8   heard at length violates USC policy and it -- and by the
9   way, this is a full-tuition scholarship for a Master's
10  degree in not one, but two schools at USC.
11          This is a professorship in not one, but two
12  schools at USC.  She's willing to try to advance this first
13  online joint degree program just so she can accommodate
14  Sebastian Ridley-Thomas.
15          She's -- he reaches out about office space.  She's
16  down for that too.  She's catering to him in every single
17  way, including secretly funneling a hundred-thousand-dollar
18  payment through USC.
19          This woman is risking her job, her salary, her
20  legacy.  In fact, she lost all of that.  You heard that.
21  She was ousted from USC.  Goodness.  Why would anyone do
22  this?
23          It's not just one red carpet for
24  Sebastian Ridley-Thomas.  It's not two red carpets.  It is
25  20-some red carpets for this man.  Why?  Why is he so

```
 1                          CERTIFICATE

 2

 3          I, PAT CUNEO, CSR 1600, hereby certify that

 4   pursuant to Section 753, Title 28, United States Code, the

 5   foregoing is a true and correct transcript of the

 6   stenographically reported proceedings held in the

 7   above-entitled matter and that the transcript page format is

 8   in conformance with the regulations of the Judicial

 9   Conference of the United States.

10

     Date:  March 23, 2023
11

12

13

14

15                       /s/_____

16                       PAT CUNEO, OFFICIAL REPORTER
                         CSR NO. 1600
17

18

19

20

21

22

23

24

25
```

# EXHIBIT 576



Los Angeles County
## DEPARTMENT OF MENTAL HEALTH

# ADOPTED

BOARD OF SUPERVISORS
COUNTY OF LOS ANGELES

July 31, 2018

27    July 31, 2018

*Celia Zavala*

CELIA ZAVALA
ACTING EXECUTIVE OFFICER

The Honorable Board of Supervisors
County of Los Angeles
383 Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, California 90012

Dear Supervisors:

**DELEGATE AUTHORITY TO EXTEND THE SOLE SOURCE TELE-MENTAL HEALTH SERVICES AGREEMENT WITH THE UNIVERSITY OF SOUTHERN CALIFORNIA FROM SEPTEMBER 1, 2018, THROUGH AUGUST 31, 2019
(ALL SUPERVISORIAL DISTRICTS)
(3 VOTES)**

## SUBJECT

Request delegated authority to extend the sole source Agreement with the University of Southern California for the provision of tele-mental health services for the period of September 1, 2018, through August 31, 2019.

## IT IS RECOMMENDED THAT THE BOARD:

1. Delegate authority to the Director of Mental Health (Director), or his designee, to prepare, sign, and execute an amendment to the sole source Agreement with the University of Southern California (USC) on behalf of its USC Telehealth, substantially similar to Attachment I, to extend the term for one year effective September 1, 2018, through August 31, 2019.

2. Delegate authority to the Director, or his designee, to prepare, sign, and execute amendments to the Agreement to sustain the program throughout the term, provided that sufficient funds are available, including but not limited to: provision of administrative non-material changes; provision of additional/related services; and/or modifications to reflect changes to an existing Statement of Work; federal, State, and County regulatory and/or policy changes, subject to prior review and approved as to form by County Counsel, with notice to the Board and CEO.

3. Delegate authority to the Director, or his designee, to terminate the Agreement in accordance with

USAO_129503

**Exhibit 576**
**Page 1 of 68**

The Honorable Board of Supervisors
7/31/2018
Page 2

the Agreement's termination provisions, including Termination for Convenience, provided the Director notifies your Board and the CEO in writing of such action.

## PURPOSE/JUSTIFICATION OF RECOMMENDED ACTION

On March 1, 2016 your Board approved the execution of an Agreement with the University of Southern California (USC) to provide tele-mental health services (TMHS) to children and Transition Age Youth (TAY). Extending the Agreement will allow for uninterrupted TMHS to an estimated 300 children and TAY clients during the period of September 1, 2018, through August 31, 2019. Furthermore, it will allow DMH additional time to assess the effectiveness of the program.

Potential program participants who present mild to moderate psychiatric symptoms are referred to the USC TMHS program for intake assessments. If the outcomes of such assessments confirm that potential program participants do not require a higher level of care, they are enrolled in the TMHS program and receive mental health services online via a secure Internet portal maintained by USC. The services are delivered by Licensed Clinical Social Workers (LCSW) and trained/supervised Masters of Social Work (MSW) student interns using the Seeking Safety (SS), Crisis Oriented Recovery Services (CORS), Cognitive Behavioral Therapy (CBT), and Cognitive Behavioral Intervention for Trauma in Schools (CBITS) evidence-based practice (EBP) models. These services are consistent with the MHSA Prevention and Early Intervention (PEI) plan and are funded by MHSA revenue.

Through this early intervention model, children (ages 12 to 15) and TAY (ages 16 to 21) who have experienced or have been witness to traumatic events, such as child sexual abuse, domestic violence, traumatic loss, and/or who are diagnosed with or experiencing difficulty related to symptoms of Post-Traumatic Stress Disorder (PTSD), depression, anxiety, or co-occurring disorders, are provided TMHS to ameliorate the impact of the traumatic events, reduce trauma-related symptoms, increase resilience and increase peer and parental support. Additionally, the tele-mental health service model improves access to mental health services for children and TAY in underserved populations who do not pursue these services due to lack of awareness of available services, access issues such as transportation or mobility limitations, or reluctance due to stigma and/or discrimination.

Initially, TMHS were only available to clients referred by Department of Mental Health (DMH) social workers at the Martin Luther King Jr. (MLK) Hub and other County Medical Hubs. Program staff identified that the tele-mental health model is most effective with older youth and young adults and the agreement was amended effective, August 1, 2017, to allow DMH staff to refer clients at other DMH directly-operated or contracted agencies, including County DCFS offices, TAY drop-in centers, and school districts throughout Los Angeles County. Participation of youth and young adults has increased with expansion to these other locations. Extending the TMHS program will allow an additional year to gather data on the effectiveness of TMHS, especially from the participants referred to the program since August 1, 2017, including those affected by deportation issues, intimate partner violence, and school violence, and allow for in-person mental health services, when appropriate.

Board approval of Recommendation 1 will enable DMH to continue to provide and expand access to mental health services both in person and through video-conferencing technology for children and TAY.

Board approval of Recommendation 2 will allow DMH to amend the Agreement expeditiously to sustain the program throughout the term specified.

USAO_129504

**Exhibit 576**
**Page 2 of 68**

The Honorable Board of Supervisors
7/31/2018
Page 3

Board approval of Recommendation 3 will enable DMH to terminate the Agreement in accordance with the Agreement's termination provisions, including termination for convenience.

**Implementation of Strategic Plan Goals**

These recommendations support the County's Strategic Plan Goal I, "Make Investments That Transform Lives," specifically Strategy I.2.9, "Support the Long Term Success of Transitional Aged Youth" and Strategic Plan Goal III, "Realize Tomorrow's Government Today," specifically Strategy III.2.2, "Leverage Technology to Increase Visibility of and Access to Services."

**FISCAL IMPACT/FINANCING**

There is no fiscal impact for this extension of agreement. The Total Contract Amount (TCA) will remain at $530,323 for the term of the agreement, fully funded by State MHSA revenue.

There is no net County cost impact associated with the recommended action.

**FACTS AND PROVISIONS/LEGAL REQUIREMENTS**

On June 25, 2013, in response to a child fatality, your Board approved a motion for the Blue Ribbon Commission (BRC) to address issues of child safety. Beginning in August of 2013, the BRC held 17 meetings and published its Final Report in April 2014. The BRC issued a set of recommendations, including articulating a countywide mission to prioritize and improve child safety. On July 28, 2015, following consultation with Supervisorial District 2 and senior leadership at DMH, DCFS, and the Department of Health Services (DHS), USC submitted a project proposal to DMH aimed at serving children and youth who have come to the attention of the child welfare system but remain with their families of origin and present with early onset of mild to moderate psychiatric symptoms.

This project aligns with the BRC's recommendations for a countywide safety system to support "access to and delivery of critical mental health services" and ensure that "mental health treatment for teens and transitioning age youth incorporate trauma-focused assessment and interventions appropriate to the developmental status, ethnicity, sexual identity, and risk factors of the youth being served."

The USC Tele-mental health program is a large-scale, virtual behavioral health clinic operated as part of USC's School of Social Work. The clinic is staffed with experienced LCSW and trained/supervised MSW student interns. In order for USC to continue to provide mental health services, it is required to contract with DMH, as the Local Mental Health Plan (LMHP). The existing sole source TMHS Agreement between LA County and USC is set to expire on August 31, 2018.

The Amendment format, Attachment I, has been approved as to form by County Counsel. DMH administrative staff will monitor USC's performance and compliance with Contract provisions and departmental policies.

In accordance with Board Policy 5.100, Sole Source Contracts, Attachment II is the March 2, 2018, Board memorandum notifying your Board of DMH's intent to extend the sole source Agreement with USC for the provision of TMHS through August 31, 2019.

**IMPACT ON CURRENT SERVICES (OR PROJECTS)**

USAO_129505

**Exhibit 576**
**Page 3 of 68**

The Honorable Board of Supervisors
7/31/2018
Page 4


Approval of the recommended actions will allow USC to provide tele-mental health services to children and transition age youth, continuing the availability of these services to an underserved population and lessening the burden on County facilities.


Respectfully submitted,


JONATHAN E. SHERIN, M.D., Ph.D.
Director


JES:GP:TB:SK:rlr

Enclosures

c:   Executive Office, Board of Supervisors
     Chief Executive Office
     County Counsel
     Chairperson, Mental Health Commission

USAO_129506

**Exhibit 576**
**Page 4 of 68**

# EXHIBIT 1081

 

LOS ANGELES COUNTY DEPARTMENT OF MENTAL HEALTH
550 S. VERMONT AVE., LOS ANGELES, CA 90020 HTTP://DMH.LACOUNTY.GOV

ROBIN KAY, Ph.D.
Acting Director

DENNIS MURATA, M.S.W.
Acting Chief Deputy Director

RODERICK SHANER, M.D.
Medical Director

March 21, 2016

Dear Provider:

Attached for your information and files is a copy of the approved Agreement, Contract No. MH190130.  This Agreement was fully executed by the Acting Director of Mental Health on March 16, 2016.

Should you have any questions regarding the above, please do not hesitate to contact me at ▇▇▇-4069.

Sincerely,

*ELHI SAUCEDO, Contract Administrator*
Contracts Development and
  Administration Division

ES:raj

Attachment

Provider:   **University of Southern California (USC)**

Raj:Dir Approved  032116-1

U.S.D.C Central District of California
Case No:   21-cr-00485-DSF
USA v. Mark Ridley-Thomas

**DTX-1081**

Date Entered: _____

By: _____
    **Deputy Clerk**

LA COUNTY BOARD OF SUPERVISORS
Hilda L. Solis  I  Mark Ridley-Thomas  I  Sheila Kuehl  I  Don Knabe  I  Michael D. Antonovich  I  Sachi A. Hamai, Chief Executive Officer

USAO_035671

CONTRACTOR'S COPY



# CONTRACT

# BY AND BETWEEN

## COUNTY OF LOS ANGELES

## DEPARTMENT OF MENTAL HEALTH

## AND

## UNIVERSITY OF SOUTHERN CALIFORNIA

## ON BEHALF OF ITS USC TELEHEALTH

## FOR

## TELEMENTAL HEALTH SERVICES

**March 1, 2016**

USAO_035672

CONFIDENTIAL

USC_00004801

CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER

**Defendant's Trial Exhibit 1081, page 2 of 111**

requirements stipulated in this Agreement.

(b)     Contractor shall be responsible to ensure claims are submitted in a timely manner. Contractor shall be solely liable and responsible for the accuracy and veracity of all data and information provided by Contractor to County.

3.     Claiming for Specialty Mental Health Visits in the Same Day:

If County determines that Contractor has submitted claims beyond the allowable number of visits as described in Paragraph B, CLAIMING, for the same Eligible Client on the same day under this Agreement, then County shall be entitled to recover from Contractor all inappropriate payment amounts received by Contractor.   Contractor shall be entitled to retain only the amount it would have been entitled to receive for as specified in Paragraph B for an allowable visit.

C.   **REIMBURSEMENT**

1.     Rates:  County agrees on the terms and conditions set forth in this Exhibit and in this Agreement, to compensate Contractor for services provided to Eligible Clients for the provision of specialty mental health.  For the duration of the contract term, Contractor shall be reimbursed at the pre-established per visit rate of **EIGHTY-NINE DOLLARS** ($89.00) for specialty mental health services as defined under this Agreement.

2.     Maximum Contract Amount:   Contractor understands that services provided are funded using Mental Health Services Act (MHSA) Prevention and Early Intervention (PEI) funds.  County's reimbursement to Contractor is contingent upon the availability of State MHSA PEI funds and Contractor's adherence to all MHSA PEI requirements.

For purposes of budgetary planning for the parties, and not as a means to restrict services, the following shall constitute the maximum amount for specialty mental health services that County shall pay Contractor while this Agreement is in effect:

(a)     County's reimbursement to Contractor for March 1, 2016, through August 31, 2017, shall not exceed **FIVE HUNDRED FORTY-SEVEN**

CONFIDENTIAL                                                                            USC_00004884
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER
**Defendant's Trial Exhibit 1081, page 85 of 111**

**THOUSAND FIVE HUNDRED** Dollars ($547,500) for the provision of specialty mental health services.

(b)     County at its sole discretion may reduce this maximum contract amount in the event that County believes, based on evidence of Contractor's level of utilization, that the amount exceeds what Contractor would reasonably be expected to need during the term of this Agreement. County may allocate such funds to other providers.  County shall provide notice to Contractor of such change and shall implement such reduction through an administrative amendment.

3.     Notice Regarding Utilization of Estimated Maximum Contract Amount: Contractor shall inform County when up to 75 percent (75%) of the estimated maximum amount has been incurred.  Contractor shall send such notice to those persons and addresses which are set forth in Paragraph 8.35 (NOTICES) of the Agreement.

4.     County's Reimbursement:  County shall pay one hundred percent (100%) of complete and timely submitted electronic and/or manual claims for covered specialty mental health services to Eligible Clients submitted by Contractor pursuant to the terms of this Exhibit on a monthly basis in accordance with County's Accounts Payable procedures.

**D.     PAYMENT DISALLOWANCES**

1.     County will reimburse Contractor for Eligible Clients only.  If, at any time, specialty mental health services are provided to non-eligible clients, County will recover from Contractor any payment made for said services. County, on an annual basis, will reconcile and recoup non-allowable amounts reimbursed to Contractor after reviewing claims data submitted by Contractor.

2.     Contractor shall adhere to requirements related to exclusion of multiple same-day visits.  County will recover overpayments related to claiming of multiple same-day visits as provided in Paragraph B (CLAIMING) of this Exhibit.

3.     County reserves the right to recover all payments stemming from disallowed

EXHIBIT B – FINANCIAL PROVISIONS

USAO_035756

CONFIDENTIAL                                                                                                     USC_00004885
CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER
**Defendant's Trial Exhibit 1081, page 86 of 111**

# EXHIBIT 1274



Los Angeles County
# DEPARTMENT OF MENTAL HEALTH
JONATHAN E. SHERIN, M.D., Ph.D.
DIRECTOR

U.S.D.C Central District of California
Case No:   21-cr-00485-DSF
USA v. Mark Ridley-Thomas

## DTX-1296

Date Entered: _____

By: _____

**Deputy Clerk**

March 2, 2018

TO:       Supervisor Sheila Kuehl, Chair
            Supervisor Hilda L. Solis
            Supervisor Mark Ridley-Thomas
            Supervisor Janice Hahn
            Supervisor Kathryn Barger

FROM:    Jonathan E. Sherin, M.D., Ph.D.
           Director

SUBJECT:  **NOTICE OF INTENT TO EXTEND THE SOLE SOURCE AGREEMENT WITH THE UNIVERSITY OF SOUTHERN CALIFORNIA TO PROVIDE TELE-MENTAL HEALTH SERVICES FOR FISCAL YEAR 2018-19**

This is to inform your Board, that in accordance with Board Policy No. 5.100, the Department of Mental Health (DMH) intends to extend the sole source Agreement with the University of Southern California (USC) for one year, from September 1, 2018, through August 31, 2019, to provide ongoing tele-mental health services to children and Transition Age Youth (TAY). The Agreement with USC is due to expire on August 31, 2018.

## JUSTIFICATION

The Blue Ribbon Commission (BRC), directed by a motion from your Board in August 2013, articulated a countywide mission to prioritize and address child safety issues. The USC Telehealth Program (Program) aligns with the BRC's recommendations for a safety system that supports trauma-focused assessment and interventions and delivery of critical mental health services to children and TAY.

The Program is a large-scale, completely virtual behavioral health clinic staffed with Licensed Clinical Social Workers and trained/supervised Masters of Social Work student interns from USC's School of Social Work. Extension of the Agreement will allow the continuation of the Program's tele-mental health services to children and TAY with mild to moderate psychiatric symptoms, referred by DMH social workers assigned at County medical hubs and by staff at drop-in centers, for the purpose of Prevention and Early Intervention (PEI). DMH projects the Program will serve approximately 300

Each Supervisor
Page 2 of 2
March 2, 2018

clients during extension year. Furthermore, it will allow DMH additional time to assess the effectiveness of this Program.

## NOTIFICATION TIMELINE

According to the Board Policy No. 5.100, DMH is required to notify your Board at least six months in advance of a sole source contract expiration. Unless otherwise instructed by your Board office within two weeks, DMH will proceed to extend our Agreement with USC for one year effective September 1, 2018.

If you have any questions or require additional information, please contact me at (213) 738-4601, or your staff may contact Stella Krikorian, Interim Chief of Contracts Development and Administration Division, at █████████ 4023.

JES:GP:SK:RLR:tg

c:    Executive Office, Board of Supervisors
      Chief Executive Office
      County Counsel
      Gregory Polk
      Terri Boykins, LCSW
      Stella Krikorian

Defendant's Trial Exhibit 1274, page 2 of 2

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2023 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Galia Z. Amram*
GALIA Z. AMRAM